**No. 23-20318 Consolidated with No. 23-20443**

In the
# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔦𝔣𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

**OCCIDENTAL PETROLEUM CORP.**
*Plaintiff-Appellee*

and

**ANADARKO PETROLEUM CORP.,**
*Intervenor Plaintiff-Appellee,*

– v. –

**WELLS FARGO BANK, N.A.**
*Defendant-Appellant.*

**On Appeal from the United States District Court for the
Southern District of Texas, Lee H. Rosenthal, District Judge**

**RECORD EXCERPTS OF
DEFENDANT-APPELLANT WELLS FARGO BANK N.A.**

Christian T. Kemnitz
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
312-902-5379

Johnjerica Hodge
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Ave., NW Suite 800
Washington, DC 20006
202-625-3500

Rebecca K. Lindahl
KATTEN MUCHIN ROSENMAN LLP
550 S. Tryon Street, Suite 2900
Charlotte, NC 28202
704-344-3141

Jeff Joyce
JOYCE + MCFARLAND LLP
712 Main Street, Suite 1500
Houston, TX 77002
713-222-1113

*Counsel for Wells Fargo Bank, N.A.*

# TABLE OF CONTENTS

## MANDATORY CONTENTS

| | | |
|---|---|---|
| 1. | Docket Sheet | ROA.1 |
| 2. | Supplemental Docket Sheet | ROA.5461 |
| 3. | Notice of Appeal (ECF 155, 6/30/2023) | ROA.4359 |
| 4. | Notice of Appeal (ECF 172, 9/8/2023) | ROA.5516 |
| 5. | Final Judgment | ROA.4259 |
| 6. | Order on Motions to Dismiss | ROA.774 |
| 7. | Order on Equiniti Motion to Dismiss | ROA.2431 |
| 8. | Order Granting Motion for Summary Judgment | ROA.3505 |
| 9. | Order Granting Motion for Summary Judgment on Damages | ROA.4231 |
| 10. | Order Granting Motion for Attorney Fees | ROA.5511 |

## OPTIONAL CONTENTS

| | | |
|---|---|---|
| 11. | Trust Agreement (excerpts) | ROA.120 |
| 12. | Email- Investment Strategy Discussion | ROA.887 |
| 13. | December 17 Email String | ROA.891 |
| 14. | Excerpts from Plaintiffs' Motion for Summary Judgment | ROA.1468 |
| 15. | Excerpts from Deposition of Jason Schmitz | ROA.2185 |
| 16. | Excerpts from Deposition of Stephen Eubank | ROA.2248 |

17.   Email sending Investment Strategy Discussion
      materials                                    ROA.2361

18.   December 10 email follow up                  ROA.2365

19.   Internal Occidental memo (excerpt)           ROA.2372

20.   December 19 email                            ROA.2391

21.   Excerpts from Wells Fargo Opposition to Plaintiffs'
      Motion for Summary Judgment                  ROA.2472

22.   Excerpts from Deposition of Monique Etheridge  ROA.2512

23.   Various emails regarding Equiniti            ROA.5271,  .5277,
                                                   .5286, .5370

# **TAB 1**

APPEAL,CLOSED

# U.S. District Court
# SOUTHERN DISTRICT OF TEXAS (Houston)
# CIVIL DOCKET FOR CASE #: 4:21-cv-01126
# Internal Use Only

Occidental Petroleum Corporation v. Wells Fargo Bank, N.A.
Assigned to: Chief Judge Lee H Rosenthal
Cause: 28:1330 Breach of Contract

Date Filed: 04/06/2021
Date Terminated: 05/31/2023
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Occidental Petroleum Corporation**                represented by    **Angus Joseph Dodson**
Gibbs and Bruns LLP
1100 Louisiana
Ste 5300
Houston, TX 77002
713-650-8805
Email: jdodson@gibbsbruns.com
*ATTORNEY TO BE NOTICED*

**Ayesha Najam**
Gibbs Bruns LLP
1100 Louisiana
Suite 5300
Houston, TX 77002
713-650-8805
Fax: 713-750-0903
Email: anajam@gibbsbruns.com
*ATTORNEY TO BE NOTICED*

**Mark R. Dore**
Gibbs & Bruns LLP
1100 Louisiana Street
Ste. 5300
Houston, TX 77002
713-650-8805
Email: mdore@gibbsbruns.com
*ATTORNEY TO BE NOTICED*

**Kathy Dawn Patrick**
Gibbs Bruns LLP
1100 Louisiana St
Ste 5300
Houston, TX 77002
713-650-8805
Fax: 713-750-0903
Email: kpatrick@gibbsbruns.com
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Wells Fargo Bank, N.A.**                    represented by    **Johnjerica Hodge**
Katten Muchin Rosenman
2900 K Street NW
North Tower
Suite 200
Washington, DC 20007
202-625-3710
Email: johnjerica.hodge@katten.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christian Kemnitz**
Katten Muchin Rosenman LLP
525 West Monroe St
Chicago, IL 60061
(312) 902-5379
Email: christian.kemnitz@katten.com
*ATTORNEY TO BE NOTICED*

**Jeffrey Lloyd Joyce**
Joyce McFarland LLP
712 Main St.
Ste 1500
Houston, TX 77002
713-222-1113
Fax: 713-513-5577
Email: jjoyce@jmlawyers.com
*ATTORNEY TO BE NOTICED*

**Kelly D. Hine**
Katten Muchin Rosenman LLP
212 North Pearl Street
Suite 110
Dallas, TX 75201
214-765-3600
Email: kelly.hine@kdhpc.com
*TERMINATED: 08/02/2023*
*ATTORNEY TO BE NOTICED*

**Megan Crosby McKennon**
Katten
2121 North Pearl Street
Suite 1100
Dallas, TX 75201-2591
214-765-3614
Email: megan.mckennon@katten.com
*ATTORNEY TO BE NOTICED*

**Rebecca K Lindahl**

Katten Muchin et al
550 S. Tryon Street, Suite 2900
Charlotte, NC 28202
(704) 344-3141
Email: rebecca.lindahl@katten.com
*ATTORNEY TO BE NOTICED*

**Intervenor Plaintiff**

| | | |
|---|---|---|
| **Anadarko Petroleum Corporation** | represented by | **Angus Joseph Dodson**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Ayesha Najam**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Kathy Dawn Patrick**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Third Party Defendant**

**Equiniti Trust Company**

**ThirdParty Plaintiff**

| | | |
|---|---|---|
| **Wells Fargo Bank, N.A.** | represented by | **Christian Kemnitz**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Jeffrey Lloyd Joyce**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Kelly D. Hine**<br>(See above for address)<br>*TERMINATED: 08/02/2023*<br>*ATTORNEY TO BE NOTICED* |
| | | **Rebecca K Lindahl**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Third Party Defendant**

| | | |
|---|---|---|
| **Equiniti Trust Company** | represented by | **Jeremy L Doyle**<br>Reynolds Frizzell LLP<br>1100 Louisiana St<br>Ste 3500<br>Houston, TX 77002<br>713-485-7200<br>Fax: 713-485-7250<br>Email: jdoyle@reynoldsfrizzell.com<br>*LEAD ATTORNEY* |

*ATTORNEY TO BE NOTICED*

**Andrew J Melnick**
Murphy & McGonigle PC
1185 Avenue of the Americas, 21st Floor
New York, NY 10036
212-880-3999
Email: amelnick@mmlawus.com
*ATTORNEY TO BE NOTICED*

**Frederic M Krieger**
Stradley Ronon Stevens & Young, LLP
100 Park Avenue
Suite 2000
New York, NY 10017
212-540-4568
Email: FredericKrieger@dwt.com
*ATTORNEY TO BE NOTICED*

**Jonah R Hecht**
Murphy & McGonigle, P.C.
1185 Avenue of the Americas
21st Floor
New York, NY 10036
212-880-3582
Email: jhecht@mmlawus.com
*TERMINATED: 06/14/2022*
*ATTORNEY TO BE NOTICED*

**Thomas P DeFranco**
McGonigle PC
1001 G St NW, 7th Floor
Washington
202-220-1928
Email: tdefranco@mmlawus.com
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**Wells Fargo Bank, N.A.**                 represented by   **Christian Kemnitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey Lloyd Joyce**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kelly D. Hine**
(See above for address)
*TERMINATED: 08/02/2023*
*ATTORNEY TO BE NOTICED*

**Rebecca K Lindahl**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Wells Fargo Bank, N.A.**                    represented by   **Christian Kemnitz**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Jeffrey Lloyd Joyce**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Kelly D. Hine**
                                                               (See above for address)
                                                               *TERMINATED: 08/02/2023*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Rebecca K Lindahl**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*


V.

**Counter Defendant**

**Occidental Petroleum Corporation**          represented by   **Kathy Dawn Patrick**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Wells Fargo Bank, N.A.**                    represented by   **Christian Kemnitz**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Jeffrey Lloyd Joyce**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Kelly D. Hine**
                                                               (See above for address)
                                                               *TERMINATED: 08/02/2023*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Rebecca K Lindahl**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*


V.

**Counter Defendant**

**Occidental Petroleum Corporation**          represented by   **Kathy Dawn Patrick**
                                                               (See above for address)

*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Wells Fargo & Company**

V.

**Counter Defendant**

| | | |
|---|---|---|
| **Anadarko Petroleum Corporation** | represented by | **Kathy Dawn Patrick**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Counter Defendant**

| | | |
|---|---|---|
| **Occidental Petroleum Corporation** | represented by | **Mark R. Dore**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Kathy Dawn Patrick**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 04/06/2021 | 1 (p.22) | COMPLAINT against Wells Fargo Bank, N.A. (Filing fee $ 402 receipt number 0541-26233094) filed by Occidental Petroleum Corp.. (Attachments: # 1 (p.22) Civil Cover Sheet)(Patrick, Kathy) (Entered: 04/06/2021) |
| 04/07/2021 | 2 (p.36) | ORDER FOR CONFERENCE. Initial Conference set for 7/6/2021 at 10:30 AM in Room 11122 before Judge Lynn N Hughes (Signed by Judge Lynn N Hughes) Parties notified.(JacquelineMataadi, 4) (Entered: 04/07/2021) |
| 04/07/2021 | 3 (p.38) | ORDER OF RECUSAL. Judge Lynn N Hughes recused. Case reassigned to Chief Judge Lee H Rosenthal for all further proceedings. (Signed by Judge Lynn N Hughes) Parties notified. (ghassan, 4) (Entered: 04/07/2021) |
| 04/09/2021 | 4 (p.39) | ORDER Scheduling Rule 16 Conference With the Court and Setting Out the Requirements for Initial Pretrial Work. Initial Conference set for 7/30/2021 at 10:00 AM in Courtroom 11B before Chief Judge Lee H Rosenthal(Signed by Chief Judge Lee H Rosenthal) (Attachments: # 1 (p.22) Supplement) Parties notified.(leddins, 4) (Entered: 04/09/2021) |
| 05/04/2021 | 5 (p.80) | NOTICE of Appearance by Kelly D. Hine on behalf of Wells Fargo Bank, N.A., filed. (Hine, Kelly) (Entered: 05/04/2021) |
| 05/04/2021 | 6 (p.81) | MOTION for Christian Kemnitz to Appear Pro Hac Vice by Wells Fargo Bank, N.A., filed. Motion Docket Date 5/25/2021. (Hine, Kelly) (Entered: 05/04/2021) |
| 05/04/2021 | 7 (p.82) | MOTION for Rebecca K. Lindahl to Appear Pro Hac Vice by Wells Fargo Bank, N.A., filed. Motion Docket Date 5/25/2021. (Hine, Kelly) (Entered: 05/04/2021) |
| 05/04/2021 | 8 (p.83) | ORDER granting 6 (p.81) Motion for Christian Kemnitz to Appear Pro Hac Vice.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(gkelner, 4) (Entered: |

| | | 05/04/2021) |
|---|---|---|
| 05/04/2021 | 9 (p.84) | ORDER granting 7 (p.82) Motion for Rebecca K. Lindahl to Appear Pro Hac Vice.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(gkelner, 4) (Entered: 05/04/2021) |
| 06/03/2021 | 10 (p.85) | STIPULATION re: to Extend Certain Pleading Deadlines by Wells Fargo Bank, N.A., filed.(Joyce, Jeffrey) (Entered: 06/03/2021) |
| 06/21/2021 | 11 (p.88) | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND BRIEF IN SUPPORT* by Wells Fargo Bank, N.A., filed. Motion Docket Date 7/12/2021. (Attachments: # 1 (p.22) Exhibit A, # 2 (p.36) Proposed Order)(Hine, Kelly) (Entered: 06/21/2021) |
| 06/22/2021 | 12 (p.149) | NOTICE of Appearance by Jeff Joyce on behalf of Wells Fargo Bank, N.A., filed. (Joyce, Jeffrey) (Entered: 06/22/2021) |
| 06/29/2021 | 13 (p.150) | DEMAND for Trial by Jury by Occidental Petroleum Corporation, filed.(Dodson, Angus) (Entered: 06/29/2021) |
| 07/13/2021 | 14 (p.153) | First AMENDED COMPLAINT with Jury Demand against Wells Fargo Bank, N.A. filed by Occidental Petroleum Corporation. (Attachments: # 1 (p.22) Exhibit 1)(Patrick, Kathy) (Entered: 07/13/2021) |
| 07/15/2021 | 15 (p.201) | Joint MOTION to Amend 4 (p.39) Order for Initial Conference, by Occidental Petroleum Corporation, filed. Motion Docket Date 8/5/2021. (Attachments: # 1 (p.22) Proposed Order)(Patrick, Kathy) (Entered: 07/15/2021) |
| 07/15/2021 | 18 (p.213) | ORDER granting 15 (p.201) Motion. Each Party will file a certificate listing all persons that are financially interested in the outcome of this litigation, consistent with the requirements of the Order, not later than July 16, 2021. The parties will file a Joint Discovery/Case Management Plan and a Joint Scheduling and Docket Control Order not later than 10 a.m. on July 22, 2021. The Parties will exchange initial disclosures pursuant to Rule 26(a)(1) not later than August 6, 2021. (Signed by Chief Judge Lee H Rosenthal) Parties notified.(ShoshanaArnow, 4) (Entered: 07/19/2021) |
| 07/16/2021 | 16 (p.206) | CERTIFICATE OF INTERESTED PARTIES by Occidental Petroleum Corporation, filed.(Patrick, Kathy) (Entered: 07/16/2021) |
| 07/16/2021 | 17 (p.209) | CERTIFICATE OF INTERESTED PARTIES by Wells Fargo Bank, N.A., filed.(Hine, Kelly) (Entered: 07/16/2021) |
| 07/19/2021 | 19 (p.214) | ORDER denying as moot 11 (p.88) Motion to Dismiss for Failure to State a Claim.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(gkelner, 4) (Entered: 07/19/2021) |
| 07/22/2021 | 20 (p.215) | NOTICE of Resetting. Parties notified. Initial Conference reset for 7/30/2021 at 10:10 AM by video before Chief Judge Lee H Rosenthal, filed. A Zoom link will be provided for participation. (leddins, 4) (Entered: 07/22/2021) |
| 07/22/2021 | 21 (p.216) | JOINT DISCOVERY/CASE MANAGEMENT PLAN by Occidental Petroleum Corporation, filed. (Attachments: # 1 (p.22) Exhibit 1)(Patrick, Kathy) (Entered: 07/22/2021) |
| 07/30/2021 | 22 | Minute entry for proceedings before the Hon. Lee H. Rosenthal. Initial conference held on July 30, 2021. The court will separately enter a scheduling and docket |

| | | |
|---|---|---|
| | | control order, as stated in detail on the record Appearances: Kathy Patrick, Christian Kemnitz, Rebecca Lindahl, Jeffrey Joyce.(Court Reporter: F. Warner), filed.(leddins, 4) (Entered: 07/30/2021) |
| 07/30/2021 | <u>23</u> <u>(p.241)</u> | SCHEDULING ORDER. Motion to Dismiss due by 9/6/2021. Response to Motion to Dismiss due by 9/14/2021. Reply in Support of Motion to Dismiss due by 10/1/2021. Motion to Dismiss Oral Argument due by 10/6/2021. Stipulated Facts due by 11/19/2021. Mediation due by 12/17/2021. Pretrial Dispositive Motion Filing due by 1/14/2022. Responses to Pretrial Dispositive Motion due by 2/4/2022. Reply in Support due by 2/25/2022. Stipulated Facts due by by 11/19/2021 Oral Argument on the Pretrial Dispositive Motion set for 3/11/2022 at 10:00 AM by Zoom.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(olindor, 4) (Entered: 08/02/2021) |
| 09/06/2021 | <u>24</u> <u>(p.243)</u> | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(as to Second and Third Claims)* by Wells Fargo Bank, N.A., filed. Motion Docket Date 9/27/2021. (Attachments: # <u>1 (p.22)</u> Exhibit A- Trust Agreement, # <u>2 (p.36)</u> Exhibit B- Email, # <u>3 (p.38)</u> Proposed Order)(Hine, Kelly) (Entered: 09/06/2021) |
| 09/06/2021 | <u>25</u> <u>(p.324)</u> | THIRD PARTY COMPLAINT against Equiniti Trust Company filed by Wells Fargo Bank, N.A.. (Attachments: # <u>1 (p.22)</u> Exhibit 1- Trust Agreement, # <u>2 (p.36)</u> Exhibit 2- Executed TA Agreement, # <u>3 (p.38)</u> Exhibit 3- EQ Signing Index, # <u>4 (p.39)</u> Exhibit 4- Bill of Sale)(Hine, Kelly) (Entered: 09/06/2021) |
| 09/06/2021 | <u>26</u> <u>(p.428)</u> | Request for Issuance of Summons as to Equiniti Trust Company, filed.(Hine, Kelly) (Entered: 09/06/2021) |
| 09/06/2021 | <u>27</u> <u>(p.430)</u> | ANSWER to <u>14 (p.153)</u> Amended Complaint/Counterclaim/Crossclaim etc., THIRD PARTY COMPLAINT against Equiniti Trust Company, COUNTERCLAIM against Occidental Petroleum Corporation by Wells Fargo Bank, N.A., filed. (Attachments: # <u>1 (p.22)</u> Exhibit 1- Trust Agreement, # <u>2 (p.36)</u> Exhibit 2- Executed TA Agreement, # <u>3 (p.38)</u> Exhibit 3- EQ Signing Index, # <u>4 (p.39)</u> Exhibit 4- Bill of Sale)(Hine, Kelly) (Entered: 09/06/2021) |
| 09/08/2021 | <u>28</u> <u>(p.534)</u> | Summons Issued as to Equiniti Trust Company. Issued summons delivered to plaintiff by NEF, filed.(hlerma, 4) (Entered: 09/08/2021) |
| 09/24/2021 | <u>29</u> <u>(p.536)</u> | MOTION to Dismiss *Counterclaim* by Occidental Petroleum Corporation, filed. Motion Docket Date 10/15/2021. (Attachments: # <u>1 (p.22)</u> Exhibit 1, # <u>2 (p.36)</u> Proposed Order)(Patrick, Kathy) (Entered: 09/24/2021) |
| 09/24/2021 | <u>30</u> <u>(p.591)</u> | RESPONSE to *Defendant's Motion to Dismiss First Amended Complaint*, filed by Occidental Petroleum Corporation. (Attachments: # <u>1 (p.22)</u> Exhibit 1, # <u>2 (p.36)</u> Exhibit 2, # <u>3 (p.38)</u> Proposed Order)(Patrick, Kathy) (Entered: 09/24/2021) |
| 09/24/2021 | | ***Set/Reset Hearings: Motion Hearing set for 10/6/2021 at 10:00 AM by video before Chief Judge Lee H Rosenthal. (leddins, 4) (Entered: 09/24/2021) |
| 09/24/2021 | | ***Set/Reset Hearings: Motion Hearing set for 10/6/2021 at 10:00 AM by video before Chief Judge Lee H Rosenthal and Motion Hearing set for 3/11/2022 at 10:00 AM by video before Chief Judge Lee H Rosenthal. (leddins, 4) (Entered: 09/24/2021) |
| 10/01/2021 | <u>31</u> <u>(p.711)</u> | REPLY in Support of <u>24 (p.243)</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(as to Second and Third Claims)*, filed by Wells Fargo Bank, N.A.. (Lindahl, Rebecca) (Entered: 10/01/2021) |

| | | |
|---|---|---|
| 10/05/2021 | 32 (p.722) | Joint MOTION for Continuance of Oct. 6, 2021 Hearing on Motion to Dismiss and Revise Pretrial Scheduling Order to Permit Consolidated Hearing of All Pending Motions to Dismiss by Occidental Petroleum Corporation, filed. Motion Docket Date 10/26/2021. (Attachments: # 1 (p.22) Proposed Order)(Patrick, Kathy) (Entered: 10/05/2021) |
| 10/05/2021 | 33 (p.727) | ORDER entered: GRANTING 32 (p.722) Joint MOTION for Continuance of Oct. 6, 2021 Hearing on Motion to Dismiss and Revise Pretrial Scheduling Order to Permit Consolidated Hearing of All Pending Motions to Dismiss. Motion Hearing reset for 11/5/2021 at 10:30 AM before Chief Judge Lee H Rosenthal. Counsel will advise if the hearing is to be by Zoom or in person. (Signed by Chief Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 10/05/2021) |
| 10/15/2021 | 34 (p.728) | RESPONSE in Opposition to 29 (p.536) MOTION to Dismiss *Counterclaim*, filed by Wells Fargo Bank, N.A.. (Attachments: # 1 (p.22) Exhibit 1- WF Written Requests)(Lindahl, Rebecca) (Entered: 10/15/2021) |
| 10/22/2021 | 35 (p.757) | REPLY in Support of 29 (p.536) MOTION to Dismiss *Counterclaim*, filed by Occidental Petroleum Corporation. (Patrick, Kathy) (Entered: 10/22/2021) |
| 10/26/2021 | 36 (p.767) | NOTICE of Resetting. Parties notified. Motion Hearing reset for 11/5/2021 at 10:30 AM in Courtroom 11B before Chief Judge Lee H Rosenthal, filed. (ClaudiaGutierrez, 4) (Entered: 10/26/2021) |
| 11/05/2021 | 37 | Minute entry for proceedings before the Hon. Lee H. Rosenthal. Motion hearing held on November 5, 2021. The court heard argument on the parties motions to dismiss. Appearances: Kathy Patrick/Mark Dore/Angus Dodsen for Pltf. and Christian Kemnitz/ Rebecca Lindahl/Jeffrey Joyce for Deft.(Court Reporter: G. Dye), filed.(leddins, 4) (Entered: 11/09/2021) |
| 11/18/2021 | 38 (p.768) | Joint MOTION for Extension of Time to File Stipulated Facts by Occidental Petroleum Corporation, filed. Motion Docket Date 12/9/2021. (Attachments: # 1 (p.22) Proposed Order)(Patrick, Kathy) (Entered: 11/18/2021) |
| 11/19/2021 | 39 (p.773) | ORDER granting 38 (p.768) Motion for Extension of Time to File Stipulated Facts. The deadline is extended to 12/1/2021. (Signed by Chief Judge Lee H Rosenthal) Parties notified.(gclair, 4) (Entered: 11/19/2021) |
| 11/30/2021 | 40 (p.774) | MEMORANDUM AND ORDER entered: Wells Fargo's motion to dismiss the breach of fiduciary duty and indemnity claims, (Docket Entry No. 24), is granted. Occidental's motion to dismiss the counterclaim, (Docket Entry No. 29), is also granted. The parties have made clear that much work remains to be done before this case can be framed for ultimate resolution. The next step is to define the most reliable, careful, and efficient way to get to that point. (Signed by Chief Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 11/30/2021) |
| 12/01/2021 | 41 (p.793) | AO 435 TRANSCRIPT REQUEST by Jeff Joyce for Transcript of Motion Hearing on 11/5/21 before Judge Rosenthal. 3-Day turnaround requested. Court Reporter/Transcriber: Gayle Dye, filed. (Joyce, Jeffrey) (Entered: 12/01/2021) |
| 12/01/2021 | 42 (p.795) | AO 435 TRANSCRIPT REQUEST by Shari Falloon for Transcript of Hearing, 11/05/2021, Lee H Rosenthal. Daily (24 hours) turnaround requested. Court Reporter/Transcriber: Gayle Dye, filed. (BrendaLacy, 4) (Entered: 12/01/2021) |
| 12/01/2021 | 43 (p.797) | STIPULATION re: Joint Statement of Stipulated Facts by Wells Fargo Bank, N.A., filed. (Attachments: # 1 (p.22) Exhibit 1- Trust Agreement, # 2 (p.36) Exhibit 2- |

| | | |
|---|---|---|
| | | Transfer Agent Agreement, # 3 (p.38) Exhibit 3- Purchase Agreement, # 4 (p.39) Exhibit 4- Notice of Change of Control, # 5 (p.80) Exhibit 5- October 2019 Email Exchange, # 6 (p.81) Exhibit 6- December 17-19 Email Exchange, # 7 (p.82) Exhibit 7- Historical Stock Prices, # 8 (p.83) Exhibit 8- Reversion Request, # 9 (p.84) Exhibit 9- Reversion Response)(Lindahl, Rebecca) (Entered: 12/01/2021) |
| 12/02/2021 | 44 (p.4848) | TRANSCRIPT re: Motion Hearing held on November 5, 2021, before Chief Judge Lee H Rosenthal. Court Reporter/Transcriber Dye. Release of Transcript Restriction set for 3/2/2022., filed. (gdye, ) (Entered: 12/02/2021) |
| 12/03/2021 | 45 (p.906) | Notice of Filing of Official Transcript as to 44 (p.4848) Transcript. Party notified, filed. (olindor, 4) (Entered: 12/03/2021) |
| 12/08/2021 | 46 (p.907) | AO 435 TRANSCRIPT REQUEST by Sandra Walton for Transcript of Hearing, 11/05/2021, Judge Lee H Rosenthal. Daily (24 hours) turnaround requested. Court Reporter/Transcriber: Gayle Dye, filed. (BrendaLacy, 4) (Entered: 12/08/2021) |
| 12/13/2021 | 47 (p.909) | MOTION to Dismiss *Defendant Equiniti Trust Company's Motion to Dismiss Under Rules 12(b)(2), 12(b)(3) & 12(b)(6)* by Equiniti Trust Company, filed. Motion Docket Date 1/3/2022. (Attachments: # 1 (p.22) Declaration, # 2 (p.36) Exhibit 1, # 3 (p.38) Exhibit 2, # 4 (p.39) Exhibit 3, # 5 (p.80) Exhibit 4, # 6 (p.81) Exhibit 5, # 7 (p.82) Exhibit 6, # 8 (p.83) Exhibit 7, # 9 (p.84) Exhibit 8, # 10 (p.85) Exhibit 9)(Doyle, Jeremy) (Entered: 12/13/2021) |
| 12/13/2021 | 48 (p.976) | MOTION for Frederic M. Krieger to Appear Pro Hac Vice by Equiniti Trust Company, filed. Motion Docket Date 1/3/2022. (Doyle, Jeremy) (Entered: 12/13/2021) |
| 12/13/2021 | 49 (p.977) | MOTION for Andrew J. Melnick to Appear Pro Hac Vice by Equiniti Trust Company, filed. Motion Docket Date 1/3/2022. (Doyle, Jeremy) (Entered: 12/13/2021) |
| 12/13/2021 | 50 (p.978) | MOTION for Jonah R. Hecht to Appear Pro Hac Vice by Equiniti Trust Company, filed. Motion Docket Date 1/3/2022. (Doyle, Jeremy) (Entered: 12/13/2021) |
| 12/14/2021 | 51 (p.979) | CERTIFICATE OF INTERESTED PARTIES by Equiniti Trust Company, filed.(Doyle, Jeremy) (Entered: 12/14/2021) |
| 12/15/2021 | 52 (p.982) | ORDER granting 48 (p.976) Motion for Frederic M Krieger to Appear Pro Hac Vice.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(gclair, 4) (Entered: 12/16/2021) |
| 12/15/2021 | 53 (p.983) | ORDER granting 49 (p.977) Motion for Andrew J. Melnick to Appear Pro Hac Vice. (Signed by Chief Judge Lee H Rosenthal) Parties notified.(gclair, 4) (Entered: 12/16/2021) |
| 12/15/2021 | 54 (p.984) | ORDER granting 50 (p.978) Motion for Jonah R. Hecht to Appear Pro Hac Vice. (Signed by Chief Judge Lee H Rosenthal) Parties notified.(gclair, 4) (Entered: 12/16/2021) |
| 01/03/2022 | 55 (p.985) | AMENDED THIRD PARTY COMPLAINT against Equiniti Trust Company filed by Wells Fargo Bank, N.A.. Related document: 25 (p.324) Third Party Complaint, filed by Wells Fargo Bank, N.A.. (Attachments: # 1 (p.22) Exhibit 1- Trust Agreement, # 2 (p.36) Exhibit 2- Transfer Agent Agreement, # 3 (p.38) Exhibit 3- Purchase Agreement, # 4 (p.39) Exhibit 4- Transaction Request)(Lindahl, Rebecca) (Entered: 01/03/2022) |

| 01/13/2022 | 56 (p.1085) | Joint PROPOSED ORDER *Amended Scheduling and Docket Control Order* re: 23 (p.241) Scheduling Order,,, filed. (Attachments: # 1 (p.22) Proposed Order Scheduling and Docket Control Order)(Patrick, Kathy) (Entered: 01/13/2022) |
|---|---|---|
| 01/14/2022 | 57 (p.1095) | SCHEDULING ORDER. Amended Pleadings due by 1/21/2022. Responses to Amended Pleadings due by 02/07/2022. Pltf Expert Witness List due by 7/1/2022. Deft Expert Witness List due by 8/15/2022. Discovery due by 10/14/2022. Mediation due by 10/14/2022. Dispositive Motion Filing due by 3/15/2022. Responses due by 4/5/2022. Oral Argument set for 5/2/2022 at 10:00 AM in by video before Chief Judge Lee H Rosenthal Joint Pretrial Order due by 10/31/2022. Docket Call set for 11/7/2022 at 09:00 AM in Courtroom 11B before Chief Judge Lee H Rosenthal (Signed by Chief Judge Lee H Rosenthal) Parties notified.(gkelner, 4) (Entered: 01/14/2022) |
| 01/14/2022 | 58 (p.1098) | Unopposed MOTION for Protective Order by Occidental Petroleum Corporation, filed. Motion Docket Date 2/4/2022. (Attachments: # 1 (p.22) Exhibit, # 2 (p.36) Proposed Order)(Patrick, Kathy) (Entered: 01/14/2022) |
| 01/21/2022 | 59 (p.1118) | Unopposed MOTION for Leave to File Amended Complaint by Occidental Petroleum Corporation, filed. Motion Docket Date 2/11/2022. (Attachments: # 1 (p.22) Exhibit 1, # 2 (p.36) Proposed Order)(Patrick, Kathy) (Entered: 01/21/2022) |
| 01/21/2022 | 62 (p.1144) | Plaintiff and Intervening Plaintiff's Second Amended Complaint.(jguajardo, 4) (Entered: 01/28/2022) |
| 01/28/2022 | 60 (p.1142) | ORDER Granting 58 (p.1098) unopposed Motion for entry of stipulated Protective Order.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(rkonieczny, 4) (Entered: 01/28/2022) |
| 01/28/2022 | 61 (p.1143) | ORDER Granting 59 (p.1118) Motion for Leave to File Second Amended Complaint..(Signed by Chief Judge Lee H Rosenthal) Parties notified.(jguajardo, 4) (Entered: 01/28/2022) |
| 02/01/2022 | 63 (p.1159) | NOTICE *of Change of Firm Name or Address* by Equiniti Trust Company, filed. (Doyle, Jeremy) (Entered: 02/01/2022) |
| 02/04/2022 | 64 (p.1162) | MOTION to Dismiss by Equiniti Trust Company, filed. Motion Docket Date 2/25/2022. (Attachments: # 1 (p.22) Declaration, # 2 (p.36) Exhibit)(ckrus, 4) (Entered: 02/07/2022) |
| 02/07/2022 | 65 (p.1198) | ANSWER to 62 (p.1144) Complaint, COUNTERCLAIM against Occidental Petroleum Corporation by Wells Fargo Bank, N.A., filed. (Attachments: # 1 (p.22) Exhibit 1- Trust Agreement, # 2 (p.36) Exhibit 2- Transfer Agent Agreement, # 3 (p.38) Exhibit 3- Purchase Agreement, # 4 (p.39) Exhibit 4- DRT Request Sample)(Lindahl, Rebecca) (Entered: 02/07/2022) |
| 02/24/2022 | 66 (p.1302) | Joint MOTION for Entry of Order re: Amended Scheduling and Docket Control Order by Equiniti Trust Company, Occidental Petroleum Corporation, Wells Fargo Bank, N.A., filed. Motion Docket Date 3/17/2022. (Attachments: # 1 (p.22) Exhibit A)(Patrick, Kathy) (Entered: 02/24/2022) |
| 02/24/2022 | 67 (p.1310) | Additional EXHIBITS re: 66 (p.1302) Joint MOTION for Entry of Order re: Amended Scheduling and Docket Control Order by Equiniti Trust Company, Occidental Petroleum Corporation, Wells Fargo Bank, N.A., filed.(Patrick, Kathy) (Entered: 02/24/2022) |

| | | |
|---|---|---|
| 02/25/2022 | 68 (p.1313) | AMENDED SCHEDULING AND DOCKET CONTROL ORDER. Dispositive Motion Filing due by 6/10/2022. Responses due by 6/24/2022. Replies due by 7/1/22. Oral Arguments set for 7/28/2022 at 10:00 AM by video. Pltf Expert Report due by 7/1/2022. Deft Expert Report due by 8/15/2022. Discovery due by 10/14/2022. Mediation due by 10/14/2022. Joint Pretrial Order due by 10/31/2022. Docket Call set for 11/7/2022 at 09:00 AM in Courtroom 11B before Chief Judge Lee H Rosenthal(Signed by Chief Judge Lee H Rosenthal) Parties notified.(JosephWells, 4) (Entered: 02/25/2022) |
| 02/25/2022 | 69 (p.1316) | RESPONSE to 64 (p.1162) MOTION to Dismiss , filed by Wells Fargo Bank, N.A.. (Attachments: # 1 (p.22) Exhibit Group Exhibit 1)(Hine, Kelly) (Entered: 02/25/2022) |
| 02/28/2022 | 70 (p.1346) | ANSWER to 65 (p.1198) Answer to Complaint,, Counterclaim, by Occidental Petroleum Corporation, filed.(Patrick, Kathy) (Entered: 02/28/2022) |
| 03/04/2022 | 71 (p.1355) | REPLY in Support of 47 (p.909) MOTION to Dismiss *Defendant Equiniti Trust Company's Motion to Dismiss Under Rules 12(b)(2), 12(b)(3) & 12(b)(6)*, filed by Equiniti Trust Company. (Attachments: # 1 (p.22) Declaration, # 2 (p.36) Exhibit 1)(Doyle, Jeremy) (Entered: 03/04/2022) |
| 03/09/2022 | | (Court only) ***Motion(s) terminated: 66 (p.1302) Joint MOTION for Entry of Order re: Amended Scheduling and Docket Control Order. Granted by de 68. (leddins, 4) (Entered: 03/09/2022) |
| 04/12/2022 | | (Court only) ***Motion(s) terminated: 47 (p.909) MOTION to Dismiss *Defendant Equiniti Trust Company's Motion to Dismiss Under Rules 12(b)(2), 12(b)(3) & 12(b)(6)*. Motion is moot based on the filing of the amended complaint and amended motion to dismiss. (leddins, 4) (Entered: 04/12/2022) |
| 05/03/2022 | 72 (p.1374) | STIPULATION re: Witness by Wells Fargo Bank, N.A., filed.(Hine, Kelly) (Entered: 05/03/2022) |
| 05/12/2022 | 73 (p.1377) | NOTICE *Notice of Additional Authority in Support of Equiniti Trust Company's Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6)* re: 64 (p.1162) MOTION to Dismiss by Equiniti Trust Company, filed. (Attachments: # 1 (p.22) Exhibit A)(Doyle, Jeremy) (Entered: 05/12/2022) |
| 06/06/2022 | 74 (p.1398) | MOTION for Leave to File Third Amended Complaint by Occidental Petroleum Corporation, filed. Motion Docket Date 6/27/2022. (Attachments: # 1 (p.22) Exhibit 1, # 2 (p.36) Exhibit 2, # 3 (p.38) Exhibit 3, # 4 (p.39) Proposed Order)(Patrick, Kathy) (Entered: 06/06/2022) |
| 06/07/2022 | 75 (p.1441) | ***VACATED**** ORDER granting 74 (p.1398) Motion for Leave to File.(Signed by Chief Judge Lee H Rosenthal) Parties notified. (ClaudiaGutierrez, 4) (Entered: 06/07/2022) |
| 06/07/2022 | 76 (p.1442) | Third AMENDED COMPLAINT with Jury Demand against Wells Fargo Bank, N.A. filed by Occidental Petroleum Corporation, Anadarko Petroleum Corporation. (ClaudiaGutierrez, 4) (Entered: 06/07/2022) |
| 06/08/2022 | 77 (p.1458) | ORDER.The court's order granting the plaintiff and intervening plaintiff's motion for leave to file the third amended complaint, (Docket Entry No. 75), is vacated. The third amended complaint (Docket Entry No. 76), will be removed from the docket. The response to the motion for leave to file the third amended complaint, (Docket Entry No. 74), is due June 27, 2022. (Signed by Chief Judge Lee H Rosenthal) |

| | | |
|---|---|---|
| | | Parties notified.(olindor, 4) (Entered: 06/08/2022) |
| 06/09/2022 | 78 (p.1459) | Agreed MOTION to Amend 68 (p.1313) Scheduling Order,, by Equiniti Trust Company, filed. Motion Docket Date 6/30/2022. (Attachments: # 1 (p.22) Proposed Order Ex. A: Proposed Second Amended Scheduling and Docket Control Order)(Doyle, Jeremy) (Entered: 06/09/2022) |
| 06/09/2022 | 79 (p.1465) | SECOND AMENDED SCHEDULING AND DOCKET CONTROL ORDER. Pltf Expert Report due by 7/1/2022. Deft Expert Report due by 8/15/2022. Discovery due by 10/14/2022. Mediation due by 10/14/2022. Pretrial Dispositive Motion Filing due by 6/10/2022. Responses due by 6/24/2022. Replies due by 7/1/2022. Joint Pretrial Order due by 10/31/2022. Docket Call set for 11/7/2022 at 09:00 AM in Courtroom 11B before Chief Judge Lee H Rosenthal. Oral Argument on Pretrial Dispositive Motion set for 7/28/2022 at 10:00 AM in by video before Chief Judge Lee H Rosenthal(Signed by Chief Judge Lee H Rosenthal) Parties notified.(olindor, 4) (Entered: 06/09/2022) |
| 06/10/2022 | 80 (p.1468) | MOTION for Summary Judgment by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. Motion Docket Date 7/1/2022. (Attachments: # 1 (p.22) Exhibit 1, # 2 (p.36) Exhibit 2, # 3 (p.38) Exhibit 3, # 4 (p.39) Exhibit 4, # 5 (p.80) Exhibit 5, # 6 (p.81) Exhibit 6, # 7 (p.82) Exhibit 7, # 8 (p.83) Exhibit 8, # 9 (p.84) Exhibit 9, # 10 (p.85) Exhibit 10, # 11 (p.88) Exhibit 11, # 12 (p.149) Exhibit 12, # 13 (p.150) Exhibit 13, # 14 (p.153) Exhibit 14, # 15 (p.201) Exhibit 15, # 16 (p.206) Exhibit 16, # 17 (p.209) Exhibit 17, # 18 (p.213) Exhibit 18, # 19 (p.214) Exhibit 19, # 20 (p.215) Exhibit 20, # 21 (p.216) Exhibit 21, # 22 Exhibit 22, # 23 (p.241) Exhibit 23, # 24 (p.243) Exhibit 24, # 25 (p.324) Exhibit 25, # 26 (p.428) Exhibit 26, # 27 (p.430) Exhibit 27, # 28 (p.534) Exhibit 28, # 29 (p.536) Exhibit 29, # 30 (p.591) Exhibit 30, # 31 (p.711) Exhibit 31, # 32 (p.722) Exhibit 32, # 33 (p.727) Exhibit 33, # 34 (p.728) Exhibit 34, # 35 (p.757) Exhibit 35, # 36 (p.767) Exhibit 36, # 37 (p.768) Exhibit 37, # 38 (p.768) Exhibit 38, # 39 (p.773) Exhibit 39, # 40 (p.774) Exhibit 40, # 41 (p.793) Exhibit 41, # 42 (p.795) Exhibit 42, # 43 (p.797) Exhibit 43, # 44 (p.4848) Exhibit 44, # 45 (p.906) Exhibit 45, # 46 (p.907) Exhibit 46, # 47 (p.909) Exhibit 47, # 48 (p.976) Exhibit 48, # 49 (p.977) Exhibit 49, # 50 (p.978) Exhibit 50, # 51 (p.979) Exhibit 51, # 52 (p.982) Exhibit 52, # 53 (p.983) Exhibit 53, # 54 (p.984) Exhibit 54, # 55 (p.985) Exhibit 55, # 56 (p.1085) Exhibit 56, # 57 (p.1095) Exhibit 57, # 58 (p.1098) Exhibit 58, # 59 (p.1118) Exhibit 59, # 60 (p.1142) Exhibit 60, # 61 (p.1143) Exhibit 61, # 62 (p.1144) Exhibit 62, # 63 (p.1159) Proposed Order)(Patrick, Kathy) (Entered: 06/10/2022) |
| 06/10/2022 | 81 (p.2008) | MOTION for Summary Judgment by Wells Fargo Bank, N.A., filed. Motion Docket Date 7/1/2022. (Attachments: # 1 (p.22) Appendix, # 2 (p.36) Proposed Order)(Hine, Kelly) (Entered: 06/10/2022) |
| 06/10/2022 | 82 (p.5126) | SEALED EXHIBITS re: 80 (p.1468) MOTION for Summary Judgment by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. (Attachments: # 1 (p.22) Exhibit 5, # 2 (p.36) Exhibit 8, # 3 (p.38) Exhibit 9, # 4 (p.39) Exhibit 10, # 5 (p.80) Exhibit 11, # 6 (p.81) Exhibit 14, # 7 (p.82) Exhibit 19, # 8 (p.83) Exhibit 20, # 9 (p.84) Exhibit 21, # 10 (p.85) Exhibit 23, # 11 (p.88) Exhibit 25, # 12 (p.149) Exhibit 26, # 13 (p.150) Exhibit 29, # 14 (p.153) Exhibit 30, # 15 (p.201) Exhibit 31, # 16 (p.206) Exhibit 33, # 17 (p.209) Exhibit 34, # 18 (p.213) Exhibit 35, # 19 (p.214) Exhibit 36, # 20 (p.215) Exhibit 37, # 21 (p.216) Exhibit 38, # 22 Exhibit 39, # 23 (p.241) Exhibit 40, # 24 (p.243) Exhibit 41, # 25 (p.324) Exhibit 43, # 26 (p.428) Exhibit 44, # 27 (p.430) Exhibit 45, # 28 (p.534) Exhibit 47, # 29 (p.536) Exhibit 48, # 30 (p.591) Exhibit 50, # 31 (p.711) Exhibit 51, |

| | | |
|---|---|---|
| | | # 32 (p.722) Exhibit 53, # 33 (p.727) Exhibit 54, # 34 (p.728) Exhibit 56, # 35 (p.757) Exhibit 58, # 36 (p.767) Exhibit 59) (Patrick, Kathy) (Entered: 06/10/2022) |
| 06/10/2022 | 83 (p.5300) | SEALED MOTION by Wells Fargo Bank, N.A., filed. (Attachments: # 1 (p.22) Appendix, # 2 (p.36) Proposed Order) (Hine, Kelly) (Entered: 06/10/2022) |
| 06/10/2022 | 84 (p.2415) | MOTION to Seal Exhibits to Motion for Summary Judgment by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. Motion Docket Date 7/1/2022. (Attachments: # 1 (p.22) Proposed Order)(Patrick, Kathy) (Entered: 06/10/2022) |
| 06/14/2022 | 85 (p.2422) | MOTION for Thomas P. DeFranco to Appear Pro Hac Vice by Equiniti Trust Company, filed. Motion Docket Date 7/5/2022. (Doyle, Jeremy) (Entered: 06/14/2022) |
| 06/14/2022 | 86 (p.2423) | ORDER granting 85 (p.2422) Motion for Thomas P. DeFranco to Appear Pro Hac Vice.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(gclair, 4) (Entered: 06/14/2022) |
| 06/14/2022 | 87 (p.2424) | ORDER granting 84 (p.2415) Motion to Seal.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(gclair, 4) (Entered: 06/14/2022) |
| 06/14/2022 | 88 (p.2426) | Unopposed MOTION for Jonah Hecht to Withdraw as Attorney by Equiniti Trust Company, filed. Motion Docket Date 7/5/2022. (Attachments: # 1 (p.22) Proposed Order)(Doyle, Jeremy) (Entered: 06/14/2022) |
| 06/14/2022 | 89 (p.2430) | ORDER granting 88 (p.2426) Motion to Withdraw as Attorney Jonah R Hecht.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(gclair, 4) (Entered: 06/14/2022) |
| 06/21/2022 | 90 (p.2431) | MEMORANDUM AND ORDER entered:; Equiniti's motion to dismiss Wells Fargo's counterclaim for lack of personal jurisdiction, (Docket Entry No. 64), is granted. Equiniti's motion to amend the scheduling and docket control order, (Docket Entry No. 78). is denied as moot.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 06/21/2022) |
| 06/24/2022 | 91 (p.2447) | RESPONSE in Opposition to 80 (p.1468) MOTION for Summary Judgment , filed by Wells Fargo Bank, N.A.. (Attachments: # 1 (p.22) Appendix, # 2 (p.36) Proposed Order)(Lindahl, Rebecca) (Entered: 06/24/2022) |
| 06/24/2022 | 92 (p.2666) | MOTION to Seal Appendix by Wells Fargo Bank, N.A., filed. Motion Docket Date 7/15/2022. (Attachments: # 1 (p.22) Proposed Order)(McKennon, Megan) (Entered: 06/24/2022) |
| 06/24/2022 | 93 (p.5369) | SEALED EXHIBITS *Appendix (Exhibit 219)* re: 91 (p.2447) Response in Opposition to Motion by Wells Fargo Bank, N.A., filed. (McKennon, Megan) (Entered: 06/24/2022) |
| 06/24/2022 | 94 (p.2671) | APPENDIX re: 80 (p.1468) MOTION for Summary Judgment by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed.(Patrick, Kathy) (Entered: 06/24/2022) |
| 06/24/2022 | 95 (p.2674) | RESPONSE to 81 (p.2008) MOTION for Summary Judgment filed by Anadarko Petroleum Corporation, Occidental Petroleum Corporation. (Attachments: # 1 (p.22) Appendix, # 2 (p.36) Exhibit 1, # 3 (p.38) Exhibit 2, # 4 (p.39) Exhibit 3, # 5 (p.80) Exhibit 4, # 6 (p.81) Exhibit 5, # 7 (p.82) Exhibit 5a, # 8 (p.83) Exhibit 6, # 9 (p.84) Exhibit 7, # 10 (p.85) Exhibit 7a, # 11 (p.88) Exhibit 8, # 12 (p.149) Exhibit 9, # 13 |

| | | |
|---|---|---|
| | | (p.150) Exhibit 15, # 14 (p.153) Exhibit 15a, # 15 (p.201) Exhibit 16, # 16 (p.206) Exhibit 17, # 17 (p.209) Exhibit 17a, # 18 (p.213) Exhibit 19, # 19 (p.214) Exhibit 20, # 20 (p.215) Exhibit 21, # 21 (p.216) Exhibit 39, # 22 Exhibit 54, # 23 (p.241) Exhibit 63, # 24 (p.243) Exhibit 64, # 25 (p.324) Exhibit 65, # 26 (p.428) Proposed Order)(Patrick, Kathy) (Entered: 06/24/2022) |
| 06/24/2022 | 96 (p.5373) | SEALED EXHIBITS re: 95 (p.2674) Response to Motion,, by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. (Attachments: # 1 (p.22) Exhibit 6, # 2 (p.36) Exhibit 8, # 3 (p.38) Exhibit 9, # 4 (p.39) Exhibit 19, # 5 (p.80) Exhibit 20, # 6 (p.81) Exhibit 21, # 7 (p.82) Exhibit 39, # 8 (p.83) Exhibit 54, # 9 (p.84) Exhibit 63, # 10 (p.85) Exhibit 64) (Patrick, Kathy) (Entered: 06/24/2022) |
| 06/24/2022 | 97 (p.3074) | Unopposed MOTION to Seal Exhibits to Response to Defendant's Motion for Summary Judgment by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. Motion Docket Date 7/15/2022. (Attachments: # 1 (p.22) Proposed Order)(Patrick, Kathy) (Entered: 06/24/2022) |
| 06/27/2022 | 98 (p.3079) | RESPONSE in Opposition to 74 (p.1398) MOTION for Leave to File Third Amended Complaint, filed by Wells Fargo Bank, N.A.. (Attachments: # 1 (p.22) Appendix, # 2 (p.36) Proposed Order)(Lindahl, Rebecca) (Entered: 06/27/2022) |
| 06/30/2022 | 99 (p.3143) | ORDER granting 97 (p.3074) Motion to Seal.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(JosephWells, 4) (Entered: 06/30/2022) |
| 07/01/2022 | 100 (p.3144) | Supplemental APPENDIX re: 91 (p.2447) Response in Opposition to Motion by Wells Fargo Bank, N.A., filed.(Lindahl, Rebecca) (Entered: 07/01/2022) |
| 07/01/2022 | 101 (p.3336) | REPLY to 81 (p.2008) MOTION for Summary Judgment , filed by Wells Fargo Bank, N.A.. (Lindahl, Rebecca) (Entered: 07/01/2022) |
| 07/01/2022 | 102 (p.3356) | STIPULATION re: Request for Second Amended Scheduling Order and Docket Control Order by Wells Fargo Bank, N.A., filed. (Attachments: # 1 (p.22) Exhibit A)(Lindahl, Rebecca) (Entered: 07/01/2022) |
| 07/01/2022 | 103 (p.3363) | REPLY in Support of 80 (p.1468) MOTION for Summary Judgment , filed by Anadarko Petroleum Corporation, Occidental Petroleum Corporation. (Attachments: # 1 (p.22) Appendix, # 2 (p.36) Exhibit 7b, # 3 (p.38) Exhibit 15b, # 4 (p.39) Exhibit 16a, # 5 (p.80) Exhibit 17b, # 6 (p.81) Exhibit 66)(Patrick, Kathy) (Entered: 07/01/2022) |
| 07/05/2022 | 104 (p.3417) | SECOND AMENDED SCHEDULING AND DOCKET CONTROL ORDER. Oral Argument on Pretrial Dispositive Motions set for 7/28/2022 at 10:00 AM by video before Chief Judge Lee H Rosenthal. Pltf Expert Report due by 7/18/2022. Deft Expert Report due by 9/2/2022. Discovery due by 10/14/2022. Mediation due by 10/14/2022. Joint Pretrial Order due by 10/13/2022. Docket Call set for 11/7/2022 at 09:00 AM in Courtroom 11B before Chief Judge Lee H Rosenthal(Signed by Chief Judge Lee H Rosenthal) Parties notified.(JosephWells, 4) (Entered: 07/05/2022) |
| 07/05/2022 | 105 (p.3420) | REPLY in Support of 74 (p.1398) MOTION for Leave to File Third Amended Complaint, filed by Anadarko Petroleum Corporation, Occidental Petroleum Corporation. (Patrick, Kathy) (Entered: 07/05/2022) |
| 07/21/2022 | 106 (p.3429) | MOTION to Expedite In-Person Hearing of Motions for Summary Judgment by Occidental Petroleum Corporation, filed. Motion Docket Date 8/11/2022. (Attachments: # 1 (p.22) Proposed Order)(Patrick, Kathy) (Entered: 07/21/2022) |

| | | |
|---|---|---|
| 07/21/2022 | 107 (p.3434) | ORDER entered: Counsel for plaintiffs have requested an in-person hearing for arguments on pending motions. (Docket Entry No. 106). The defendants and their counsel, who are in distant states, have asked to appear by Zoom. Hybrid hearings, part Zoom and part in person, are not a viable option. Given the current COVID surge, and the skill and experience of counsel in using Zoom for arguments on motions, the court orders that the hearing be by Zoom. A link will be separately sent.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 07/21/2022) |
| 07/22/2022 | 108 (p.3435) | NOTICE of Resetting. Parties notified. Motion Hearing reset for 8/4/2022 at 02:00 AM in by video before Chief Judge Lee H Rosenthal, filed. A Zoom link will be provided. (leddins, 4) (Entered: 07/22/2022) |
| 07/22/2022 | 109 (p.3436) | NOTICE of Resetting. Parties notified. Motion Hearing reset for 8/4/2022 at 02:00 PM by video before Chief Judge Lee H Rosenthal, filed. A Zoom link will be provided. (leddins, 4) (Entered: 07/22/2022) |
| 08/04/2022 | 110 (p.3437) | SUPPLEMENT to 101 (p.3336) Reply by Wells Fargo Bank, N.A., filed.(McKennon, Megan) (Entered: 08/04/2022) |
| 08/04/2022 | | (Court only) ***Attorney Mark R. Dore for Occidental Petroleum Corporation added. (leddins, 4) (Entered: 08/04/2022) |
| 08/04/2022 | 111 | Minute entry for proceedings before the Hon. Lee H. Rosenthal. Motion hearing held on August 4, 2022. The court heard oral argument on the cross motions for summary judgment and the motion for leave to amend. The court took the motions under advisement. The parties will notify the court by August 10, 2022 if they intend to pursue mediation. Appearances: Kathy Patrick/Mark Dore for Pltf. and Kelly Hine/Rebecca Lindahl/Jeffrey Joyce for Deft. (Court Reporter: D. Smith), filed.(leddins, 4) (Entered: 08/04/2022) |
| 08/04/2022 | 112 (p.3441) | PowerPoint Slides Presented at Hearing on Dispositive Motions Held August 4, 2022 by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed.(Patrick, Kathy) (Entered: 08/04/2022) |
| 08/15/2022 | 113 (p.3499) | AO 435 TRANSCRIPT REQUEST by Occidental Petroleum/Kathy D. Patrick for Transcript of Motion Hearing on 8/4/22 before Judge Rosenthal. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: Veritext Legal Solutions, filed. (Patrick, Kathy) (Entered: 08/15/2022) |
| 08/15/2022 | 114 (p.3501) | AO 435 TRANSCRIPT REQUEST by Rebecca K. Lindahl for Transcript of Motion hearing on 8/4/2022 before Judge Rosenthal. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: David Smith, filed. (Lindahl, Rebecca) (Entered: 08/15/2022) |
| 08/15/2022 | 115 (p.3503) | AO 435 TRANSCRIPT REQUEST by Melissa Westbrook for Transcript of Hearing,08/04/22, Judge Lee H Rosenthal. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: David Smith, filed. (BrendaLacy, 4) (Entered: 08/16/2022) |
| 08/18/2022 | 116 (p.3505) | MEMORANDUM AND ORDER entered: Occidental's motion for summary judgment, (Docket Entry No. 80), is granted as to liability for the breach of contract claim, and granted as to the dismissal of the Wells Fargo counterclaim. Wells Fargo's motion for summary judgment is denied. (Docket Entry No. 81). The motion for leave to amend and the motions to seal are granted. (Docket Entry Nos. 74, 83, 92). No later than September 9, 2022, the parties must provide a proposed amended |

| | | |
|---|---|---|
| | | scheduling order, agreed upon if possible, to resolve the remaining issues.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 08/18/2022) |
| 08/23/2022 | 117 (p.4914) | TRANSCRIPT re: Motion Hearing held on 08/04/2022 before Chief Judge Lee H Rosenthal. Court Reporter/Transcriber David S. Smith. Ordering Party Kathy Patrick, Rebecca Lindahl, Melissa Westbrook Release of Transcript Restriction set for 11/21/2022., filed. (Smith, David) (Entered: 08/23/2022) |
| 08/24/2022 | 118 (p.3543) | Notice of Filing of Official Transcript as to 117 (p.4914) Transcript,. Party notified, filed. (jdav, 4) (Entered: 08/24/2022) |
| 09/01/2022 | 119 (p.3544) | ANSWER to 76 (p.1442) Amended Complaint/Counterclaim/Crossclaim etc., COUNTERCLAIM against Anadarko Petroleum Corporation, Occidental Petroleum Corporation by Wells Fargo & Company, filed.(Lindahl, Rebecca) (Entered: 09/01/2022) |
| 09/09/2022 | 120 (p.3572) | Joint PROPOSED ORDER *Scheduling Orders*, filed. (Attachments: # 1 (p.22) Exhibit A- Plaintiffs' Proposed Scheduling Order, # 2 (p.36) Exhibit B- Defendant's Proposed Scheduling Order)(Lindahl, Rebecca) (Entered: 09/09/2022) |
| 09/14/2022 | 121 (p.3584) | THIRD AMENDED SCHEDULING ORDER. Discovery due by 10/14/2022. Joint Pretrial Order due by 11/30/2022. Docket Call set for 12/7/2022 at 09:00 AM in Courtroom 11B before Chief Judge Lee H Rosenthal(Signed by Chief Judge Lee H Rosenthal) Parties notified.(rguerrero, 4) (Entered: 09/14/2022) |
| 09/23/2022 | 122 (p.3588) | MOTION for Summary Judgment *on Damages* by Occidental Petroleum Corporation, filed. Motion Docket Date 10/14/2022. (Attachments: # 1 (p.22) Exhibit 1, # 2 (p.36) Exhibit 2, # 3 (p.38) Exhibit 3, # 4 (p.39) Exhibit 4, # 5 (p.80) Exhibit 5, # 6 (p.81) Exhibit 6, # 7 (p.82) Exhibit 7, # 8 (p.83) Exhibit 8, # 9 (p.84) Exhibit 9, # 10 (p.85) Exhibit 10, # 11 (p.88) Proposed Order)(Patrick, Kathy) (Entered: 09/23/2022) |
| 09/23/2022 | 123 (p.5402) | SEALED EXHIBITS *6, 7, and 8* re: 122 (p.3588) MOTION for Summary Judgment *on Damages* by Occidental Petroleum Corporation, filed. (Attachments: # 1 (p.22) Exhibit 7, # 2 (p.36) Exhibit 8) (Patrick, Kathy) (Entered: 09/23/2022) |
| 09/23/2022 | 124 (p.3903) | MOTION to Seal Exhibits by Occidental Petroleum Corporation, filed. Motion Docket Date 10/14/2022. (Attachments: # 1 (p.22) Proposed Order)(Patrick, Kathy) (Entered: 09/23/2022) |
| 09/28/2022 | 125 (p.3908) | ORDER granting 124 (p.3903) Motion to Seal.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(kpicota, 4) (Entered: 09/28/2022) |
| 10/14/2022 | 126 (p.3909) | NOTICE of Setting. Parties notified. Pre-Motion Conference set for 10/18/2022 at 11:00 AM by video before Chief Judge Lee H Rosenthal, filed. A Zoom link will be provided. (leddins, 4) (Entered: 10/14/2022) |
| 10/14/2022 | 127 (p.3910) | RESPONSE in Opposition to 122 (p.3588) MOTION for Summary Judgment *on Damages*, filed by Wells Fargo Bank, N.A.. (Attachments: # 1 (p.22) Appendix, # 2 (p.36) Declaration of Megan McKennon, # 3 (p.38) Declaration of Rebecca Lindahl, # 4 (p.39) Declaration of Nikki Tanner, # 5 (p.80) Declaration of David Blackwell, # 6 (p.81) Declaration of Joseph Thomas)(Lindahl, Rebecca) (Entered: 10/14/2022) |
| 10/17/2022 | 128 (p.4134) | NOTICE of Resetting. Parties notified. Pre-Motion Conference reset for 10/19/2022 at 11:15 AM by video before Chief Judge Lee H Rosenthal, filed. (leddins, 4) (Entered: 10/17/2022) |

| | | |
|---|---|---|
| 10/18/2022 | 129 (p.4135) | NOTICE of Resetting. Parties notified. Pre-Motion Conference reset for 10/26/2022 at 03:30 PM by video before Chief Judge Lee H Rosenthal, filed. (leddins, 4) (Entered: 10/18/2022) |
| 10/21/2022 | 130 (p.4136) | REPLY in Support of 122 (p.3588) MOTION for Summary Judgment *on Damages*, filed by Anadarko Petroleum Corporation, Occidental Petroleum Corporation. (Patrick, Kathy) (Entered: 10/21/2022) |
| 10/26/2022 | 131 (p.4157) | NOTICE of Resetting. Parties notified. Pre-Motion Conference reset for 11/2/2022 at 09:30 AM by video before Chief Judge Lee H Rosenthal, filed. (ClaudiaGutierrez, 4) (Entered: 10/26/2022) |
| 11/01/2022 | 132 (p.4158) | NOTICE of Appearance by Johnjerica Hodge on behalf of Wells Fargo Bank, N.A., filed. (Hodge, Johnjerica) (Entered: 11/01/2022) |
| 11/02/2022 | 133 (p.4159) | Wells Fargo Presentation for Hearing on Motion for Summary Judgment on Damages by Wells Fargo Bank, N.A., filed.(Hodge, Johnjerica) (Entered: 11/02/2022) |
| 11/02/2022 | 137 | Minute entry for proceedings before the Hon. Lee H. Rosenthal. Pre-motion conference and hearing on the motion for summary judgment (Docket Entry No. 122) held on November 2, 2022. Because Wells Fargo has identified a narrow set of questions, the court will allow a short deposition on the plaintiffs 30(b)(6) representative. Wells Fargo may take no longer than 1 hour to depose the witness. Occidental and Anadarko may take no longer than an hour to redirect the witness. The deadline to complete this deposition is November 21, 2022. The parties will submit a status report shortly after as to the effect of the additional deposition on the pending motion for summary judgment. The status report is limited to 10 pages, including exhibits. The court will not compel plaintiffs to submit additional interrogatory responses. The court heard argument on the motion for summary judgment on damages. That motion remains under consideration. Appearances: Kathy Patrick/Mark Dore for Pltf. and Christian Kemnitz/Rebecca Lindahl/ Megan McKennon/Johnjerica Hodge for Deft.(Court Reporter: N. Forrest), filed.(leddins, 4) (Entered: 11/04/2022) |
| 11/03/2022 | 134 (p.4176) | AO 435 TRANSCRIPT REQUEST by Occidental Petroleum Corp. for Transcript of Pre-Motion Conference on 11/2/2022 before Judge Rosenthal. 3-Day turnaround requested. Court Reporter/Transcriber: Nichole Forrest, filed. (Dore, Mark) (Entered: 11/03/2022) |
| 11/03/2022 | 135 (p.4178) | AO 435 TRANSCRIPT REQUEST by Melissa Westbrook for Transcript of Hearing held on 11/2/22. 3-Day turnaround requested. Court Reporter/Transcriber: Nichole Forrest, filed. (RachelWillborg, 4) (Entered: 11/03/2022) |
| 11/03/2022 | 136 (p.4180) | AO 435 TRANSCRIPT REQUEST by Rebecca K. Lindahl for Transcript of Pre-Motion Conference 11/2/22 Judge Rosenthal. 3-Day turnaround requested. Court Reporter/Transcriber: Nichole Forrest, filed. (Lindahl, Rebecca) (Entered: 11/03/2022) |
| 11/08/2022 | 138 (p.4997) | TRANSCRIPT re: Hearing held on 11/2/22 before Chief Judge Lee H Rosenthal. Court Reporter/Transcriber Nichole Forrest, RDR, CRR, CRC. Release of Transcript Restriction set for 2/6/2023., filed. (Forrest, Nichole) (Entered: 11/08/2022) |
| 11/09/2022 | 139 (p.4182) | Notice of Filing of Official Transcript as to 138 (p.4997) Transcript. Party notified, filed. (HeatherCarr, 4) (Entered: 11/09/2022) |

| | | |
|---|---|---|
| 11/15/2022 | 140 (p.4183) | STIPULATION re: Supplemental Deposition of Plaintiffs by Wells Fargo Bank, N.A., filed.(Lindahl, Rebecca) (Entered: 11/15/2022) |
| 11/16/2022 | 141 (p.4188) | NOTICE of Resetting. Parties notified. Docket Call reset for 2/24/2023 at 09:30 AM by video before Chief Judge Lee H Rosenthal, filed. The joint pretrial order is due by 2/17/23. (leddins, 4) (Entered: 11/16/2022) |
| 11/22/2022 | 142 (p.4189) | SUPPLEMENT to 122 (p.3588) MOTION for Summary Judgment *on Damages* by Occidental Petroleum Corporation, filed. (Attachments: # 1 (p.22) Exhibit A)(Patrick, Kathy) (Entered: 11/22/2022) |
| 11/23/2022 | 143 (p.4200) | SUPPLEMENT to 127 (p.3910) Response in Opposition to Motion, by Wells Fargo Bank, N.A., filed.(Lindahl, Rebecca) (Entered: 11/23/2022) |
| 02/15/2023 | 144 (p.4210) | NOTICE of Appearance by Ayesha Najam on behalf of Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. (Najam, Ayesha) (Entered: 02/15/2023) |
| 02/22/2023 | 145 (p.4212) | ORDER entered: The court cancels the joint pretrial order deadline and the docket call setting, pending the ruling on the defendant's motion for summary judgment. The joint pretrial order filing deadline and date for docket call will be reset, if appropriate, after the motion is resolved. Deadlines terminated.(Signed by Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 02/22/2023) |
| 03/31/2023 | 146 (p.4213) | SUPPLEMENT to 127 (p.3910) Response in Opposition to Motion, 143 (p.4200) Supplement, 122 (p.3588) MOTION for Summary Judgment *on Damages* by Wells Fargo Bank, N.A., filed.(Hine, Kelly) (Entered: 03/31/2023) |
| 04/04/2023 | 147 (p.4227) | SUPPLEMENT to 122 (p.3588) MOTION for Summary Judgment *on Damages* by Occidental Petroleum Corporation, filed.(Patrick, Kathy) (Entered: 04/04/2023) |
| 05/31/2023 | 148 (p.4231) | MEMORANDUM AND ORDER entered: Occidental's motion for summary judgment, (Docket Entry No. 122), is granted. Judgment is entered in the amount of $38,008,313, with prejudgment interest accruing at a rate of 5.5 percent as of January 25, 2021, and postjudgment interest accruing at a rate of 5.15 percent as of the date of this judgment, per annum. Occidental's motion for attorney's fees and the accompanying affidavits must be filed no later than July 7, 2023. Wells Fargo must respond no later than August 4, 2023. Final judgment will be entered separately. See FED. R. CIV. P. 54(d)(2), 58(a). (Signed by Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 05/31/2023) |
| 05/31/2023 | 149 (p.4252) | FINAL JUDGMENT entered. Case terminated on 5/31/23.(Signed by Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 05/31/2023) |
| 06/07/2023 | 150 (p.4253) | Unopposed MOTION for Relief from Judgment by Occidental Petroleum Corporation, filed. Motion Docket Date 6/28/2023. (Attachments: # 1 (p.22) Proposed Order)(Patrick, Kathy) (Entered: 06/07/2023) |
| 06/07/2023 | 151 (p.4259) | FINAL JUDGMENT entered granting docket entry no 150 to correct the judgment. (Signed by Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 06/07/2023) |
| 06/07/2023 | | (Court only) ***Motion(s) terminated: 150 (p.4253) Unopposed MOTION for Relief from Judgment. (leddins, 4) (Entered: 06/07/2023) |
| 06/14/2023 | 152 (p.4261) | BILL OF COSTS in total amount $$79,899.96 by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. (Attachments: # 1 (p.22) Exhibit 1 - |

| | | |
|---|---|---|
| | | Declaration of Angus J. Dodson, # 2 (p.36) Exhibit 1A, # 3 (p.38) Exhibit 1B, # 4 (p.39) Exhibit 1C)(Dodson, Angus) (Entered: 06/14/2023) |
| 06/21/2023 | 153 (p.4343) | OBJECTIONS to 152 (p.4261) Bill of Costs, , filed by Wells Fargo Bank, N.A.. (Lindahl, Rebecca) (Entered: 06/21/2023) |
| 06/26/2023 | 154 (p.4350) | RESPONSE to 153 (p.4343) Objections *to Plaintiffs' Bill of Costs*, filed by Anadarko Petroleum Corporation, Occidental Petroleum Corporation. (Attachments: # 1 (p.22) Exhibit 1 - Supplemental Declaration of Angus J. Dodson)(Dodson, Angus) (Entered: 06/26/2023) |
| 06/30/2023 | | (Court only) ***(PRIVATE ENTRY) No action taken on bill of costs, pending objection. (HeatherCarr, 4) (Entered: 06/30/2023) |
| 06/30/2023 | 155 (p.4359) | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 149 (p.4252) Final Judgment, 151 (p.4259) Final Judgment by Wells Fargo Bank, N.A. (Filing fee $ 505, receipt number ATXSDC-30148857), filed.(Lindahl, Rebecca) (Entered: 06/30/2023) |
| 07/03/2023 | 156 (p.4362) | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 155 (p.4359) Notice of Appeal. Fee status: Paid. Reporter(s): F. Warner, filed. (DorinaReyna, 1) (Entered: 07/03/2023) |
| 07/03/2023 | | Appeal Review Notes re: 155 (p.4359) Notice of Appeal. Fee status: Paid. The appeal filing fee has been paid or an ifp motion has been granted.Hearings were held in the case. DKT13 transcript order form(s) due within 14 days of the filing of the notice of appeal.Hearings were held in the case - transcripts were produced. Number of DKT-13 Forms expected: 1, filed.(DorinaReyna, 1) (Entered: 07/03/2023) |
| 07/06/2023 | | Notice of Assignment of USCA No. 23-20318 re: 155 (p.4359) Notice of Appeal, filed.(EdnitaPonce, 1) (Entered: 07/06/2023) |
| 07/07/2023 | 157 (p.4363) | MOTION for Attorney Fees by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. Motion Docket Date 7/28/2023. (Attachments: # 1 (p.22) Exhibit 1 - Declaration of Kathy Patrick, # 2 (p.36) Exhibit A, # 3 (p.38) Exhibit 2, # 4 (p.39) Exhibit 3, # 5 (p.80) Exhibit 4)(Dodson, Angus) (Entered: 07/07/2023) |
| 07/12/2023 | 158 (p.4785) | DKT13 TRANSCRIPT ORDER REQUEST by Wells Fargo. This is to order a transcript of 7/30/2021 Conference before Judge Rosenthal. Court Reporter/Transcriber: Fred Warner. This order form relates to the following: 22 Scheduling Conference,, filed.(Hodge, Johnjerica) (Entered: 07/12/2023) |
| 07/20/2023 | 159 (p.4838) | APPEAL TRANSCRIPT re Initial Conference (By Zoom) held on July 30, 2021 before Judge Lee H Rosenthal. Court Reporter/Transcriber FWarner. Ordering Party: Johnjerica Hodge. This transcript relates to the following: 158 (p.4785) Appeal Transcript Request,. Release of Transcript Restriction set for 10/18/2023., filed. (Warner, Fred) (Entered: 07/20/2023) |
| 07/21/2023 | 160 (p.4787) | Notice of Filing of Official Transcript as to 159 (p.4838) Transcript - Appeal. Party notified, filed. (MayraMarquez, 4) (Entered: 07/21/2023) |
| 07/21/2023 | 161 (p.4788) | Unopposed MOTION to Stay *Execution or Enforcement of Judgment* by Wells Fargo Bank, N.A., filed. Motion Docket Date 8/11/2023. (McKennon, Megan) (Entered: 07/21/2023) |
| 07/21/2023 | | |

| | 162 (p.4794) | PROPOSED ORDER re: 161 (p.4788) Unopposed MOTION to Stay *Execution or Enforcement of Judgment*, filed.(McKennon, Megan) (Entered: 07/21/2023) |
|---|---|---|
| 07/24/2023 | 163 (p.4795) | ORDER Granting Motion to Stay Execution or Enforcement of Judgment and Approval of Supersedeas Bond granting 161 (p.4788) . Enforcement of or execution of the Court's 6/7/2023 judgment is stayed pending appeal. (Signed by Judge Lee H Rosenthal) Parties notified. (ghassan, 4) (Entered: 07/24/2023) |
| 07/27/2023 | 164 (p.4796) | Unopposed MOTION for Kelly D. Hine to Withdraw as Attorney by Wells Fargo Bank, N.A., filed. Motion Docket Date 8/17/2023. (Attachments: # 1 (p.22) Proposed Order)(Hine, Kelly) (Entered: 07/27/2023) |
| 07/27/2023 | 165 (p.4800) | Order of USCA re: 155 (p.4359) Notice of Appeal ; USCA No. 23-20318. The court has granted the unopposed motion of Attorney Mr. Kelly D. Hine to withdraw as Appellant's counsel of record in this case, filed. (SaraCelis, 1) (Entered: 07/28/2023) |
| 08/02/2023 | 166 (p.4801) | ORDER granting 164 (p.4796) Unopposed MOTION for Kelly D. Hine to Withdraw as Attorney, Attorney Kelly Dean Hine terminated(Signed by Judge Lee H Rosenthal) Parties notified.(JacquelineMata, 4) (Entered: 08/02/2023) |
| 08/04/2023 | 167 (p.4802) | OBJECTIONS to 157 (p.4363) MOTION for Attorney Fees , filed by Wells Fargo Bank, N.A.. (Attachments: # 1 (p.22) Declaration)(Lindahl, Rebecca) (Entered: 08/04/2023) |
| 08/09/2023 | | (Court only) ***(PRIVATE ENTRY) ROA requested from USCA, due on 08/23/2023, filed. (DahlilaRodriguez, 1) (Entered: 08/09/2023) |

# **TAB 2**

APPEAL,CLOSED

# U.S. District Court
# SOUTHERN DISTRICT OF TEXAS (Houston)
# CIVIL DOCKET FOR CASE #: 4:21-cv-01126
# Internal Use Only

Occidental Petroleum Corporation v. Wells Fargo Bank, N.A.
Assigned to: Chief Judge Lee H Rosenthal
Cause: 28:1330 Breach of Contract

Date Filed: 04/06/2021
Date Terminated: 05/31/2023
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Occidental Petroleum Corporation**     represented by     **Angus Joseph Dodson**
Gibbs and Bruns LLP
1100 Louisiana
Ste 5300
Houston, TX 77002
713-650-8805
Email: jdodson@gibbsbruns.com
*ATTORNEY TO BE NOTICED*

**Ayesha Najam**
Gibbs Bruns LLP
1100 Louisiana
Suite 5300
Houston, TX 77002
713-650-8805
Fax: 713-750-0903
Email: anajam@gibbsbruns.com
*ATTORNEY TO BE NOTICED*

**Mark R. Dore**
Gibbs & Bruns LLP
1100 Louisiana Street
Ste. 5300
Houston, TX 77002
713-650-8805
Email: mdore@gibbsbruns.com
*ATTORNEY TO BE NOTICED*

**Kathy Dawn Patrick**
Gibbs Bruns LLP
1100 Louisiana St
Ste 5300
Houston, TX 77002
713-650-8805
Fax: 713-750-0903
Email: kpatrick@gibbsbruns.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Wells Fargo Bank, N.A.** represented by **Johnjerica Hodge**
Katten Muchin Rosenman
2900 K Street NW
North Tower
Suite 200
Washington, DC 20007
202-625-3710
Email: johnjerica.hodge@katten.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christian Kemnitz**
Katten Muchin Rosenman LLP
525 West Monroe St
Chicago, IL 60061
(312) 902-5379
Email: christian.kemnitz@katten.com
*ATTORNEY TO BE NOTICED*

**Jeffrey Lloyd Joyce**
Joyce McFarland LLP
712 Main St.
Ste 1500
Houston, TX 77002
713-222-1113
Fax: 713-513-5577
Email: jjoyce@jmlawyers.com
*ATTORNEY TO BE NOTICED*

**Kelly D. Hine**
Katten Muchin Rosenman LLP
212 North Pearl Street
Suite 110
Dallas, TX 75201
214-765-3600
Email: kelly.hine@kdhpc.com
*TERMINATED: 08/02/2023*
*ATTORNEY TO BE NOTICED*

**Megan Crosby McKennon**
Katten
2121 North Pearl Street
Suite 1100
Dallas, TX 75201-2591
214-765-3614
Email: megan.mckennon@katten.com
*ATTORNEY TO BE NOTICED*

**Rebecca K Lindahl**

Katten Muchin et al
550 S. Tryon Street, Suite 2900
Charlotte, NC 28202
(704) 344-3141
Email: rebecca.lindahl@katten.com
*ATTORNEY TO BE NOTICED*

**Intervenor Plaintiff**

| | | |
|---|---|---|
| **Anadarko Petroleum Corporation** | represented by | **Angus Joseph Dodson** <br> (See above for address) <br> *ATTORNEY TO BE NOTICED* |
| | | **Ayesha Najam** <br> (See above for address) <br> *ATTORNEY TO BE NOTICED* |
| | | **Kathy Dawn Patrick** <br> (See above for address) <br> *ATTORNEY TO BE NOTICED* |

**Third Party Defendant**

**Equiniti Trust Company**

**ThirdParty Plaintiff**

| | | |
|---|---|---|
| **Wells Fargo Bank, N.A.** | represented by | **Christian Kemnitz** <br> (See above for address) <br> *ATTORNEY TO BE NOTICED* |
| | | **Jeffrey Lloyd Joyce** <br> (See above for address) <br> *ATTORNEY TO BE NOTICED* |
| | | **Kelly D. Hine** <br> (See above for address) <br> *TERMINATED: 08/02/2023* <br> *ATTORNEY TO BE NOTICED* |
| | | **Rebecca K Lindahl** <br> (See above for address) <br> *ATTORNEY TO BE NOTICED* |

**Third Party Defendant**

| | | |
|---|---|---|
| **Equiniti Trust Company** | represented by | **Jeremy L Doyle** <br> Reynolds Frizzell LLP <br> 1100 Louisiana St <br> Ste 3500 <br> Houston, TX 77002 <br> 713-485-7200 <br> Fax: 713-485-7250 <br> Email: jdoyle@reynoldsfrizzell.com <br> *LEAD ATTORNEY* |

*ATTORNEY TO BE NOTICED*

**Andrew J Melnick**
Murphy & McGonigle PC
1185 Avenue of the Americas, 21st Floor
New York, NY 10036
212-880-3999
Email: amelnick@mmlawus.com
*ATTORNEY TO BE NOTICED*

**Frederic M Krieger**
Stradley Ronon Stevens & Young, LLP
100 Park Avenue
Suite 2000
New York, NY 10017
212-540-4568
Email: FredericKrieger@dwt.com
*ATTORNEY TO BE NOTICED*

**Jonah R Hecht**
Murphy & McGonigle, P.C.
1185 Avenue of the Americas
21st Floor
New York, NY 10036
212-880-3582
Email: jhecht@mmlawus.com
*TERMINATED: 06/14/2022*
*ATTORNEY TO BE NOTICED*

**Thomas P DeFranco**
McGonigle PC
1001 G St NW, 7th Floor
Washington
202-220-1928
Email: tdefranco@mmlawus.com
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**Wells Fargo Bank, N.A.**                    represented by    **Christian Kemnitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey Lloyd Joyce**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kelly D. Hine**
(See above for address)
*TERMINATED: 08/02/2023*
*ATTORNEY TO BE NOTICED*

**Rebecca K Lindahl**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Wells Fargo Bank, N.A.**                    represented by   **Christian Kemnitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey Lloyd Joyce**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kelly D. Hine**
(See above for address)
*TERMINATED: 08/02/2023*
*ATTORNEY TO BE NOTICED*

**Rebecca K Lindahl**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Occidental Petroleum Corporation**          represented by   **Kathy Dawn Patrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Wells Fargo Bank, N.A.**                    represented by   **Christian Kemnitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey Lloyd Joyce**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kelly D. Hine**
(See above for address)
*TERMINATED: 08/02/2023*
*ATTORNEY TO BE NOTICED*

**Rebecca K Lindahl**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Occidental Petroleum Corporation**          represented by   **Kathy Dawn Patrick**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Wells Fargo & Company**


V.

**Counter Defendant**

**Anadarko Petroleum Corporation**          represented by   **Kathy Dawn Patrick**
(See above for address)
*ATTORNEY TO BE NOTICED*


**Counter Defendant**

**Occidental Petroleum Corporation**        represented by   **Mark R. Dore**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kathy Dawn Patrick**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/06/2021 | 1 | COMPLAINT against Wells Fargo Bank, N.A. (Filing fee $ 402 receipt number 0541-26233094) filed by Occidental Petroleum Corp.. (Attachments: # 1 Civil Cover Sheet)(Patrick, Kathy) (Entered: 04/06/2021) |
| 04/07/2021 | 2 | ORDER FOR CONFERENCE. Initial Conference set for 7/6/2021 at 10:30 AM in Room 11122 before Judge Lynn N Hughes (Signed by Judge Lynn N Hughes) Parties notified.(JacquelineMataadi, 4) (Entered: 04/07/2021) |
| 04/07/2021 | 3 | ORDER OF RECUSAL. Judge Lynn N Hughes recused. Case reassigned to Chief Judge Lee H Rosenthal for all further proceedings. (Signed by Judge Lynn N Hughes) Parties notified. (ghassan, 4) (Entered: 04/07/2021) |
| 04/09/2021 | 4 | ORDER Scheduling Rule 16 Conference With the Court and Setting Out the Requirements for Initial Pretrial Work. Initial Conference set for 7/30/2021 at 10:00 AM in Courtroom 11B before Chief Judge Lee H Rosenthal(Signed by Chief Judge Lee H Rosenthal) (Attachments: # 1 Supplement) Parties notified.(leddins, 4) (Entered: 04/09/2021) |
| 05/04/2021 | 5 | NOTICE of Appearance by Kelly D. Hine on behalf of Wells Fargo Bank, N.A., filed. (Hine, Kelly) (Entered: 05/04/2021) |
| 05/04/2021 | 6 | MOTION for Christian Kemnitz to Appear Pro Hac Vice by Wells Fargo Bank, N.A., filed. Motion Docket Date 5/25/2021. (Hine, Kelly) (Entered: 05/04/2021) |
| 05/04/2021 | 7 | MOTION for Rebecca K. Lindahl to Appear Pro Hac Vice by Wells Fargo Bank, N.A., filed. Motion Docket Date 5/25/2021. (Hine, Kelly) (Entered: 05/04/2021) |
| 05/04/2021 | 8 | ORDER granting 6 Motion for Christian Kemnitz to Appear Pro Hac Vice.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(gkelner, 4) (Entered: 05/04/2021) |

| 05/04/2021 | 9 | ORDER granting 7 Motion for Rebecca K. Lindahl to Appear Pro Hac Vice.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(gkelner, 4) (Entered: 05/04/2021) |
|---|---|---|
| 06/03/2021 | 10 | STIPULATION re: to Extend Certain Pleading Deadlines by Wells Fargo Bank, N.A., filed.(Joyce, Jeffrey) (Entered: 06/03/2021) |
| 06/21/2021 | 11 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND BRIEF IN SUPPORT* by Wells Fargo Bank, N.A., filed. Motion Docket Date 7/12/2021. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Hine, Kelly) (Entered: 06/21/2021) |
| 06/22/2021 | 12 | NOTICE of Appearance by Jeff Joyce on behalf of Wells Fargo Bank, N.A., filed. (Joyce, Jeffrey) (Entered: 06/22/2021) |
| 06/29/2021 | 13 | DEMAND for Trial by Jury by Occidental Petroleum Corporation, filed.(Dodson, Angus) (Entered: 06/29/2021) |
| 07/13/2021 | 14 | First AMENDED COMPLAINT with Jury Demand against Wells Fargo Bank, N.A. filed by Occidental Petroleum Corporation. (Attachments: # 1 Exhibit 1)(Patrick, Kathy) (Entered: 07/13/2021) |
| 07/15/2021 | 15 | Joint MOTION to Amend 4 Order for Initial Conference, by Occidental Petroleum Corporation, filed. Motion Docket Date 8/5/2021. (Attachments: # 1 Proposed Order)(Patrick, Kathy) (Entered: 07/15/2021) |
| 07/15/2021 | 18 | ORDER granting 15 Motion. Each Party will file a certificate listing all persons that are financially interested in the outcome of this litigation, consistent with the requirements of the Order, not later than July 16, 2021. The parties will file a Joint Discovery/Case Management Plan and a Joint Scheduling and Docket Control Order not later than 10 a.m. on July 22, 2021. The Parties will exchange initial disclosures pursuant to Rule 26(a)(1) not later than August 6, 2021. (Signed by Chief Judge Lee H Rosenthal) Parties notified.(ShoshanaArnow, 4) (Entered: 07/19/2021) |
| 07/16/2021 | 16 | CERTIFICATE OF INTERESTED PARTIES by Occidental Petroleum Corporation, filed.(Patrick, Kathy) (Entered: 07/16/2021) |
| 07/16/2021 | 17 | CERTIFICATE OF INTERESTED PARTIES by Wells Fargo Bank, N.A., filed.(Hine, Kelly) (Entered: 07/16/2021) |
| 07/19/2021 | 19 | ORDER denying as moot 11 Motion to Dismiss for Failure to State a Claim.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(gkelner, 4) (Entered: 07/19/2021) |
| 07/22/2021 | 20 | NOTICE of Resetting. Parties notified. Initial Conference reset for 7/30/2021 at 10:10 AM by video before Chief Judge Lee H Rosenthal, filed. A Zoom link will be provided for participation. (leddins, 4) (Entered: 07/22/2021) |
| 07/22/2021 | 21 | JOINT DISCOVERY/CASE MANAGEMENT PLAN by Occidental Petroleum Corporation, filed. (Attachments: # 1 Exhibit 1)(Patrick, Kathy) (Entered: 07/22/2021) |
| 07/30/2021 | 22 | Minute entry for proceedings before the Hon. Lee H. Rosenthal. Initial conference held on July 30, 2021. The court will separately enter a scheduling and docket control order, as stated in detail on the record Appearances: Kathy Patrick, Christian Kemnitz, Rebecca Lindahl, Jeffrey Joyce.(Court Reporter: F. Warner), filed.(leddins, 4) (Entered: 07/30/2021) |
| 07/30/2021 | 23 | |

| | | |
|---|---|---|
| | | SCHEDULING ORDER. Motion to Dismiss due by 9/6/2021. Response to Motion to Dismiss due by 9/14/2021. Reply in Support of Motion to Dismiss due by 10/1/2021. Motion to Dismiss Oral Argument due by 10/6/2021. Stipulated Facts due by 11/19/2021. Mediation due by 12/17/2021. Pretrial Dispositive Motion Filing due by 1/14/2022. Responses to Pretrial Dispositive Motion due by 2/4/2022. Reply in Support due by 2/25/2022. Stipulated Facts due by by 11/19/2021 Oral Argument on the Pretrial Dispositive Motion set for 3/11/2022 at 10:00 AM by Zoom.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(olindor, 4) (Entered: 08/02/2021) |
| 09/06/2021 | 24 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(as to Second and Third Claims)* by Wells Fargo Bank, N.A., filed. Motion Docket Date 9/27/2021. (Attachments: # 1 Exhibit A- Trust Agreement, # 2 Exhibit B- Email, # 3 Proposed Order)(Hine, Kelly) (Entered: 09/06/2021) |
| 09/06/2021 | 25 | THIRD PARTY COMPLAINT against Equiniti Trust Company filed by Wells Fargo Bank, N.A.. (Attachments: # 1 Exhibit 1- Trust Agreement, # 2 Exhibit 2- Executed TA Agreement, # 3 Exhibit 3- EQ Signing Index, # 4 Exhibit 4- Bill of Sale)(Hine, Kelly) (Entered: 09/06/2021) |
| 09/06/2021 | 26 | Request for Issuance of Summons as to Equiniti Trust Company, filed.(Hine, Kelly) (Entered: 09/06/2021) |
| 09/06/2021 | 27 | ANSWER to 14 Amended Complaint/Counterclaim/Crossclaim etc., THIRD PARTY COMPLAINT against Equiniti Trust Company, COUNTERCLAIM against Occidental Petroleum Corporation by Wells Fargo Bank, N.A., filed. (Attachments: # 1 Exhibit 1- Trust Agreement, # 2 Exhibit 2- Executed TA Agreement, # 3 Exhibit 3- EQ Signing Index, # 4 Exhibit 4- Bill of Sale)(Hine, Kelly) (Entered: 09/06/2021) |
| 09/08/2021 | 28 | Summons Issued as to Equiniti Trust Company. Issued summons delivered to plaintiff by NEF, filed.(hlerma, 4) (Entered: 09/08/2021) |
| 09/24/2021 | 29 | MOTION to Dismiss *Counterclaim* by Occidental Petroleum Corporation, filed. Motion Docket Date 10/15/2021. (Attachments: # 1 Exhibit 1, # 2 Proposed Order)(Patrick, Kathy) (Entered: 09/24/2021) |
| 09/24/2021 | 30 | RESPONSE *to Defendant's Motion to Dismiss First Amended Complaint*, filed by Occidental Petroleum Corporation. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Proposed Order)(Patrick, Kathy) (Entered: 09/24/2021) |
| 09/24/2021 | | ***Set/Reset Hearings: Motion Hearing set for 10/6/2021 at 10:00 AM by video before Chief Judge Lee H Rosenthal. (leddins, 4) (Entered: 09/24/2021) |
| 09/24/2021 | | ***Set/Reset Hearings: Motion Hearing set for 10/6/2021 at 10:00 AM by video before Chief Judge Lee H Rosenthal and Motion Hearing set for 3/11/2022 at 10:00 AM by video before Chief Judge Lee H Rosenthal. (leddins, 4) (Entered: 09/24/2021) |
| 10/01/2021 | 31 | REPLY in Support of 24 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(as to Second and Third Claims)*, filed by Wells Fargo Bank, N.A.. (Lindahl, Rebecca) (Entered: 10/01/2021) |
| 10/05/2021 | 32 | Joint MOTION for Continuance of Oct. 6, 2021 Hearing on Motion to Dismiss and Revise Pretrial Scheduling Order to Permit Consolidated Hearing of All Pending Motions to Dismiss by Occidental Petroleum Corporation, filed. Motion Docket Date 10/26/2021. (Attachments: # 1 Proposed Order)(Patrick, Kathy) (Entered: 10/05/2021) |

| | | |
|---|---|---|
| 10/05/2021 | 33 | ORDER entered: GRANTING 32 Joint MOTION for Continuance of Oct. 6, 2021 Hearing on Motion to Dismiss and Revise Pretrial Scheduling Order to Permit Consolidated Hearing of All Pending Motions to Dismiss. Motion Hearing reset for 11/5/2021 at 10:30 AM before Chief Judge Lee H Rosenthal. Counsel will advise if the hearing is to be by Zoom or in person. (Signed by Chief Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 10/05/2021) |
| 10/15/2021 | 34 | RESPONSE in Opposition to 29 MOTION to Dismiss *Counterclaim*, filed by Wells Fargo Bank, N.A.. (Attachments: # 1 Exhibit 1- WF Written Requests)(Lindahl, Rebecca) (Entered: 10/15/2021) |
| 10/22/2021 | 35 | REPLY in Support of 29 MOTION to Dismiss *Counterclaim*, filed by Occidental Petroleum Corporation. (Patrick, Kathy) (Entered: 10/22/2021) |
| 10/26/2021 | 36 | NOTICE of Resetting. Parties notified. Motion Hearing reset for 11/5/2021 at 10:30 AM in Courtroom 11B before Chief Judge Lee H Rosenthal, filed. (ClaudiaGutierrez, 4) (Entered: 10/26/2021) |
| 11/05/2021 | 37 | Minute entry for proceedings before the Hon. Lee H. Rosenthal. Motion hearing held on November 5, 2021. The court heard argument on the parties motions to dismiss. Appearances: Kathy Patrick/Mark Dore/Angus Dodsen for Pltf. and Christian Kemnitz/ Rebecca Lindahl/Jeffrey Joyce for Deft.(Court Reporter: G. Dye), filed.(leddins, 4) (Entered: 11/09/2021) |
| 11/18/2021 | 38 | Joint MOTION for Extension of Time to File Stipulated Facts by Occidental Petroleum Corporation, filed. Motion Docket Date 12/9/2021. (Attachments: # 1 Proposed Order)(Patrick, Kathy) (Entered: 11/18/2021) |
| 11/19/2021 | 39 | ORDER granting 38 Motion for Extension of Time to File Stipulated Facts. The deadline is extended to 12/1/2021. (Signed by Chief Judge Lee H Rosenthal) Parties notified.(gclair, 4) (Entered: 11/19/2021) |
| 11/30/2021 | 40 | MEMORANDUM AND ORDER entered: Wells Fargo's motion to dismiss the breach of fiduciary duty and indemnity claims, (Docket Entry No. 24), is granted. Occidental's motion to dismiss the counterclaim, (Docket Entry No. 29), is also granted. The parties have made clear that much work remains to be done before this case can be framed for ultimate resolution. The next step is to define the most reliable, careful, and efficient way to get to that point. (Signed by Chief Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 11/30/2021) |
| 12/01/2021 | 41 | AO 435 TRANSCRIPT REQUEST by Jeff Joyce for Transcript of Motion Hearing on 11/5/21 before Judge Rosenthal. 3-Day turnaround requested. Court Reporter/Transcriber: Gayle Dye, filed. (Joyce, Jeffrey) (Entered: 12/01/2021) |
| 12/01/2021 | 42 | AO 435 TRANSCRIPT REQUEST by Shari Falloon for Transcript of Hearing, 11/05/2021, Lee H Rosenthal. Daily (24 hours) turnaround requested. Court Reporter/Transcriber: Gayle Dye, filed. (BrendaLacy, 4) (Entered: 12/01/2021) |
| 12/01/2021 | 43 | STIPULATION re: Joint Statement of Stipulated Facts by Wells Fargo Bank, N.A., filed. (Attachments: # 1 Exhibit 1- Trust Agreement, # 2 Exhibit 2- Transfer Agent Agreement, # 3 Exhibit 3- Purchase Agreement, # 4 Exhibit 4- Notice of Change of Control, # 5 Exhibit 5- October 2019 Email Exchange, # 6 Exhibit 6- December 17-19 Email Exchange, # 7 Exhibit 7- Historical Stock Prices, # 8 Exhibit 8- Reversion Request, # 9 Exhibit 9- Reversion Response)(Lindahl, Rebecca) (Entered: 12/01/2021) |

| 12/02/2021 | 44 | TRANSCRIPT re: Motion Hearing held on November 5, 2021, before Chief Judge Lee H Rosenthal. Court Reporter/Transcriber Dye. Release of Transcript Restriction set for 3/2/2022., filed. (gdye, ) (Entered: 12/02/2021) |
| 12/03/2021 | 45 | Notice of Filing of Official Transcript as to 44 Transcript. Party notified, filed. (olindor, 4) (Entered: 12/03/2021) |
| 12/08/2021 | 46 | AO 435 TRANSCRIPT REQUEST by Sandra Walton for Transcript of Hearing, 11/05/2021, Judge Lee H Rosenthal. Daily (24 hours) turnaround requested. Court Reporter/Transcriber: Gayle Dye, filed. (BrendaLacy, 4) (Entered: 12/08/2021) |
| 12/13/2021 | 47 | MOTION to Dismiss *Defendant Equiniti Trust Company's Motion to Dismiss Under Rules 12(b)(2), 12(b)(3) & 12(b)(6)* by Equiniti Trust Company, filed. Motion Docket Date 1/3/2022. (Attachments: # 1 Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9)(Doyle, Jeremy) (Entered: 12/13/2021) |
| 12/13/2021 | 48 | MOTION for Frederic M. Krieger to Appear Pro Hac Vice by Equiniti Trust Company, filed. Motion Docket Date 1/3/2022. (Doyle, Jeremy) (Entered: 12/13/2021) |
| 12/13/2021 | 49 | MOTION for Andrew J. Melnick to Appear Pro Hac Vice by Equiniti Trust Company, filed. Motion Docket Date 1/3/2022. (Doyle, Jeremy) (Entered: 12/13/2021) |
| 12/13/2021 | 50 | MOTION for Jonah R. Hecht to Appear Pro Hac Vice by Equiniti Trust Company, filed. Motion Docket Date 1/3/2022. (Doyle, Jeremy) (Entered: 12/13/2021) |
| 12/14/2021 | 51 | CERTIFICATE OF INTERESTED PARTIES by Equiniti Trust Company, filed.(Doyle, Jeremy) (Entered: 12/14/2021) |
| 12/15/2021 | 52 | ORDER granting 48 Motion for Frederic M Krieger to Appear Pro Hac Vice.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(gclair, 4) (Entered: 12/16/2021) |
| 12/15/2021 | 53 | ORDER granting 49 Motion for Andrew J. Melnick to Appear Pro Hac Vice. (Signed by Chief Judge Lee H Rosenthal) Parties notified.(gclair, 4) (Entered: 12/16/2021) |
| 12/15/2021 | 54 | ORDER granting 50 Motion for Jonah R. Hecht to Appear Pro Hac Vice. (Signed by Chief Judge Lee H Rosenthal) Parties notified.(gclair, 4) (Entered: 12/16/2021) |
| 01/03/2022 | 55 | AMENDED THIRD PARTY COMPLAINT against Equiniti Trust Company filed by Wells Fargo Bank, N.A.. Related document: 25 Third Party Complaint, filed by Wells Fargo Bank, N.A.. (Attachments: # 1 Exhibit 1- Trust Agreement, # 2 Exhibit 2- Transfer Agent Agreement, # 3 Exhibit 3- Purchase Agreement, # 4 Exhibit 4- Transaction Request)(Lindahl, Rebecca) (Entered: 01/03/2022) |
| 01/13/2022 | 56 | Joint PROPOSED ORDER *Amended Scheduling and Docket Control Order* re: 23 Scheduling Order,,, filed. (Attachments: # 1 Proposed Order Scheduling and Docket Control Order)(Patrick, Kathy) (Entered: 01/13/2022) |
| 01/14/2022 | 57 | SCHEDULING ORDER. Amended Pleadings due by 1/21/2022. Responses to Amended Pleadings due by 02/07/2022. Pltf Expert Witness List due by 7/1/2022. Deft Expert Witness List due by 8/15/2022. Discovery due by 10/14/2022. Mediation due by 10/14/2022. Dispositive Motion Filing due by 3/15/2022. Responses due by 4/5/2022. Oral Argument set for 5/2/2022 at 10:00 AM in by |

| | | |
|---|---|---|
| | | video before Chief Judge Lee H Rosenthal Joint Pretrial Order due by 10/31/2022. Docket Call set for 11/7/2022 at 09:00 AM in Courtroom 11B before Chief Judge Lee H Rosenthal (Signed by Chief Judge Lee H Rosenthal) Parties notified.(gkelner, 4) (Entered: 01/14/2022) |
| 01/14/2022 | 58 | Unopposed MOTION for Protective Order by Occidental Petroleum Corporation, filed. Motion Docket Date 2/4/2022. (Attachments: # 1 Exhibit, # 2 Proposed Order)(Patrick, Kathy) (Entered: 01/14/2022) |
| 01/21/2022 | 59 | Unopposed MOTION for Leave to File Amended Complaint by Occidental Petroleum Corporation, filed. Motion Docket Date 2/11/2022. (Attachments: # 1 Exhibit 1, # 2 Proposed Order)(Patrick, Kathy) (Entered: 01/21/2022) |
| 01/21/2022 | 62 | Plaintiff and Intervening Plaintiff's Second Amended Complaint.(jguajardo, 4) (Entered: 01/28/2022) |
| 01/28/2022 | 60 | ORDER Granting 58 unopposed Motion for entry of stipulated Protective Order.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(rkonieczny, 4) (Entered: 01/28/2022) |
| 01/28/2022 | 61 | ORDER Granting 59 Motion for Leave to File Second Amended Complaint..(Signed by Chief Judge Lee H Rosenthal) Parties notified.(jguajardo, 4) (Entered: 01/28/2022) |
| 02/01/2022 | 63 | NOTICE of Change of Firm Name or Address by Equiniti Trust Company, filed. (Doyle, Jeremy) (Entered: 02/01/2022) |
| 02/04/2022 | 64 | MOTION to Dismiss by Equiniti Trust Company, filed. Motion Docket Date 2/25/2022. (Attachments: # 1 Declaration, # 2 Exhibit)(ckrus, 4) (Entered: 02/07/2022) |
| 02/07/2022 | 65 | ANSWER to 62 Complaint, COUNTERCLAIM against Occidental Petroleum Corporation by Wells Fargo Bank, N.A., filed. (Attachments: # 1 Exhibit 1- Trust Agreement, # 2 Exhibit 2- Transfer Agent Agreement, # 3 Exhibit 3- Purchase Agreement, # 4 Exhibit 4- DRT Request Sample)(Lindahl, Rebecca) (Entered: 02/07/2022) |
| 02/24/2022 | 66 | Joint MOTION for Entry of Order re: Amended Scheduling and Docket Control Order by Equiniti Trust Company, Occidental Petroleum Corporation, Wells Fargo Bank, N.A., filed. Motion Docket Date 3/17/2022. (Attachments: # 1 Exhibit A)(Patrick, Kathy) (Entered: 02/24/2022) |
| 02/24/2022 | 67 | Additional EXHIBITS re: 66 Joint MOTION for Entry of Order re: Amended Scheduling and Docket Control Order by Equiniti Trust Company, Occidental Petroleum Corporation, Wells Fargo Bank, N.A., filed.(Patrick, Kathy) (Entered: 02/24/2022) |
| 02/25/2022 | 68 | AMENDED SCHEDULING AND DOCKET CONTROL ORDER. Dispositive Motion Filing due by 6/10/2022. Responses due by 6/24/2022. Replies due by 7/1/22. Oral Arguments set for 7/28/2022 at 10:00 AM by video. Pltf Expert Report due by 7/1/2022. Deft Expert Report due by 8/15/2022. Discovery due by 10/14/2022. Mediation due by 10/14/2022. Joint Pretrial Order due by 10/31/2022. Docket Call set for 11/7/2022 at 09:00 AM in Courtroom 11B before Chief Judge Lee H Rosenthal(Signed by Chief Judge Lee H Rosenthal) Parties notified.(JosephWells, 4) (Entered: 02/25/2022) |

| | | |
|---|---|---|
| 02/25/2022 | 69 | RESPONSE to 64 MOTION to Dismiss , filed by Wells Fargo Bank, N.A.. (Attachments: # 1 Exhibit Group Exhibit 1)(Hine, Kelly) (Entered: 02/25/2022) |
| 02/28/2022 | 70 | ANSWER to 65 Answer to Complaint,, Counterclaim, by Occidental Petroleum Corporation, filed.(Patrick, Kathy) (Entered: 02/28/2022) |
| 03/04/2022 | 71 | REPLY in Support of 47 MOTION to Dismiss *Defendant Equiniti Trust Company's Motion to Dismiss Under Rules 12(b)(2), 12(b)(3) & 12(b)(6)*, filed by Equiniti Trust Company. (Attachments: # 1 Declaration, # 2 Exhibit 1)(Doyle, Jeremy) (Entered: 03/04/2022) |
| 03/09/2022 | | (Court only) ***Motion(s) terminated: 66 Joint MOTION for Entry of Order re: Amended Scheduling and Docket Control Order. Granted by de 68. (leddins, 4) (Entered: 03/09/2022) |
| 04/12/2022 | | (Court only) ***Motion(s) terminated: 47 MOTION to Dismiss *Defendant Equiniti Trust Company's Motion to Dismiss Under Rules 12(b)(2), 12(b)(3) & 12(b)(6)*. Motion is moot based on the filing of the amended complaint and amended motion to dismiss. (leddins, 4) (Entered: 04/12/2022) |
| 05/03/2022 | 72 | STIPULATION re: Witness by Wells Fargo Bank, N.A., filed.(Hine, Kelly) (Entered: 05/03/2022) |
| 05/12/2022 | 73 | NOTICE *Notice of Additional Authority in Support of Equiniti Trust Company's Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6)* re: 64 MOTION to Dismiss by Equiniti Trust Company, filed. (Attachments: # 1 Exhibit A)(Doyle, Jeremy) (Entered: 05/12/2022) |
| 06/06/2022 | 74 | MOTION for Leave to File Third Amended Complaint by Occidental Petroleum Corporation, filed. Motion Docket Date 6/27/2022. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Proposed Order)(Patrick, Kathy) (Entered: 06/06/2022) |
| 06/07/2022 | 75 | ***VACATED**** ORDER granting 74 Motion for Leave to File.(Signed by Chief Judge Lee H Rosenthal) Parties notified. (ClaudiaGutierrez, 4) (Entered: 06/07/2022) |
| 06/07/2022 | 76 | Third AMENDED COMPLAINT with Jury Demand against Wells Fargo Bank, N.A. filed by Occidental Petroleum Corporation, Anadarko Petroleum Corporation. (ClaudiaGutierrez, 4) (Entered: 06/07/2022) |
| 06/08/2022 | 77 | ORDER.The court's order granting the plaintiff and intervening plaintiff's motion for leave to file the third amended complaint, (Docket Entry No. 75), is vacated. The third amended complaint (Docket Entry No. 76), will be removed from the docket. The response to the motion for leave to file the third amended complaint, (Docket Entry No. 74), is due June 27, 2022. (Signed by Chief Judge Lee H Rosenthal) Parties notified.(olindor, 4) (Entered: 06/08/2022) |
| 06/09/2022 | 78 | Agreed MOTION to Amend 68 Scheduling Order,, by Equiniti Trust Company, filed. Motion Docket Date 6/30/2022. (Attachments: # 1 Proposed Order Ex. A: Proposed Second Amended Scheduling and Docket Control Order)(Doyle, Jeremy) (Entered: 06/09/2022) |
| 06/09/2022 | 79 | SECOND AMENDED SCHEDULING AND DOCKET CONTROL ORDER. Pltf Expert Report due by 7/1/2022. Deft Expert Report due by 8/15/2022. Discovery due by 10/14/2022. Mediation due by 10/14/2022. Pretrial Dispositive Motion Filing due by 6/10/2022. Responses due by 6/24/2022. Replies due by 7/1/2022. Joint |

| | | |
|---|---|---|
| | | Pretrial Order due by 10/31/2022. Docket Call set for 11/7/2022 at 09:00 AM in Courtroom 11B before Chief Judge Lee H Rosenthal. Oral Argument on Pretrial Dispositive Motion set for 7/28/2022 at 10:00 AM in by video before Chief Judge Lee H Rosenthal(Signed by Chief Judge Lee H Rosenthal) Parties notified.(olindor, 4) (Entered: 06/09/2022) |
| 06/10/2022 | 80 | MOTION for Summary Judgment by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. Motion Docket Date 7/1/2022. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62, # 63 Proposed Order)(Patrick, Kathy) (Entered: 06/10/2022) |
| 06/10/2022 | 81 | MOTION for Summary Judgment by Wells Fargo Bank, N.A., filed. Motion Docket Date 7/1/2022. (Attachments: # 1 Appendix, # 2 Proposed Order)(Hine, Kelly) (Entered: 06/10/2022) |
| 06/10/2022 | 82 | SEALED EXHIBITS re: 80 MOTION for Summary Judgment by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. (Attachments: # 1 Exhibit 5, # 2 Exhibit 8, # 3 Exhibit 9, # 4 Exhibit 10, # 5 Exhibit 11, # 6 Exhibit 14, # 7 Exhibit 19, # 8 Exhibit 20, # 9 Exhibit 21, # 10 Exhibit 23, # 11 Exhibit 25, # 12 Exhibit 26, # 13 Exhibit 29, # 14 Exhibit 30, # 15 Exhibit 31, # 16 Exhibit 33, # 17 Exhibit 34, # 18 Exhibit 35, # 19 Exhibit 36, # 20 Exhibit 37, # 21 Exhibit 38, # 22 Exhibit 39, # 23 Exhibit 40, # 24 Exhibit 41, # 25 Exhibit 43, # 26 Exhibit 44, # 27 Exhibit 45, # 28 Exhibit 47, # 29 Exhibit 48, # 30 Exhibit 50, # 31 Exhibit 51, # 32 Exhibit 53, # 33 Exhibit 54, # 34 Exhibit 56, # 35 Exhibit 58, # 36 Exhibit 59)(Patrick, Kathy) (Entered: 06/10/2022) |
| 06/10/2022 | 83 | SEALED MOTION by Wells Fargo Bank, N.A., filed. (Attachments: # 1 Appendix, # 2 Proposed Order) (Hine, Kelly) (Entered: 06/10/2022) |
| 06/10/2022 | 84 | MOTION to Seal Exhibits to Motion for Summary Judgment by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. Motion Docket Date 7/1/2022. (Attachments: # 1 Proposed Order)(Patrick, Kathy) (Entered: 06/10/2022) |
| 06/14/2022 | 85 | MOTION for Thomas P. DeFranco to Appear Pro Hac Vice by Equiniti Trust Company, filed. Motion Docket Date 7/5/2022. (Doyle, Jeremy) (Entered: 06/14/2022) |
| 06/14/2022 | 86 | ORDER granting 85 Motion for Thomas P. DeFranco to Appear Pro Hac Vice.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(gclair, 4) (Entered: 06/14/2022) |
| 06/14/2022 | 87 | ORDER granting 84 Motion to Seal.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(gclair, 4) (Entered: 06/14/2022) |

| 06/14/2022 | 88 | Unopposed MOTION for Jonah Hecht to Withdraw as Attorney by Equiniti Trust Company, filed. Motion Docket Date 7/5/2022. (Attachments: # 1 Proposed Order)(Doyle, Jeremy) (Entered: 06/14/2022) |
| 06/14/2022 | 89 | ORDER granting 88 Motion to Withdraw as Attorney Jonah R Hecht.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(gclair, 4) (Entered: 06/14/2022) |
| 06/21/2022 | 90 | MEMORANDUM AND ORDER entered:; Equiniti's motion to dismiss Wells Fargo's counterclaim for lack of personal jurisdiction, (Docket Entry No. 64), is granted. Equiniti's motion to amend the scheduling and docket control order, (Docket Entry No. 78). is denied as moot.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 06/21/2022) |
| 06/24/2022 | 91 | RESPONSE in Opposition to 80 MOTION for Summary Judgment , filed by Wells Fargo Bank, N.A.. (Attachments: # 1 Appendix, # 2 Proposed Order)(Lindahl, Rebecca) (Entered: 06/24/2022) |
| 06/24/2022 | 92 | MOTION to Seal Appendix by Wells Fargo Bank, N.A., filed. Motion Docket Date 7/15/2022. (Attachments: # 1 Proposed Order)(McKennon, Megan) (Entered: 06/24/2022) |
| 06/24/2022 | 93 | SEALED EXHIBITS Appendix (Exhibit 219) re: 91 Response in Opposition to Motion by Wells Fargo Bank, N.A., filed. (McKennon, Megan) (Entered: 06/24/2022) |
| 06/24/2022 | 94 | APPENDIX re: 80 MOTION for Summary Judgment by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed.(Patrick, Kathy) (Entered: 06/24/2022) |
| 06/24/2022 | 95 | RESPONSE to 81 MOTION for Summary Judgment filed by Anadarko Petroleum Corporation, Occidental Petroleum Corporation. (Attachments: # 1 Appendix, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 5a, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 7a, # 11 Exhibit 8, # 12 Exhibit 9, # 13 Exhibit 15, # 14 Exhibit 15a, # 15 Exhibit 16, # 16 Exhibit 17, # 17 Exhibit 17a, # 18 Exhibit 19, # 19 Exhibit 20, # 20 Exhibit 21, # 21 Exhibit 39, # 22 Exhibit 54, # 23 Exhibit 63, # 24 Exhibit 64, # 25 Exhibit 65, # 26 Proposed Order)(Patrick, Kathy) (Entered: 06/24/2022) |
| 06/24/2022 | 96 | SEALED EXHIBITS re: 95 Response to Motion,, by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. (Attachments: # 1 Exhibit 6, # 2 Exhibit 8, # 3 Exhibit 9, # 4 Exhibit 19, # 5 Exhibit 20, # 6 Exhibit 21, # 7 Exhibit 39, # 8 Exhibit 54, # 9 Exhibit 63, # 10 Exhibit 64) (Patrick, Kathy) (Entered: 06/24/2022) |
| 06/24/2022 | 97 | Unopposed MOTION to Seal Exhibits to Response to Defendant's Motion for Summary Judgment by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. Motion Docket Date 7/15/2022. (Attachments: # 1 Proposed Order)(Patrick, Kathy) (Entered: 06/24/2022) |
| 06/27/2022 | 98 | RESPONSE in Opposition to 74 MOTION for Leave to File Third Amended Complaint, filed by Wells Fargo Bank, N.A.. (Attachments: # 1 Appendix, # 2 Proposed Order)(Lindahl, Rebecca) (Entered: 06/27/2022) |
| 06/30/2022 | 99 | ORDER granting 97 Motion to Seal.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(JosephWells, 4) (Entered: 06/30/2022) |

| 07/01/2022 | 100 | Supplemental APPENDIX re: 91 Response in Opposition to Motion by Wells Fargo Bank, N.A., filed.(Lindahl, Rebecca) (Entered: 07/01/2022) |
|---|---|---|
| 07/01/2022 | 101 | REPLY to 81 MOTION for Summary Judgment , filed by Wells Fargo Bank, N.A.. (Lindahl, Rebecca) (Entered: 07/01/2022) |
| 07/01/2022 | 102 | STIPULATION re: Request for Second Amended Scheduling Order and Docket Control Order by Wells Fargo Bank, N.A., filed. (Attachments: # 1 Exhibit A)(Lindahl, Rebecca) (Entered: 07/01/2022) |
| 07/01/2022 | 103 | REPLY in Support of 80 MOTION for Summary Judgment , filed by Anadarko Petroleum Corporation, Occidental Petroleum Corporation. (Attachments: # 1 Appendix, # 2 Exhibit 7b, # 3 Exhibit 15b, # 4 Exhibit 16a, # 5 Exhibit 17b, # 6 Exhibit 66)(Patrick, Kathy) (Entered: 07/01/2022) |
| 07/05/2022 | 104 | SECOND AMENDED SCHEDULING AND DOCKET CONTROL ORDER. Oral Argument on Pretrial Dispositive Motions set for 7/28/2022 at 10:00 AM by video before Chief Judge Lee H Rosenthal. Pltf Expert Report due by 7/18/2022. Deft Expert Report due by 9/2/2022. Discovery due by 10/14/2022. Mediation due by 10/14/2022. Joint Pretrial Order due by 10/13/2022. Docket Call set for 11/7/2022 at 09:00 AM in Courtroom 11B before Chief Judge Lee H Rosenthal(Signed by Chief Judge Lee H Rosenthal) Parties notified.(JosephWells, 4) (Entered: 07/05/2022) |
| 07/05/2022 | 105 | REPLY in Support of 74 MOTION for Leave to File Third Amended Complaint, filed by Anadarko Petroleum Corporation, Occidental Petroleum Corporation. (Patrick, Kathy) (Entered: 07/05/2022) |
| 07/21/2022 | 106 | MOTION to Expedite In-Person Hearing of Motions for Summary Judgment by Occidental Petroleum Corporation, filed. Motion Docket Date 8/11/2022. (Attachments: # 1 Proposed Order)(Patrick, Kathy) (Entered: 07/21/2022) |
| 07/21/2022 | 107 | ORDER entered: Counsel for plaintiffs have requested an in-person hearing for arguments on pending motions. (Docket Entry No. 106). The defendants and their counsel, who are in distant states, have asked to appear by Zoom. Hybrid hearings, part Zoom and part in person, are not a viable option. Given the current COVID surge, and the skill and experience of counsel in using Zoom for arguments on motions, the court orders that the hearing be by Zoom. A link will be separately sent.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 07/21/2022) |
| 07/22/2022 | 108 | NOTICE of Resetting. Parties notified. Motion Hearing reset for 8/4/2022 at 02:00 AM in by video before Chief Judge Lee H Rosenthal, filed. A Zoom link will be provided. (leddins, 4) (Entered: 07/22/2022) |
| 07/22/2022 | 109 | NOTICE of Resetting. Parties notified. Motion Hearing reset for 8/4/2022 at 02:00 PM by video before Chief Judge Lee H Rosenthal, filed. A Zoom link will be provided. (leddins, 4) (Entered: 07/22/2022) |
| 08/04/2022 | 110 | SUPPLEMENT to 101 Reply by Wells Fargo Bank, N.A., filed.(McKennon, Megan) (Entered: 08/04/2022) |
| 08/04/2022 | | (Court only) ***Attorney Mark R. Dore for Occidental Petroleum Corporation added. (leddins, 4) (Entered: 08/04/2022) |
| 08/04/2022 | 111 | Minute entry for proceedings before the Hon. Lee H. Rosenthal. Motion hearing held on August 4, 2022. The court heard oral argument on the cross motions for |

| | | |
|---|---|---|
| | | summary judgment and the motion for leave to amend. The court took the motions under advisement. The parties will notify the court by August 10, 2022 if they intend to pursue mediation. Appearances: Kathy Patrick/Mark Dore for Pltf. and Kelly Hine/Rebecca Lindahl/Jeffrey Joyce for Deft. (Court Reporter: D. Smith), filed.(leddins, 4) (Entered: 08/04/2022) |
| 08/04/2022 | 112 | PowerPoint Slides Presented at Hearing on Dispositive Motions Held August 4, 2022 by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed.(Patrick, Kathy) (Entered: 08/04/2022) |
| 08/15/2022 | 113 | AO 435 TRANSCRIPT REQUEST by Occidental Petroleum/Kathy D. Patrick for Transcript of Motion Hearing on 8/4/22 before Judge Rosenthal. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: Veritext Legal Solutions, filed. (Patrick, Kathy) (Entered: 08/15/2022) |
| 08/15/2022 | 114 | AO 435 TRANSCRIPT REQUEST by Rebecca K. Lindahl for Transcript of Motion hearing on 8/4/2022 before Judge Rosenthal. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: David Smith, filed. (Lindahl, Rebecca) (Entered: 08/15/2022) |
| 08/15/2022 | 115 | AO 435 TRANSCRIPT REQUEST by Melissa Westbrook for Transcript of Hearing,08/04/22, Judge Lee H Rosenthal. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: David Smith, filed. (BrendaLacy, 4) (Entered: 08/16/2022) |
| 08/18/2022 | 116 | MEMORANDUM AND ORDER entered: Occidental's motion for summary judgment, (Docket Entry No. 80), is granted as to liability for the breach of contract claim, and granted as to the dismissal of the Wells Fargo counterclaim. Wells Fargo's motion for summary judgment is denied. (Docket Entry No. 81). The motion for leave to amend and the motions to seal are granted. (Docket Entry Nos. 74, 83, 92). No later than September 9, 2022, the parties must provide a proposed amended scheduling order, agreed upon if possible, to resolve the remaining issues.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 08/18/2022) |
| 08/23/2022 | 117 | TRANSCRIPT re: Motion Hearing held on 08/04/2022 before Chief Judge Lee H Rosenthal. Court Reporter/Transcriber David S. Smith. Ordering Party Kathy Patrick, Rebecca Lindahl, Melissa Westbrook Release of Transcript Restriction set for 11/21/2022., filed. (Smith, David) (Entered: 08/23/2022) |
| 08/24/2022 | 118 | Notice of Filing of Official Transcript as to 117 Transcript,. Party notified, filed. (jdav, 4) (Entered: 08/24/2022) |
| 09/01/2022 | 119 | ANSWER to 76 Amended Complaint/Counterclaim/Crossclaim etc., COUNTERCLAIM against Anadarko Petroleum Corporation, Occidental Petroleum Corporation by Wells Fargo & Company, filed.(Lindahl, Rebecca) (Entered: 09/01/2022) |
| 09/09/2022 | 120 | Joint PROPOSED ORDER *Scheduling Orders*, filed. (Attachments: # 1 Exhibit A- Plaintiffs' Proposed Scheduling Order, # 2 Exhibit B- Defendant's Proposed Scheduling Order)(Lindahl, Rebecca) (Entered: 09/09/2022) |
| 09/14/2022 | 121 | THIRD AMENDED SCHEDULING ORDER. Discovery due by 10/14/2022. Joint Pretrial Order due by 11/30/2022. Docket Call set for 12/7/2022 at 09:00 AM in Courtroom 11B before Chief Judge Lee H Rosenthal(Signed by Chief Judge Lee H Rosenthal) Parties notified.(rguerrero, 4) (Entered: 09/14/2022) |

| | | |
|---|---|---|
| 09/23/2022 | <u>122</u> | MOTION for Summary Judgment *on Damages* by Occidental Petroleum Corporation, filed. Motion Docket Date 10/14/2022. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2, # <u>3</u> Exhibit 3, # <u>4</u> Exhibit 4, # <u>5</u> Exhibit 5, # <u>6</u> Exhibit 6, # <u>7</u> Exhibit 7, # <u>8</u> Exhibit 8, # <u>9</u> Exhibit 9, # <u>10</u> Exhibit 10, # <u>11</u> Proposed Order)(Patrick, Kathy) (Entered: 09/23/2022) |
| 09/23/2022 | <u>123</u> | SEALED EXHIBITS *6, 7, and 8* re: <u>122</u> MOTION for Summary Judgment *on Damages* by Occidental Petroleum Corporation, filed. (Attachments: # <u>1</u> Exhibit 7, # <u>2</u> Exhibit 8) (Patrick, Kathy) (Entered: 09/23/2022) |
| 09/23/2022 | <u>124</u> | MOTION to Seal Exhibits by Occidental Petroleum Corporation, filed. Motion Docket Date 10/14/2022. (Attachments: # <u>1</u> Proposed Order)(Patrick, Kathy) (Entered: 09/23/2022) |
| 09/28/2022 | <u>125</u> | ORDER granting <u>124</u> Motion to Seal.(Signed by Chief Judge Lee H Rosenthal) Parties notified.(kpicota, 4) (Entered: 09/28/2022) |
| 10/14/2022 | <u>126</u> | NOTICE of Setting. Parties notified. Pre-Motion Conference set for 10/18/2022 at 11:00 AM by video before Chief Judge Lee H Rosenthal, filed. A Zoom link will be provided. (leddins, 4) (Entered: 10/14/2022) |
| 10/14/2022 | <u>127</u> | RESPONSE in Opposition to <u>122</u> MOTION for Summary Judgment *on Damages*, filed by Wells Fargo Bank, N.A.. (Attachments: # <u>1</u> Appendix, # <u>2</u> Declaration of Megan McKennon, # <u>3</u> Declaration of Rebecca Lindahl, # <u>4</u> Declaration of Nikki Tanner, # <u>5</u> Declaration of David Blackwell, # <u>6</u> Declaration of Joseph Thomas)(Lindahl, Rebecca) (Entered: 10/14/2022) |
| 10/17/2022 | <u>128</u> | NOTICE of Resetting. Parties notified. Pre-Motion Conference reset for 10/19/2022 at 11:15 AM by video before Chief Judge Lee H Rosenthal, filed. (leddins, 4) (Entered: 10/17/2022) |
| 10/18/2022 | <u>129</u> | NOTICE of Resetting. Parties notified. Pre-Motion Conference reset for 10/26/2022 at 03:30 PM by video before Chief Judge Lee H Rosenthal, filed. (leddins, 4) (Entered: 10/18/2022) |
| 10/21/2022 | <u>130</u> | REPLY in Support of <u>122</u> MOTION for Summary Judgment *on Damages*, filed by Anadarko Petroleum Corporation, Occidental Petroleum Corporation. (Patrick, Kathy) (Entered: 10/21/2022) |
| 10/26/2022 | <u>131</u> | NOTICE of Resetting. Parties notified. Pre-Motion Conference reset for 11/2/2022 at 09:30 AM by video before Chief Judge Lee H Rosenthal, filed. (ClaudiaGutierrez, 4) (Entered: 10/26/2022) |
| 11/01/2022 | <u>132</u> | NOTICE of Appearance by Johnjerica Hodge on behalf of Wells Fargo Bank, N.A., filed. (Hodge, Johnjerica) (Entered: 11/01/2022) |
| 11/02/2022 | <u>133</u> | Wells Fargo Presentation for Hearing on Motion for Summary Judgment on Damages by Wells Fargo Bank, N.A., filed.(Hodge, Johnjerica) (Entered: 11/02/2022) |
| 11/02/2022 | 137 | Minute entry for proceedings before the Hon. Lee H. Rosenthal. Pre-motion conference and hearing on the motion for summary judgment (Docket Entry No. 122) held on November 2, 2022. Because Wells Fargo has identified a narrow set of questions, the court will allow a short deposition on the plaintiffs 30(b)(6) representative. Wells Fargo may take no longer than 1 hour to depose the witness. Occidental and Anadarko may take no longer than an hour to redirect the witness. |

| | | |
|---|---|---|
| | | The deadline to complete this deposition is November 21, 2022. The parties will submit a status report shortly after as to the effect of the additional deposition on the pending motion for summary judgment. The status report is limited to 10 pages, including exhibits. The court will not compel plaintiffs to submit additional interrogatory responses. The court heard argument on the motion for summary judgment on damages. That motion remains under consideration. Appearances: Kathy Patrick/Mark Dore for Pltf. and Christian Kemnitz/Rebecca Lindahl/ Megan McKennon/Johnjerica Hodge for Deft.(Court Reporter: N. Forrest), filed.(leddins, 4) (Entered: 11/04/2022) |
| 11/03/2022 | 134 | AO 435 TRANSCRIPT REQUEST by Occidental Petroleum Corp. for Transcript of Pre-Motion Conference on 11/2/2022 before Judge Rosenthal. 3-Day turnaround requested. Court Reporter/Transcriber: Nichole Forrest, filed. (Dore, Mark) (Entered: 11/03/2022) |
| 11/03/2022 | 135 | AO 435 TRANSCRIPT REQUEST by Melissa Westbrook for Transcript of Hearing held on 11/2/22. 3-Day turnaround requested. Court Reporter/Transcriber: Nichole Forrest, filed. (RachelWillborg, 4) (Entered: 11/03/2022) |
| 11/03/2022 | 136 | AO 435 TRANSCRIPT REQUEST by Rebecca K. Lindahl for Transcript of Pre-Motion Conference 11/2/22 Judge Rosenthal. 3-Day turnaround requested. Court Reporter/Transcriber: Nichole Forrest, filed. (Lindahl, Rebecca) (Entered: 11/03/2022) |
| 11/08/2022 | 138 | TRANSCRIPT re: Hearing held on 11/2/22 before Chief Judge Lee H Rosenthal. Court Reporter/Transcriber Nichole Forrest, RDR, CRR, CRC. Release of Transcript Restriction set for 2/6/2023., filed. (Forrest, Nichole) (Entered: 11/08/2022) |
| 11/09/2022 | 139 | Notice of Filing of Official Transcript as to 138 Transcript. Party notified, filed. (HeatherCarr, 4) (Entered: 11/09/2022) |
| 11/15/2022 | 140 | STIPULATION re: Supplemental Deposition of Plaintiffs by Wells Fargo Bank, N.A., filed.(Lindahl, Rebecca) (Entered: 11/15/2022) |
| 11/16/2022 | 141 | NOTICE of Resetting. Parties notified. Docket Call reset for 2/24/2023 at 09:30 AM by video before Chief Judge Lee H Rosenthal, filed. The joint pretrial order is due by 2/17/23. (leddins, 4) (Entered: 11/16/2022) |
| 11/22/2022 | 142 | SUPPLEMENT to 122 MOTION for Summary Judgment *on Damages* by Occidental Petroleum Corporation, filed. (Attachments: # 1 Exhibit A)(Patrick, Kathy) (Entered: 11/22/2022) |
| 11/23/2022 | 143 | SUPPLEMENT to 127 Response in Opposition to Motion, by Wells Fargo Bank, N.A., filed.(Lindahl, Rebecca) (Entered: 11/23/2022) |
| 02/15/2023 | 144 | NOTICE of Appearance by Ayesha Najam on behalf of Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. (Najam, Ayesha) (Entered: 02/15/2023) |
| 02/22/2023 | 145 | ORDER entered: The court cancels the joint pretrial order deadline and the docket call setting, pending the ruling on the defendant's motion for summary judgment. The joint pretrial order filing deadline and date for docket call will be reset, if appropriate, after the motion is resolved. Deadlines terminated.(Signed by Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 02/22/2023) |
| 03/31/2023 | 146 | SUPPLEMENT to 127 Response in Opposition to Motion, 143 Supplement, 122 |

| | | |
|---|---|---|
| | | MOTION for Summary Judgment *on Damages* by Wells Fargo Bank, N.A., filed.(Hine, Kelly) (Entered: 03/31/2023) |
| 04/04/2023 | 147 | SUPPLEMENT to 122 MOTION for Summary Judgment *on Damages* by Occidental Petroleum Corporation, filed.(Patrick, Kathy) (Entered: 04/04/2023) |
| 05/31/2023 | 148 | MEMORANDUM AND ORDER entered: Occidental's motion for summary judgment, (Docket Entry No. 122), is granted. Judgment is entered in the amount of $38,008,313, with prejudgment interest accruing at a rate of 5.5 percent as of January 25, 2021, and postjudgment interest accruing at a rate of 5.15 percent as of the date of this judgment, per annum. Occidental's motion for attorney's fees and the accompanying affidavits must be filed no later than July 7, 2023. Wells Fargo must respond no later than August 4, 2023. Final judgment will be entered separately. See FED. R. CIV. P. 54(d)(2), 58(a). (Signed by Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 05/31/2023) |
| 05/31/2023 | 149 | FINAL JUDGMENT entered. Case terminated on 5/31/23.(Signed by Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 05/31/2023) |
| 06/07/2023 | 150 | Unopposed MOTION for Relief from Judgment by Occidental Petroleum Corporation, filed. Motion Docket Date 6/28/2023. (Attachments: # 1 Proposed Order)(Patrick, Kathy) (Entered: 06/07/2023) |
| 06/07/2023 | 151 | FINAL JUDGMENT entered granting docket entry no 150 to correct the judgment. (Signed by Judge Lee H Rosenthal) Parties notified.(leddins, 4) (Entered: 06/07/2023) |
| 06/07/2023 | | (Court only) ***Motion(s) terminated: 150 Unopposed MOTION for Relief from Judgment. (leddins, 4) (Entered: 06/07/2023) |
| 06/14/2023 | 152 | BILL OF COSTS in total amount $$79,899.96 by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. (Attachments: # 1 Exhibit 1 - Declaration of Angus J. Dodson, # 2 Exhibit 1A, # 3 Exhibit 1B, # 4 Exhibit 1C)(Dodson, Angus) (Entered: 06/14/2023) |
| 06/21/2023 | 153 | OBJECTIONS to 152 Bill of Costs, , filed by Wells Fargo Bank, N.A.. (Lindahl, Rebecca) (Entered: 06/21/2023) |
| 06/26/2023 | 154 | RESPONSE to 153 Objections *to Plaintiffs' Bill of Costs*, filed by Anadarko Petroleum Corporation, Occidental Petroleum Corporation. (Attachments: # 1 Exhibit 1 - Supplemental Declaration of Angus J. Dodson)(Dodson, Angus) (Entered: 06/26/2023) |
| 06/30/2023 | | (Court only) ***(PRIVATE ENTRY) No action taken on bill of costs, pending objection. (HeatherCarr, 4) (Entered: 06/30/2023) |
| 06/30/2023 | 155 | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 149 Final Judgment, 151 Final Judgment by Wells Fargo Bank, N.A. (Filing fee $ 505, receipt number ATXSDC-30148857), filed.(Lindahl, Rebecca) (Entered: 06/30/2023) |
| 07/03/2023 | 156 | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 155 Notice of Appeal. Fee status: Paid. Reporter(s): F. Warner, filed. (DorinaReyna, 1) (Entered: 07/03/2023) |
| 07/03/2023 | | Appeal Review Notes re: 155 Notice of Appeal. Fee status: Paid. The appeal filing fee has been paid or an ifp motion has been granted.Hearings were held in the case. DKT13 transcript order form(s) due within 14 days of the filing of the notice of |

| | | |
|---|---|---|
| | | appeal.Hearings were held in the case - transcripts were produced. Number of DKT-13 Forms expected: 1, filed.(DorinaReyna, 1) (Entered: 07/03/2023) |
| 07/06/2023 | | Notice of Assignment of USCA No. 23-20318 re: 155 Notice of Appeal, filed.(EdnitaPonce, 1) (Entered: 07/06/2023) |
| 07/07/2023 | 157 | MOTION for Attorney Fees by Anadarko Petroleum Corporation, Occidental Petroleum Corporation, filed. Motion Docket Date 7/28/2023. (Attachments: # 1 Exhibit 1 - Declaration of Kathy Patrick, # 2 Exhibit A, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4)(Dodson, Angus) (Entered: 07/07/2023) |
| 07/12/2023 | 158 | DKT13 TRANSCRIPT ORDER REQUEST by Wells Fargo. This is to order a transcript of 7/30/2021 Conference before Judge Rosenthal. Court Reporter/Transcriber: Fred Warner. This order form relates to the following: 22 Scheduling Conference,, filed.(Hodge, Johnjerica) (Entered: 07/12/2023) |
| 07/20/2023 | 159 | APPEAL TRANSCRIPT re Initial Conference (By Zoom) held on July 30, 2021 before Judge Lee H Rosenthal. Court Reporter/Transcriber FWarner. Ordering Party: Johnjerica Hodge. This transcript relates to the following: 158 Appeal Transcript Request,. Release of Transcript Restriction set for 10/18/2023., filed. (Warner, Fred) (Entered: 07/20/2023) |
| 07/21/2023 | 160 | Notice of Filing of Official Transcript as to 159 Transcript - Appeal. Party notified, filed. (MayraMarquez, 4) (Entered: 07/21/2023) |
| 07/21/2023 | 161 | Unopposed MOTION to Stay *Execution or Enforcement of Judgment* by Wells Fargo Bank, N.A., filed. Motion Docket Date 8/11/2023. (McKennon, Megan) (Entered: 07/21/2023) |
| 07/21/2023 | 162 | PROPOSED ORDER re: 161 Unopposed MOTION to Stay *Execution or Enforcement of Judgment*, filed.(McKennon, Megan) (Entered: 07/21/2023) |
| 07/24/2023 | 163 | ORDER Granting Motion to Stay Execution or Enforcement of Judgment and Approval of Supersedeas Bond granting 161 . Enforcement of or execution of the Court's 6/7/2023 judgment is stayed pending appeal. (Signed by Judge Lee H Rosenthal) Parties notified. (ghassan, 4) (Entered: 07/24/2023) |
| 07/27/2023 | 164 | Unopposed MOTION for Kelly D. Hine to Withdraw as Attorney by Wells Fargo Bank, N.A., filed. Motion Docket Date 8/17/2023. (Attachments: # 1 Proposed Order)(Hine, Kelly) (Entered: 07/27/2023) |
| 07/27/2023 | 165 | Order of USCA re: 155 Notice of Appeal ; USCA No. 23-20318. The court has granted the unopposed motion of Attorney Mr. Kelly D. Hine to withdraw as Appellant's counsel of record in this case, filed. (SaraCelis, 1) (Entered: 07/28/2023) |
| 08/02/2023 | 166 | ORDER granting 164 Unopposed MOTION for Kelly D. Hine to Withdraw as Attorney, Attorney Kelly Dean Hine terminated(Signed by Judge Lee H Rosenthal) Parties notified.(JacquelineMata, 4) (Entered: 08/02/2023) |
| 08/04/2023 | 167 | OBJECTIONS to 157 MOTION for Attorney Fees , filed by Wells Fargo Bank, N.A.. (Attachments: # 1 Declaration)(Lindahl, Rebecca) (Entered: 08/04/2023) |
| 08/09/2023 | | (Court only) ***(PRIVATE ENTRY) ROA requested from USCA, due on 08/23/2023, filed. (DahlilaRodriguez, 1) (Entered: 08/09/2023) |
| 08/11/2023 | 168 (p.5483) | REPLY in Support of 157 MOTION for Attorney Fees, filed by Anadarko Petroleum Corporation, Occidental Petroleum Corporation. (Attachments: # 1 |

| | | |
|---|---|---|
| | | Exhibit 1-Excerpt from Etheridge Depo, # 2 Exhibit 2-Email from Trial Coordinator)(Dodson, Angus) (Entered: 08/11/2023) |
| 08/15/2023 | | Electronic record on appeal certified to the Fifth Circuit Court of Appeals re: 155 Notice of Appeal USCA No. 23-20318, filed.(DahlilaRodriguez, 1) (Entered: 08/15/2023) |
| 08/15/2023 | | Electronic Access to Record on Appeal Provided re: 155 Notice of Appeal to A. Dodson, M. Dore, D. Drake, J. Hodge, A. Najam, K. Patrick. Attorneys of record at the Circuit may download the record from the Court of Appeals. (USCA No. 23-20318), filed.(DahlilaRodriguez, 1) (Entered: 08/15/2023) |
| 08/29/2023 | 169 (p.5508) | Fifth Circuit Court of Appeals LETTER advising: IT IS ORDERED that Appellant's unopposed motion to view and obtain all sealed documents is GRANTED (USCA No. 23-20318), filed.(MaricelaPerez, 1) (Entered: 08/29/2023) |
| 08/29/2023 | 170 (p.5510) | Transmittal Letter on Appeal re: 155 Notice of Appeal. The SEALED electronic record on CD is being sent to Johnjerica Hodge via FedEx. (USCA No. 23-20318), filed. (MaricelaPerez, 1) (Entered: 08/29/2023) |
| 08/31/2023 | 171 (p.5511) | MEMORANDUM AND ORDER entered regarding 157 MOTION for Attorney Fees. Based on the motion and exhibits, the objections, and the response, the court grants themotion for fees and overrules the objections. The court awards Oxy $1,497,529.66 in fees. (Signed by Judge Lee H Rosenthal) Parties notified.(LisaEddins, 4) (Entered: 08/31/2023) |
| 09/08/2023 | 172 (p.5516) | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 171 (p.5511) Memorandum and Order, by Wells Fargo Bank, N.A. (Filing fee $ 505, receipt number ATXSDC-30485539), filed.(Lindahl, Rebecca) (Entered: 09/08/2023) |
| 09/11/2023 | 173 (p.5519) | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 172 (p.5516) Notice of Appeal. Fee status: Paid, filed. (DorinaReyna, 1) (Entered: 09/11/2023) |
| 09/11/2023 | | Appeal Review Notes re: 172 (p.5516) Notice of Appeal. Fee status: Paid. The appeal filing fee has been paid or an ifp motion has been granted.Hearings were held in the case - transcripts were produced. Number of DKT-13 Forms expected: 1, filed.(DorinaReyna, 1) (Entered: 09/11/2023) |
| 09/15/2023 | | Notice of Assignment of USCA No. 23-20443 re: 172 (p.5516) Notice of Appeal, filed.(DorinaReyna, 1) (Entered: 09/15/2023) |
| 09/15/2023 | | (Court only) Set/Cleared Flags. Appeal_Nat flag cleared. (DorinaReyna, 1) (Entered: 09/15/2023) |
| 09/15/2023 | | (Court only) ***ROA requested from Fifth Circuit. Due 10/2/2023.***(PRIVATE ENTRY), filed. (DorinaReyna, 1) (Entered: 09/15/2023) |
| 09/18/2023 | | Electronic record on appeal certified to the Fifth Circuit Court of Appeals re: 172 (p.5516) Notice of Appeal USCA No. 23-20443, filed.(DorinaReyna, 1) (Entered: 09/18/2023) |
| 09/18/2023 | | (Court only) ***Electronic access has not been assigned. Attorney of record has not filed their notice of appearance with the Fifth Circuit.***(PRIVATE ENTRY), filed. (DorinaReyna, 1) (Entered: 09/18/2023) |
| 09/28/2023 | | |

| | | (Court only) ***(PRIVATE ENTRY) SUPPLEMENTAL ELECTRONIC RECORD ON APPEAL REQUESTED from District Court for 4:21-CV-1126. Electronic ROA due on 10/13/2023 (for additional docket entries). [23-20318] (RLL), filed. (EfrainGarcia, 1) (Entered: 09/28/2023) |

# **TAB 3**

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **OCCIDENTAL PETROLEUM CORP.** | § | |
| **and ANADARKO PETROLEUM CORP.,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:21-CV-01126** |
| | § | |
| **WELLS FARGO BANK, N.A.,** | § | |
| | § | |
| *Defendant.* | § | |

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that Wells Fargo Bank, N.A. ("Wells Fargo"), defendant in the above-captioned case, hereby appeals to the United States Court of Appeals for the Fifth Circuit from the final judgment entered on June 7, 2023, ruling in favor of Plaintiffs Occidental Petroleum Corp. and Anadarko Petroleum Corp on their claims against Wells Fargo.[1] Wells Fargo files this notice both individually and in its capacity as Trustee of the Anadarko Petroleum Corporation Benefits Trust.

---

[1] The Court initially entered a version of the final judgment on May 31, 2023, which it subsequently corrected by an amended final judgment dated June 7, 2023.

**NOTICE OF APPEAL**  **PAGE** 1

Respectfully submitted,

/s/ Rebecca K. Lindahl
Christian Kemnitz (*admitted pro hac vice*)
Illinois; ARDC #6237427
**KATTEN MUCHIN ROSENMAN LLP**
525 West Monroe Street
Chicago, IL 600661
(312) 902-5379
christian.kemnitz@katten.com

Rebecca K. Lindahl (*admitted pro hac vice*)
NC Bar # 35378
**Katten Muchin Rosenman LLP**
550 S. Tryon Street, Suite 2900
Charlotte, NC 28202
(704) 344-3141
rebecca.lindahl@katten.com

Kelly D. Hine
Texas State Bar No. 24002290
S.D. No. 27571
**KATTEN MUCHIN ROSENMAN LLP**
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201-2494

**JOYCE + MCFARLAND LLP**
Jeff Joyce
State Bar No. 11035400
Federal ID No. 10762
712 Main Street, Suite 1500
Houston, TX 77002
Telephone: 713.222.1113
Facsimile: 713.513.5577
jjoyce@jmlawyers.com

**ATTORNEYS FOR WELLS FARGO
BANK, N.A.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of June 2023, I electronically filed the forgoing document with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to such Notice as service of the document by electronic means.

*/s/ Rebecca K. Lindahl*_____
Counsel for Defendant

# **TAB 4**

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **OCCIDENTAL PETROLEUM CORP.** | § | |
| **and ANADARKO PETROLEUM CORP.,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-21-01126** |
| | § | |
| **WELLS FARGO BANK, N.A.,** | § | |
| | § | |
| *Defendant.* | § | |

## NOTICE OF APPEAL

Notice is hereby given that Wells Fargo Bank, N.A. ("Wells Fargo"), defendant in the above-captioned case, hereby appeals to the United States Court of Appeals for the Fifth Circuit from the final judgment entered on August 31, 2023, ruling in favor of Plaintiffs Occidental Petroleum Corp. and Anadarko Petroleum Corp. on their Motion for Attorneys' Fees filed on July 7, 2023 (ECF No. 157). Wells Fargo files this notice both individually and in its capacity as Trustee of the Anadarko Petroleum Corporation Benefits Trust.

23-20318.5516

Respectfully submitted,

*/s/ Rebecca K. Lindahl*
Christian Kemnitz (*admitted pro hac vice*)
Illinois; ARDC #6237427
**KATTEN MUCHIN ROSENMAN LLP**
525 West Monroe Street
Chicago, IL 600661
(312) 902-5379
christian.kemnitz@katten.com

Rebecca K. Lindahl (*admitted pro hac vice*)
NC Bar # 35378
**Katten Muchin Rosenman LLP**
550 S. Tryon Street, Suite 2900
Charlotte, NC 28202
(704) 344-3141
rebecca.lindahl@katten.com

**JOYCE + MCFARLAND LLP**
Jeff Joyce
State Bar No. 11035400
Federal ID No. 10762
712 Main Street, Suite 1500
Houston, TX 77002
Telephone: 713.222.1113
Facsimile: 713.513.5577
jjoyce@jmlawyers.com

**ATTORNEYS FOR WELLS FARGO BANK, N.A.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of September, 2023, I electronically filed the forgoing document with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to such Notice as service of the document by electronic means.

*/s/ Rebecca K. Lindahl*
Counsel for Defendant

# **TAB 5**

United States District Court
Southern District of Texas

**ENTERED**

June 07, 2023

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXASS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| | § | |
| **OCCIDENTAL PETROLEUM CORP.** | § | |
| **and ANADARKO PETROLEUM CORP.,** | § | |
| *Plaintiffs,* | § | |
| **v.** | § | **Civil Action No. 4:21-CV-01126** |
| **WELLS FARGO BANK, N.A.,** | § | |
| *Defendant.* | § | |
| | § | |
| | § | |
| | § | |

**FINAL JUDGMENT AND
ORDER WITHDRAWING ECF NO. 149**

The Court hereby **GRANTS** Plaintiffs' Unopposed Motion for Relief from Judgment Pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, and the Court's (original) Final Judgment, ECF No. 149, is hereby **WITHDRAWN**.

For the reasons set out in this Court's Order entered on May 31, 2023 (ECF No. 148), judgment is entered for Plaintiffs in the amount of $38,008,313, with prejudgment interest accruing at 5.5% per annum, beginning January 25, 2021, and post-judgment interest accruing at 5.15% per annum, beginning May 31, 2023.

For the reasons set out in this Court's Orders dated November 30, 2021 and August 18, 2022 (ECF Nos. 40 & 116, respectively), all other claims brought by Plaintiffs, and counterclaims brought by Defendant, are dismissed with prejudice.

Defendant's third-party complaint against Equiniti Trust Company was dismissed without prejudice in this Court's Order dated June 21, 2022 (ECF No. 90).

This is a final judgment.

SIGNED on ___June 7___, 2023, at Houston, Texas.

_Lee H. Rosenthal_

Lee H. Rosenthal
United States District Judge

# **TAB 6**

United States District Court
Southern District of Texas

**ENTERED**

November 30, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| OCCIDENTAL PETROLEUM CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-21-1126 |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This case presents a number of questions. The first question the parties ask the court to address is whether, under their agreement, the defendant owed a fiduciary duty to the plaintiff. The agreement the parties entered is known as a rabbi trust because the first such agreement involved a rabbi. The agreement has nothing to do with the rabbinate and is in many ways unlike a conventional trust. A rabbi trust is essentially a bank account set up to hold money set aside for a company's deferred compensation for high level executives, designed to minimize the tax impacts of setting aside the money. The structure used to achieve this tax avoidance uses the word trust, but it is more precisely a bank account in which a company puts money it commits to pay its executive employees and shields that money from certain tax consequences. Calling the account a "trust" and the entity managing the account a "trustee" does not create a fiduciary relationship between the company and the trustee.

Wells Fargo Bank, N.A. was the successor bank holding the money that Occidental Petroleum's predecessor placed in a rabbi trust to achieve the favorable tax treatment. In 2019, Wells Fargo agreed to a request by Occidental to sell certain Occidental shares held in the trust on certain dates. The sales were delayed. Between the dates they should have occurred and the dates

they did occur, COVID-19 hit and the stock market dropped, a lot. Occidental alleges that the trades resulted in far lower payments than if they had been done when promised, and that a payment from Wells Fargo to Occidental in April 2020 was millions of dollars lower than it would have been if Wells Fargo had timely executed the trades. Occidental sued Wells Fargo for the delay in placing the trades and the resulting price and payment drop, asserting claims for breach of fiduciary duty and breach of contract. (Occidental raised, then dropped, a claim for breach of a duty to indemnify.) Wells Fargo has moved to dismiss the breach of fiduciary duty cause of action, and Occidental responded. Wells Fargo also counterclaimed, and Occidental moved to dismiss the counterclaim. The court heard argument on the motions.

Based on the pleadings, the motions and responses; the arguments; and the applicable law, the court grants Wells Fargo's motion to dismiss the fiduciary breach claim. (Docket Entry No. 24). Wells Fargo may owe contractual and other duties that would make it liable for some or all of the losses Occidental seeks, but that liability is not properly based on a breach of fiduciary duty owed by Wells Fargo to Occidental. Wells Fargo's motion to dismiss the indemnity claim, (Docket Entry No. 24), is granted. Occidental's motion to dismiss Wells Fargo's counterclaim, (Docket Entry No. 29), is also granted. The reasons are set out below.

## I.     Background

Anadarko Petroleum Corporation entered into a Benefits Trust Agreement with Wachovia Bank of North Carolina, N.A., in May 1995, for the benefit of certain Anadarko employees. (Docket Entry No. 24-1 at 6). The Trust was established to guarantee payment to certain high level Anadarko employees under deferred compensation plans or other employee benefit arrangements exempt from ERISA. (Docket Entry No. 24-1 at 6). Each benefit arrangement is considered a "Plan" under the Trust Agreement. (Docket Entry No. 24-1 at 6). The Plan

2

Participants are the current or former highly compensated employees and directors of Anadarko who were participating in a Plan, and the current or former directors, employees, and others who were not participating but who were eligible to receive benefits under a Plan.  (Docket Entry No. 24-1 at 9).   Beneficiaries are designated under a Plan to receive benefits in the event of the death of a Participant.  (Docket Entry No. 24-1 at 8).

Anadarko is now a wholly owned subsidiary of Occidental Petroleum Corporation. (Docket Entry No. 14 at ¶ 6).  This change in control converted the shares of Anadarko stock in the Trust to shares of Occidental stock.  (Docket Entry No. 14 at ¶ 15).  Wells Fargo is the legal successor to Wachovia Bank.  (Docket Entry No. 14 at ¶ 6).

Under the Benefits Trust Agreement, the Trust principal and earnings are assets and taxable property of Occidental, not of the employee Participants.  The Trust assets are subject to claims by Occidental's general creditors.   Occidental alleges that the Trust "employee participants do not have 'any beneficial interest' in the Benefits Trust Agreement." (Docket Entry No. 14 at ¶ 7 (citing Docket Entry 14-1 at 6)).  Under Section 4.1 of the Trust Agreement, Occidental "has a right to reversionary distributions from the Trust when the Trust assets exceed 125% of the value of Current Aggregate Accrued Obligations."  (Docket Entry No. 14 at ¶ 8).  The Trustee's rights and duties include to: "invest and reinvest part or all of the Trust Fund"; "retain in cash such amounts as the Trustee considers advisable";  "manage, sell, insure, and otherwise deal with all real and personal property"; "make payments from the Trust Fund to provide benefits that have become payable under the Plans pursuant to direction from the Company"; "maintain records reflecting all receipts and payments under this Agreement"; "report to the Company as of each calendar year end, and at such other times as the Company may request, the then net worth of the Trust Fund"; and "invest in securities (including stock or rights to acquire stock) or obligations issued by the

23-20318.776

Company." (Docket Entry No. 24-1 at 13). The Company may direct the Trustee "to acquire, retain, or dispose of such investments as the Company directs," but the Company's right to direct the Trustee ends following a change in control. (Docket Entry No. 24-1 at 13). After that, "the Trustee's exercise or nonexercise of its powers and discretion in good faith shall be conclusive on all persons." (Docket Entry No. 24-1 at 29).

On December 19, 2019, Wells Fargo agreed to Occidental's request to liquidate shares of Occidental stock from the Trust, "beginning on January 6, 2020, sell 381,420 shares each day over the course of the week, with a final liquidation on January 10, 2020." (Docket Entry No. 14 at ¶ 16). Some of the shares to be liquidated were held at Depository Trust Company, and others were held by Equiniti Trust Company. Wells Fargo argues that this was merely a request from Occidental, not an instruction, although Wells Fargo acknowledges that it agreed to the request. While Wells Fargo acknowledges that it agreed to liquidate the shares on the specified timetable, it also argues that Occidental offered no consideration for Wells Fargo's agreement. (Docket Entry No. 24 at 13).

The parties agree that the shares were not sold on the prescribed dates. They dispute who is to blame. Wells Fargo sold the first tranche of 381,420 shares on January 6, 2020, but sold only 352,080 shares on January 7, instead of the agreed upon 381,420. (Docket Entry No. 14 at ¶ 22–23). Wells Fargo then sold 29,340 shares on both January 13, 2020, and January 14, 2020, far short of the specified number. (Docket Entry No. 14 at ¶ 28). Occidental alleges that Wells Fargo knew on January 31, 2020, that hundreds of thousands of shares held at Equiniti had not been sold. (Docket Entry No. 14 at ¶ 29). Wells Fargo did not sell the remaining 1,114,920 shares until March 20, 2020. (Docket Entry No. 14 at ¶ 30). On the dates that Occidental alleges Wells Fargo had agreed to sell the shares, January 6 through January 10, 2020, the share price ranged from

23-20318.777

$44.98 to $45.90.  (Docket Entry No. 14 at ¶ 28).  When Wells Fargo sold the remaining shares on March 20, 2020, the market was in its post-COVID dive, and the share price was $9.98.  (Docket Entry No. 14 at 9).

Under Section 4.1 of the Trust Agreement, if the value of the Trust exceeds 125% of "Current Aggregate Accrued Obligations under the Plans," Occidental was permitted to request a refund of the excess assets "so as to reduce the net assets of the Trust to no less than one hundred twenty-five percent (125%) of the then Current Aggregate Accrued Obligations."  (Docket Entry No. 24-1 at 10–11).  In April 2021, Wells Fargo transferred $23,696,213.01 to Occidental because the Trust was overfunded.  (Docket Entry No. 14 at ¶ 35).  Occidental alleges that if Wells Fargo had sold the stock on the dates that Occidental had requested and Wells Fargo had agreed to do, the overfunded amount would have been $30 million greater, and Occidental would have received $30 million more than it did.  (Docket Entry No. 14 at 10).

Occidental sued for breach of contract based on the Trust Agreement and Wells Fargo's written commitment to sell the specified stock amounts from January 6, 2020, to January 10, 2020.  Occidental also sued for breach of fiduciary duties based on Wells Fargo's status as Trustee and Occidental's status as a party to the Trust Agreement, the owner of the Trust assets, and as an "interested person" and beneficiary under the Texas Property Code.  (Docket Entry No. 14 at ¶ 47 (citing Tex. Prop. Code § 115.011)).  Occidental also asserted a claim for breach of the indemnity provision of the Trust Agreement.  Wells Fargo moved to dismiss Occidental's claims for breach of fiduciary duty and breach of the indemnity provision.  Occidental has agreed to dismiss its breach of indemnity claim.

Wells Fargo brought a counterclaim against Occidental based on Equiniti's failure to register a transfer of securities under U.C.C. § 8-401(a).  Wells Fargo alleges that it submitted

23-20318.778

requests to Equiniti, Occidental's transfer agent, to sell specified amounts of Occidental shares no later than January 9, 2020, but that Equiniti "refused to register the transfer [of] the Occidental shares owned by the Trust as and when Wells Fargo requested." (Docket Entry No. 27 at ¶ 65, 67). Wells Fargo alleges that Occidental was aware of Equiniti's unreasonable refusal to register the transfer and did not address it, and that because Equiniti is Occidental's agent, Occidental is responsible for Equiniti's failure to register the transfer. (Docket Entry No. 27 at ¶ 85, 90–92).

Occidental responds that Wells Fargo's delay in the sale of stock was the result of Wells Fargo's own unexplained delays, and that Wells Fargo cannot state a claim under U.C.C. § 8-401 because there was no transfer of the Occidental stock or presentment of a request to transfer.

The court held oral argument on the motions. Counsel for both sides have thoroughly and ably analyzed the facts and the law. The court analyzes the motion to dismiss the breach of fiduciary duty and the motion to dismiss the counterclaim below.

## II.   The Legal Standard for a Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin

6

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

## III.    Analysis

### A.    Occidental's Claim for Breach of Fiduciary Duties

"[T]he elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church of Beaumont v. Parker,* 514 S.W.3d 214, 220 (Tex. 2017). Occidental alleges that as the primary

23-20318.780

beneficiary of the Trust, a party to the Trust Agreement, the owner of the Trust assets, and an interested person under the Texas Property Code § 111.004(7), Wells Fargo owed fiduciary duties that it breached when it failed to comply with its written agreement to sell shares from the Trust in a specified number on a specified timetable.   Wells Fargo moves to dismiss on the ground that under the facts alleged and the documents properly considered, (1) Occidental is not a beneficiary of the Trust, (2) even if Wells Fargo owed some duty to Occidental as an interested person, Occidental does not have standing to bring the claim, and (3) Texas law does not establish a fiduciary duty based on Occidental's status as an interested person.

A fiduciary duty generally exists between a trustee and a beneficiary.  *Healey v. Healey*, 529 S.W.3d 124, 135 (Tex. App.—Tyler 2017, pet. denied).  Wells Fargo argues that the Trust Agreement does not include Occidental in its definition of "Participant" or "Beneficiary."  Wells Fargo has the better argument.  These are defined terms.  "Participant" is defined as a person who is entitled to benefits under the Plan, including current and former members of the board of directors and current and former employees who are participating or are eligible to participate. (Docket Entry No. 24-1 at 9).  "Beneficiary" is defined as "the person or entity designated under a Plan to receive benefits in the event of the death of the Participant."  (Docket Entry No. 24-1 at 8).  The "Company," defined in the Trust Agreement as Anadarko Petroleum Corporation and its successors, is not listed as, or included in the definitions of, a Participant or a Beneficiary in the Plan. (Docket Entry No. 24-1 at 7–8).  The definitions in the Trust Agreement do not support finding that Occidental is a beneficiary of the Trust.

Occidental relies on a more functional approach.  Occidental argues that because the Trust Agreement provided that Anadarko "retained all equitable ownership of the Trust assets," as Anadarko's successor, it is in effect the primary beneficiary of the Trust. (Docket Entry No. 30 at

23-20318.781

17).  The principal of the Trust and any earnings on the principal are assets of Occidental and are subject to creditors of Occidental.  (Docket Entry No. 14 at ¶ 7).  Occidental alleges that it has a right to receives periodic "non-discretionary" payments from the Trust assets and has a vested reversionary interest in the Trust.  (Docket Entry No. 30 at 18).  Occidental relies on a provision in the Trust Agreement that permits it to make benefit payments directly to Plan Participants, and then seek reimbursement for these benefit payments from the Trust.  (Docket Entry No. 30-1 at 10).

The Trust Agreement does not, however, support Occidental's argument that it is a beneficiary because it is entitled to receive payments from the Trust.  The Trust Agreement puts the decision to refund excess assets within the "sole determination" of the Trustee.  (Docket Entry No. 24-1 at 10–11).  The Trust is irrevocable and is "held for the exclusive purpose of providing benefits under a Plan to Participants."  (Docket Entry No. 24-1 at 7).  "No part of the income or corpus of the Trust Fund shall be recoverable by the Company, except as provided in Section 4.1." (Docket Entry No. 24-1 at 7).  Section 4.1 provides that before a change in control, the Company may direct the Trustee to return assets exceeding 100 percent of the Current Aggregate Accrued Obligations at the end of any calendar year.  (Docket Entry No. 24-1 at 10).  After a change in control, if assets in the Trust exceed 125 percent of the Current Aggregate Accrued Obligations, the Company may request that the Trustee pay the Company the excess amount, but the decision to pay is in the Trustee's "sole determination."  (Docket Entry No. 24-1 at 10–11).  Occidental's amended complaint concedes that "Anadarko Petroleum underwent a change of control when it was acquired by Occidental in August of 2019."  (Docket Entry No. 14 at ¶ 15).  After the change in control, whether to pay Occidental any amount over 125 percent of the Current Aggregate Accrued Obligations in a year was up to Wells Fargo.

The Trust Agreement states that other than as provided in Section 4.1, "the Company shall have no right or power to direct the Trustee to return to the Company or to divert to others any of the assets in the Trust before payment of all benefits have been made to Participants pursuant to the terms of the Plans." (Docket Entry No. 24-1 at 11). Occidental is not a beneficiary of the Trust based on its right to seek reimbursement, because the Trust Agreement places reimbursement after a change in control in the sole discretion of the Trustee and does not give Occidental a right to payment. Nor is Occidental a Trust beneficiary based on its right to receive reimbursements for benefits it pays directly to employees. Occidental serves only as a conduit for these payments and is not a beneficiary of them.

Wells Fargo additionally argues that if Occidental is a Trust beneficiary, the Trust "is by definition not a rabbi trust" and would not qualify for the favorable tax treatment it receives. (Docket Entry No. 31 at 7). "[A rabbi trust is] an irrevocable trust for deferred compensation. Funds held by the trust are out of reach of the employer, but are subject to the claims of the employer's creditors in the event of bankruptcy or insolvency." *In re IT Grp., Inc.*, 448 F.3d 661, 665 (3d Cir. 2006), as amended (July 10, 2006). The employer is considered the owner of the trust, and income the trust generates is taxable to the employer. *McAllister v. Resol. Tr. Corp.*, 201 F.3d 570, 573 (5th Cir. 2000). This allows "the participants to defer tax liability on their individual shares until asset distribution under the terms of the plan." *Id.*

Occidental agrees that the Trust Agreement was drafted as a rabbi trust. The Trust Agreement states that the Trust is "for the exclusive purpose of providing benefits under a Plan to Participants," but that Plan Participants have "no preferred claim on, or any beneficial interest in," the Trust. (Docket Entry No. 24-1 at 7). Occidental's lack of power to direct refunds is consistent with the requirement of a rabbi trust that "[f]unds held by the trust are out of reach of the

10

employer." *In re IT Grp., Inc.*, 448 F.3d at 665. The facts that the Trust was drafted to be, and is, a rabbi trust, further support finding that Occidental is not a beneficiary of the Trust. Wells Fargo did not owe a fiduciary duty to Occidental as a beneficiary.

Occidental's second asserted basis that Wells Fargo owes it a fiduciary duty is that Occidental is an "interested person" under the Texas Trust Code. The parties have not cited, and the court has not found, authority under Texas law that directly addresses whether an entity with Occidental's relationship to the Trust is an "interested person"; if so, whether under the Texas Trust Code, Occidental may bring an action as an "interested person" related to the Trust; and, if so, whether the Trustee of that Trust owes Occidental, as an "interested person," a fiduciary duty.

An "interested person" is:

> a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust. Whether a person, excluding a trustee or named beneficiary, is an interested person may vary from time to time and must be determined according to the particular purposes of and matter involved in any proceeding.

Tex. Prop. Code § 111.004(7). An "interest" is "any interest, whether legal or equitable or both, present or future, vested or contingent, defeasible or indefeasible." Tex. Prop. Code § 111.004(6). A "beneficiary" is a person for whose benefit property is held in trust, regardless of the nature of the interest. Tex. Prop. Code § 111.004(2). An "interested person" includes beneficiaries but extends to a broader category of persons or entities with an interest in property. Occidental argues that it qualifies as an interested person because it is the owner and a beneficiary of the Trust assets.

Texas courts have recognized that an interested person may have standing to bring suit against a trustee for breach of a fiduciary duty, but interested person status alone is insufficient to give rise to a fiduciary duty. In *Moon v. Lesikar*, 230 S.W.3d 800 (Tex. App.—Houston [14th Dist.] 2007, pet. denied), the Texas Court of Appeals recognized that generally, "a contingent

beneficiary would appear to meet the definition of an interested person with standing to bring suit against a trustee for breach of fiduciary duty." *Id.* at 803. But the court concluded that on the facts of that case, the contingent beneficiary did not have standing to bring the claims. *Moon* involved a contingent beneficiary's claim against a settlor who was also the cotrustee of a revocable trust. *Id.* The settlor had the power to revoke or amend the trust until his death, and he was the sole beneficiary of the trust while he was alive. *Id.* The court concluded that the contingent beneficiary did not have standing to bring a breach of fiduciary duty claim based on the settlor's disposition of assets while the settlor was alive. *Id.* at 806. *Moon* supports the argument that an interested person with merely a contingent claim does not have standing to bring a breach of fiduciary duty claim.

Wells Fargo argues that even if Occidental qualifies as an interested person, interested persons do not have standing to bring tort claims against trustees. An interested person is permitted to bring an action for "proceedings concerning trusts," in Texas district court, over which Texas district courts have original and exclusive jurisdiction. Tex. Prop. Code §§ 115.001, 115.011. A "proceeding concerning trusts" involves only certain administrative matters, not tort claims against a trustee. Tex. Prop. Code § 115.001. *See In re J.P. Morgan Chase Bank, N.A.*, 361 S.W.3d 703, 707 (Tex. App.—Corpus Christi 2011, no pet.) ("[N]othing in the amendment indicates the intent to overrule those cases holding that section 115.001 does not encompass tort claims and non-administrative matters against a trustee."); *In re NationsBank, N.A.*, No. 01-98-00582-CV, 1999 WL 213100, at *4 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("[W]e conclude that there was no intent to broaden "proceedings concerning trusts" under section 115.001(a) to include proceedings sounding in tort against the trustee."). Occidental's breach of fiduciary claim is not brought under § 115.001. The question is not Occidental's right to bring a claim against Wells

12

Fargo relating to the administration of the Trust in Texas state district court. The question is whether Wells Fargo as Trustee owed Occidental a fiduciary duty as an interested person in the Trust.

Occidental has not cited, and the court has not found, authority that supports extrapolating from Occidental's interested person status a right to demand fiduciary duties from Wells Fargo. "It is well settled that 'not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship.'" *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). "[M]ere subjective trust does not . . . transform arm's-length dealing into a fiduciary relationship." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998) (citation omitted). It is not clear that Occidental "subjectively" trusted Wells Fargo. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). Both are highly sophisticated entities. Their duties and rights were spelled out in the Trust Agreement, apparently negotiated at arms-length. Occidental paid Wells Fargo to provide the services specified as Trustee. The fiduciary breach claim does not arise from Wells Fargo's general duties as Trustee, but from its agreement to carry out a request by Occidental to sell certain shares from the Trust on certain dates. Even if Occidental and Wells Fargo trusted each other, and Occidental trusted Wells Fargo to carry out the transactions that gave rise to this suit as requested, the fact that parties to a transaction subjectively trust each other does not establish a fiduciary relationship. *See Schlumberger*, 959 S.W.2d at 177. To impose a fiduciary relationship "in a business transaction, 'there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit.'" *Id.* (citation omitted). Because the Trust itself does not create a fiduciary duty owed by Wells Fargo to Occidental, Wells Fargo's additional agreement to sell the Occidental shares in January and March 2020, is insufficient to create a fiduciary duty.

The structure and purpose of the Trust, as a rabbi trust, are for the future benefit of certain high-level Occidental employees.  The fact that these employees are the sole beneficiaries is an additional basis to distinguish the Texas Court of Appeals cases involving vested remainder interests.  *Cf. Snyder v. Cowell*, No. 08-01-00444-CV, 2003 WL 1849145, at *6 (Tex. App.—El Paso 2003, no pet.) ("Vested remaindermen are 'interested persons' under the Trust Code and can bring a cause of action for breach of fiduciary duty.").  The Trust was not created to protect a present or future right of  Occidental to receive reversionary funds.  As Wells Fargo argues, Occidental's interest is  more speculative.  Wells Fargo relies on *Davis v. Davis*, 734 S.W.2d 707 (Tex. App.—Houston[1st Dist.] 1987, writ refused n.r.e.), in which the court explained that under Texas law, "[o]ne cannot maintain a suit for the enforcement or adjudication of a right in property that he expects to inherit, because he has no present right or interest in the property."  *Id.* at 709–10.  In *Davis*, the father's interest in the trust was based on a contingent right to inherit the assets if one of his children died intestate, making him a "potential beneficiary" with a "possibility of inheritance." *Id.* at 709.  Occidental's future interest is similarly speculative because although the Trust is irrevocable, Occidental will receive Trust assets only if there are remaining assets after all benefits and expenses have been paid out from the Trust.  There is no guarantee that Occidental will receive any payout from the Trust.  The nature of Occidental's interest in the Trust does not appear to meet the requirements for a fiduciary duty owed by Wells Fargo to Occidental.

Wells Fargo additionally argues that that the economic-loss rule precludes recovery in tort for what is actually a contract claim.  The economic-loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract."  *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007).  But  "even if the matter in dispute is the subject of a contract, a party may elect a recovery in tort if the duty breached stands

14

independent from the contractual undertaking, and the alleged damages are not solely the result of a bargained-for contractual benefit." *Shopoff Advisors, LP v. Atrium Circle, GP*, 596 S.W.3d 894, 909 (Tex. App.—San Antonio 2019, no pet.) (citation omitted). To decide whether the economic-loss rule applies, courts "look to the source of the alleged duty and the nature of the claimed injury." *Id.*

Occidental argues that Wells Fargo's duties arise independently from the Trust Agreement, and instead arise from the Texas Trust Code and Texas common law. But Occidental has not alleged a relationship with Wells Fargo beyond its interest in the Trust. Nor has Occidental alleged an injury separate from its breach of contract claim. Occidental argues that it is entitled to pursue alternative theories of relief, and that the economic-loss doctrine is one theory of damage calculation, not liability. The court agrees that it is premature to resolve this argument at the motion to dismiss stage. Occidental is entitled to plead alternative theories for relief, and will face the economic-loss rule if and when it recovers, depending on the basis of recovery. *Hybrid Energy Servs., Ltd. v. Magness Oilfield Brokerage, LLC*, No. 5:16-CV-090-C, 2016 WL 11673473, at *3 (N.D. Tex. Aug. 5, 2016). *See also Sunday Riley Mod. Skin Care, L.L.C. v. Maesa*, No. CIV.A. H-12-1650, 2014 WL 722870, at *5 (S.D. Tex. Feb. 20, 2014) ("The economic loss rule does not prevent parties from pleading multiple theories of liability; it bars them from recovering economic losses caused by a breach of contract on a negligence theory."); Fed. R. Civ. P. 8(d)(3) ("A party may assert as many separate claims as it has, regardless of consistency.").

The motion to dismiss the claim for breach of fiduciary duty is granted. Because amendment would be futile, the dismissal of the claim is with prejudice. The motion to dismiss on the basis of the economic-loss rule is denied.

15

B.      **Occidental's Claim for Breach of the Indemnity Provision**

The Trust states that "[t]he Trustee hereby agrees to indemnify and hold harmless the Company from and against losses, damages, liabilities, claims, costs or expenses (including reasonable attorney's fee) which the Company may reasonably incur by reason of the negligence or willful misconduct of the Trustee." (Docket Entry No. 24-1 at 29).  Wells Fargo argues that this clause does not apply to the claims between the parties to the Trust Agreement.  Occidental did not address the indemnity provision in its response and conceded at oral argument that it does not intend to pursue the indemnity claim.  Occidental's claim for breach of the indemnity agreement is dismissed, with prejudice, because amendment would be futile.

C.      **Wells Fargo's Counterclaim under U.C.C. § 8-401**

Wells Fargo brings a counterclaim against Occidental under U.C.C. § 8-401 based on Equiniti's alleged failure to register the transfer of Occidental shares. Wells Fargo argues that it "submitted requests to Equiniti to sell Occidental shares no later than January 9, 2020." (Docket Entry No. 27 at 20).  Wells Fargo does not cite to the parallel provisions under Texas or Delaware law, but both states have adopted U.C.C. § 8-401.  *See* Tex. Bus. & Com. Code § 8.401; Del. Code Ann. tit. 6, § 8-401.

"To state a claim under Section 8-401, the plaintiff must plausibly allege that the shares were presented to the issuer and that the seven additional conditions outlined in the statute are met." *POSCO Energy Co. v. FuelCell Energy, Inc.*, No. 1:20-CV-7509-MKV, 2021 WL 4224956, at *6 (S.D.N.Y. Sept. 16, 2021) (interpreting the parallel provision under Delaware law). Occidental argues that Wells Fargo has failed to satisfy the pleading requirements because it relies only on the conclusory allegation that the "request to transfer the Occidental shares owned by the Trust met all of the requirements set forth in UCC § 8-401." (Docket Entry No. 35 at 6 (citing

16

Docket Entry No. 27 at 18). Wells Fargo cannot state a claim, Occidental argues, because Wells Fargo's allegations are based exclusively on Equiniti's failure to sell Occidental shares, and § 8-401 applies only to the duty to register a stock after it had been transferred.

Wells Fargo relies on a series of cases for its argument that § 8-401 requires issuers to transfer securities, not just to perform the ministerial act of registering them. The cases Wells Fargo cites are distinguishable because they do not involve a party who failed to initiate any transfer, as is the case here. *See, e.g.*, *Kanton v. U.S. Plastics, Inc.*, 248 F. Supp. 353, 361 (D.N.J. 1965) (the court directed a corporation to register a transfer after the corporation failed to do so because of an alleged adverse claim to that stock).

Additionally, Wells Fargo has not alleged that it presented the securities in registered form to Occidental's agent. "The issuer has a duty to register a transfer of shares that are presented to the issuer in registered form together with a request to register the transfer." *Jing Jing v. Weyland Tech, Inc.*, No. CV 17-446, 2017 WL 2618753, at *3 (D. Del. June 15, 2017) (citing Del. Code Ann. tit. 6, § 8-401). "Perhaps the most obvious requirement that must be satisfied before the issuer's duty to register a transfer arises, is that the certificate be presented." *Id.* (citation omitted). When a plaintiff "has not presented the security in registered form to [the issuer], there is no duty on the issuer to register a transfer." *Id. (citing First Nat'l Bank in Dali. v. Dyes*, 638 S.W.2d 957, 958 (Tex. App. 1982)).

Wells Fargo argues that this is not a pleading issue subject to challenge under Rule 12(b)(6). Wells Fargo argues that because the transactions did not involve physical certificates, all Wells Fargo needed to do was make a request for a transfer, rather than present anything. Wells Fargo does not provide support for this lower standard, but even if it did, it has not alleged that it requested registration, so the pleading still falls short. Wells Fargo argues that it satisfied the

registration request by submitting "a stock transfer request to Equiniti in the form of medallion-stamped directions to sell on January 8 and 9, 2020." (Docket Entry No. 34 at 14). But this still does not address the clear requirement of § 8-401 to present a qualifying instruction to register the stock. Because Wells Fargo failed to present a qualifying instruction to register the stock, it has still failed to meet the requirements.

At oral argument, the parties disputed whether *Campbell v. Liberty Transfer Co.,* No. CV-02-3084, 2006 WL 3751529, at *1 (E.D.N.Y. Dec. 19, 2006), supports Wells Fargo's standing to assert this counterclaim as a nontransferee. In *Campbell*, the court explained, "§ 8-401 obligates an issuer, or its transfer agent, to take the necessary steps to record a sale of its stock when the seven preconditions in the statute have been satisfied. The failure to perform that duty may cause harm to a transferee or a transferor and either, depending on the circumstances, may seek damages for a statutory violation." *Id.* at 10. But the issue here is that the prerequisite transfer was never made, so regardless of its status as transferor, transferee, or prospective transferor, Wells Fargo cannot argue that it has been harmed by a failure to register a transfer that had not occurred.

Wells Fargo has failed to state a claim under § 8-401. The motion to dismiss the counterclaim is granted, with prejudice, because amendment would be futile.

## IV. Conclusion

Wells Fargo's motion to dismiss the breach of fiduciary duty and indemnity claims, (Docket Entry No. 24), is granted. Occidental's motion to dismiss the counterclaim, (Docket Entry No. 29), is also granted. The parties have made clear that much work remains to be done before

18

this case can be framed for ultimate resolution.  The next step is to define the most reliable, careful, and efficient way to get to that point.

SIGNED on November 30, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

# **TAB 7**

United States District Court
Southern District of Texas

**ENTERED**

June 21, 2022

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

OCCIDENTAL PETROLEUM CORP., §
§
Plaintiff, §
§
VS. § CIVIL ACTION NO. H-21-1126
§
WELLS FARGO BANK, N.A., §
§
Defendant. §

**MEMORANDUM AND ORDER**

This case involves a delay in the sale of stock in late 2019 and early 2020. The stock price had dropped between the dates the shares should have been sold and the dates they were sold. Occidental Petroleum alleges that Wells Fargo, which placed the trades on Occidental's behalf, should pay the difference.

Wells Fargo is the successor bank holding the money that Occidental's predecessor placed in a rabbi trust. A rabbi trust is a bank account that holds money set aside for a company to pay high level executives deferred compensation to achieve favorable tax treatment. Occidental sued Wells Fargo for the delay in placing the trades and the resulting price and payment drop, asserting claims for breach of fiduciary duty, breach of contract, and breach of a duty to indemnify. Wells Fargo counterclaimed. The court issued a memorandum opinion and order addressing those claims. (Docket Entry No. 40). The remaining claims between Occidental and Wells Fargo are not yet ripe for resolution.[1]

---

[1] The only remaining claim between Occidental and Wells Fargo was Occidental's claim for breach of contract, but Occidental has sought leave to file a third amended complaint. (Docket Entry No. 74). Wells Fargo added a counterclaim against Occidental for Equiniti's negligence under a vicarious liability theory. (Docket Entry No. 65). Occidental and Wells Fargo filed cross motions for summary judgment, which are not yet ripe. (Docket Entry Nos. 80, 81).

23-20318.2431

Wells Fargo filed a third-party complaint against Equiniti Trust Company, Occidental's transfer agent. (Docket Entry No. 25). Equiniti moved to dismiss for lack of personal jurisdiction. (Docket Entry No. 47). Wells Fargo amended the third-party complaint, and Equiniti moved to dismiss the amended third-party complaint. (Docket Entry Nos. 55, 64).

Based on the pleadings, the motions and responses; the arguments; and the applicable law, the court grants Equiniti's motion to dismiss Wells Fargo's amended third-party complaint for lack of personal jurisdiction. (Docket Entry No. 64). The reasons are set out below.

## I.    Background[2]

Anadarko Petroleum Corporation entered into a Benefits Trust Agreement with Wachovia Bank of North Carolina, N.A., in May 1995, for the benefit of certain highly compensated Anadarko employees. (Docket Entry No. 55 at 3). Anadarko was headquartered in Houston, Texas, and the Trust was created and governed under Texas law. (Docket Entry No. 55 at 3). The Trust was established to guarantee payment to these high-level Anadarko employees under deferred compensation plans or other employee benefit arrangements exempt from ERISA. (Docket Entry No. 55 at 4).

Anadarko is now a wholly owned subsidiary of Occidental Petroleum Corporation. (Docket Entry No. 55 at 4). This change in control converted the Anadarko stock in the Trust to Occidental stock. (Docket Entry No. 14 at ¶ 15). Wells Fargo, which is organized as a national

---

[2]  The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts," if it decides a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). The court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

bank under the laws of the United States, is the legal successor to Wachovia Bank and has its principal place of business in South Dakota.  (Docket Entry No. 55 at 1, 4).

In December 2015, Occidental retained Wells Fargo as its transfer agent under a Transfer Agent Services Agreement.  (Docket Entry No. 55 at 4; Docket Entry No. 55-2).  A transfer agent acts as "a liaison between a company's registrar and investors, and perform[s] tasks such as maintaining investors' financial records and account balances, recording transactions, cancelling and issuing certificates, transferring securities, and executing securities transactions for holders of a client company's stock."  (Docket Entry No. 55 at 18).

Wells Fargo sold its transfer agent line of business to Equiniti Group, plc, in July 2017.  (Docket Entry No. 55 at 5).  Equiniti took over Equiniti Group, plc's obligations to Wells Fargo in February 2018.  (Docket Entry No. 55 at 6).  Equiniti is a limited trust company organized under the laws of New York, with its principal place of business in New York.  (Docket Entry No. 55 at 2).  Equiniti is registered and qualified to do business in Texas.  (Docket Entry No. 55 at 2).  As part of Equiniti's purchase of the transfer agent business, Equiniti agreed to assume Wells Fargo's obligations to Occidental.  (Docket Entry No. 55 at 5).  Occidental could have terminated the relationship with Equiniti but did not do so.  (Docket Entry No. 55 at 6).

The Trust held 1,907,100 shares of Occidental common stock after Occidental and Anadarko merged.  (Docket Entry No. 55 at 6).  Wells Fargo alleges that it told Occidental in December 2019 that it intended to sell the Occidental stock and reinvest in other financial instruments.  (Docket Entry No. 55 at 6).  Occidental allegedly recommended that Wells Fargo wait until January 2020 to sell the shares, and to do the sales in five tranches of 381,420 shares each.  (Docket Entry No. 55 at 6).

Wells Fargo explains that securities exist in three different forms:

3

(a) Physical Certificate: The security is registered in the shareholder's name on the issuer's books, and the shareholder receives a hard copy stock certificate representing the shareholder's ownership of the security.

(b) "Street Name" Registration: The security is registered in the name of a brokerage firm on the issuer's books, and the brokerage firm holds the security for the shareholder in book-entry form (meaning there is no physical certificate, but only an entry on the books denoting ownership).

(c) "Direct" Registration: The security is registered in the shareholder's name on the issuer's books, and either the issuer or its transfer agent holds the security for the shareholder in book-entry form.

(Docket Entry No. 55). Wells Fargo alleges that it held some of the Occidental shares in "street name" and others in "direct registration." (Docket Entry No. 55 at 7). Wells Fargo alleges that to execute a trade of the shares held in direct registration, Equiniti, as the transfer agent, needed to transfer the shares to a broker-dealer so the shares could be registered in street name and sold in the open market. (Docket Entry No. 55 at 8).[3]

Wells Fargo alleges that the sale of the Occidental shares should have proceeded by Wells Fargo asking Equiniti to sell the shares held in direct registration under Wells Fargo's name on Occidental's books. Equiniti should have sent a statement of the shares to Wells Fargo and a request to its brokerage firm to begin the transfer. Equiniti's broker should have then sent a deposit request to Equiniti, which in turn should have sent a deposit confirmation to its broker and

---

[3] The process of selling direct registration shares starts with the shareholder telling the transfer agent that it wants to sell the shares. (Docket Entry No. 55 at 8). The transfer agent then contacts a brokerage firm to begin transferring the registration on the books of company from the name of the shareholder into the street name. (Docket Entry No. 55 at 8). The street name is "'the nominee name' used by the central clearinghouse to allow the shares to be deposited with the clearinghouse and held in a brokerage account." (Docket Entry No. 55 at 8). The brokerage firm requests that the transfer agent deposit the direct registration shares with the central clearinghouse. (Docket Entry No. 55 at 8). The transfer agent transfers the shares from the name of the shareholder to the street name. (Docket Entry No. 55 at 8). The broker then sells the shares on the open market and forwards the proceeds to the transfer agent. (Docket Entry No. 55 at 8). The transaction concludes when the transfer agent sends the sale proceeds back to the original shareholder. (Docket Entry No. 55 at 9).

simultaneously changed the registration on the Occidental books from Wells Fargo to the nominee name, Cede & Co. Equiniti's broker would then sell the shares out of Equiniti's brokerage account and send the sales proceeds to Equiniti, which would disburse the proceeds to the Trust. (Docket Entry No. 55 at 9–10).

Wells Fargo alleges that because the first tranche of shares was held in street name, Equiniti's involvement was not required for the sale. (Docket Entry No. 55 at 10). The first tranche was sold as planned on January 6, 2020. (Docket Entry No. 55 at 10). Of the second tranche, 352,080 shares were in street name and were sold by Wells Fargo on January 7, 2020. (Docket Entry No. 55 at 10). Wells Fargo could not sell the remaining 29,340 shares directly into the market because they were held in direct registration. (Docket Entry No. 55 at 10). Equiniti was required to transfer the direct registration shares on the Occidental books to the street name and to the broker-dealer so they could be sold in the open market. (Docket Entry No. 55 at 10).

On January 7, 2020, a Wells Fargo representative called an Equiniti representative to confirm the transfer process for the direct registration shares. (Docket Entry No. 55 at 11). Equiniti instructed Wells Fargo to complete a direct registration Transaction Request and send it back to Equiniti. (Docket Entry No. 55 at 11). Wells Fargo submitted the Transaction Request to Equiniti on the same day, "instructing Equiniti to sell the remaining 29,340 shares in what Wells Fargo had planned to be the balance of the second tranche." (Docket Entry No. 55 at 11). Wells Fargo alleges that Equiniti first confirmed the Transaction Request on January 7, 2020, but on January 8, 2020, Wells Fargo learned that Equiniti had rejected the Transaction Request. (Docket Entry No. 55 at 11). Wells Fargo resubmitted the Transaction Request on January 8, 2020, and on January 9, 2020, Wells Fargo sent another Transaction Request to Equiniti to sell the remaining three tranches of Occidental stock. (Docket Entry No. 55 at 11). Wells Fargo alleges that it used

5

the Transaction Request forms Equiniti provided and filled each of them out the same way. (Docket Entry No. 55 at 12). Wells Fargo alleges that Equiniti transferred the remaining 29,340 shares of the second tranche on January 13, 2020, to street name shares, and then sold the shares. (Docket Entry No. 55 at 11). That same day, Equiniti informed Wells Fargo that it could expect to receive the proceeds of the sale of the Occidental stock from the Trust by January 27, 2020. (Docket Entry No. 55 at 12).

On January 14, 2020, Equiniti sold an additional 29,340 shares, which had been direct registered in Wells Fargo's name. Wells Fargo alleges that this sale was unauthorized and in error because Equiniti had already sold the remaining 29,340 shares from the second tranche. (Docket Entry No. 55 at 12). On January 31, 2020, Wells Fargo told Occidental that Equiniti had not completed the requested transfers and sales and that Wells Fargo was having difficulty communicating with Equiniti. (Docket Entry No. 55 at 13). Occidental did not respond. (Docket Entry No. 55 at 13).

Wells Fargo alleges that between January 31, 2020, and February 14, 2020, Wells Fargo monitored the status of the sales and attempted to obtain information from Equiniti. (Docket Entry No. 55 at 13). On February 14, 2020, Wells Fargo learned that Equiniti had failed to complete the sales in January. (Docket Entry No. 55 at 13). Wells Fargo learned that Equiniti had sent a written request by U.S. mail to Wells Fargo in January 2020, asking Wells Fargo to confirm the number of shares to be sold. (Docket Entry No. 55 at 13). Wells Fargo alleges that this information was "unambiguously" written on the Transaction Requests, that Equiniti knew this request would not arrive at Wells Fargo in less than 10 days, and that Equiniti did not use any other means—such as by phone, fax, email, or overnight carrier—to notify Wells Fargo that it had not sold the remaining

stock.  (Docket Entry No. 55 at 13).  Wells Fargo finally received the written request to confirm the number of shares on February 16, 2020.  (Docket Entry No. 55 at 14).

Wells Fargo alleges that it immediately started filling out new Transaction Requests, but it needed a new account statement from Equiniti.  (Docket Entry No. 55 at 13–14).  Wells Fargo requested the account statement on February 19, 2020, and Wells Fargo agreed to pay for overnight delivery of the requested statement.  (Docket Entry No. 55 at 14).  On February 20, 2020, Equiniti informed Wells Fargo that it had pulled an incorrect statement and the mailing would be delayed. (Docket Entry No. 55 at 14).  Equiniti sent the requested statement on February 24, 2020, and Wells Fargo received it on February 26, 2020, with obvious errors.  (Docket Entry No. 55 at 14).

As a result of the difficulties with Equiniti, Wells Fargo transferred the remaining stock to the Depository Trust Company.  All remaining stock was transferred to the Depository Trust Company on March 18, 2020, and sold on March 20, 2020.  (Docket Entry No. 55 at 15). Occidental filed this action against Wells Fargo on April 6, 2021.  (Docket Entry No. 55 at 15).

Wells Fargo, in its capacity as Trustee, sued Equiniti, asserting claims for negligence and negligence per se.  Wells Fargo sued in its individual capacity for breach of contract, violations of UCC §§ 8-401 and 8-407, and contribution or reimbursement from Equiniti for Wells Fargo's losses and damages from Occidental's claim against Wells Fargo.  (Docket Entry No. 55 at 15). Equiniti has moved to dismiss based on lack of personal jurisdiction and failure to state a claim.

## II.   Personal Jurisdiction

### A.   The Personal Jurisdiction Standard under Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) governs dismissal for lack of personal jurisdiction.  "Where, as here, the court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, that burden requires only that the

nonmovant make a *prima facie* showing." *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022) (quoting *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013)). "To determine whether the plaintiff has met this burden, the court can consider the assertions in the plaintiff's complaint, as well as the contents of the record at the time of the motion." *Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020) (quotation omitted); *see also Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 95 (5th Cir. 1992) (when resolving a motion to dismiss based on personal jurisdiction, the court may consider "pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof").

## B.    Analysis

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *Frank*, 947 F.3d at 336 (citations omitted). The Texas long-arm statute confers jurisdiction to the limits of federal due process. *Id.* Due process permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has "minimum contacts" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

"'Minimum contacts' can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (citation omitted). General jurisdiction exists over a non-resident defendant when its "affiliations with the State are so 'continuous and systematic' as to

render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). "A company is [] deemed 'at home' when the continuous corporate operations within a state are so substantial and of such a nature as to justify suit on causes of action arising from dealings entirely distinct from those activities—which more than likely is the business's domicile." *Frank*, 947 F.3d at 337 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks and alterations in original omitted)). "[G]enerally, a corporation's 'home' falls in two paradigmatic places: (1) the state of incorporation and (2) the state where it has its principal place of business." *Id.* (citing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)).

Equiniti argues that the court lacks general jurisdiction over it because it is organized under the laws of New York and has its principal place of business in New York. Wells Fargo seems to agree, arguing that it is invoking only "this Court's claim-specific jurisdiction." (Docket Entry No. 69 at 11). The court agrees that Equiniti is not subject to general jurisdiction in this state.

"Specific jurisdiction applies when a non-resident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Panda Brandywine*, 253 F.3d at 868). "The non-resident's purposeful availment must be such that the defendant should reasonably anticipate being haled into court in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (citation and internal quotation marks omitted); *see also Rodeo Time Promotions LLC v. Lawrenceburg Mun. Utilities*, C.A. No. H-20-1740, 2020 WL 7322216, at *2 (S.D. Tex. Dec. 11, 2020).

Equiniti argues that there is no relationship between it and Texas related to Wells Fargo's claims. Courts consider three factors when assessing specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
> (3) whether the exercise of personal jurisdiction is fair and reasonable.

*McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "The minimum contacts inquiry is fact intensive and no one element is decisive." *Id.* The "fair and reasonable" inquiry considers "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* at 760 (citation omitted). "A defendant must have 'fair warning' that his activities may subject him to another state's jurisdiction" and be able to "structure its primary conduct to lessen or avoid exposure to a given State's courts." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021).

Wells Fargo's claims against Equiniti for negligence, breach of contract, and Uniform Commercial Code violations arise out of Equiniti's alleged failed execution of the Transaction Requests that Wells Fargo sent to Equiniti in January 2020. Wells Fargo argues that Equiniti also has an ongoing transfer agent relationship with Occidental under the Transfer Agent Agreement and Occidental was injured as a result of Equiniti's conduct.

Wells Fargo relies on *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021), to argue that the court has personal jurisdiction over Equiniti because Equiniti chose to serve the Texas market and its services have injured residents of the forum—the Trust and Occidental. Wells Fargo concedes that Equiniti does not have an office in Texas and that the

23-20318.2440

wrongful conduct did not occur in Texas. (Docket Entry No. 69 at 13). Wells Fargo argues that Equiniti could have avoided a business relationship with Occidental but it did not, and that Equiniti is registered to do business in Texas. (Docket Entry No. 69 at 13). In *Ford Motor Co.*, the Supreme Court concluded that the forum had specific jurisdiction because "Ford serve[d] a market for a product in the forum State and the product malfunction[ed] there." 141 S. Ct. at 1027. In *Ford Motor Co.*, the Court rejected the argument that for purposes of specific jurisdiction, a plaintiff needs to show a causal link between the injury in the forum and the defendant's contacts with the forum. Ford had "systematically served [the] markets" for the "very vehicles that the plaintiffs alleged malfunctioned and injured them" in those states. *Id.*, at 1028. Although Ford had not sold the specific vehicles that were involved in the crashes at issue in the litigation, the Court concluded that such a causal showing is not necessary. *Id.* at 1029. In doing so, the Court distinguished between the defendants in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980), in which the Court concluded that an Oklahoma court did not have jurisdiction over a New York car dealer who sold a car that later caught fire in Oklahoma. *Ford Motor Co*, 141 S. Ct. at 1027. In contrast, the Court would have had specific jurisdiction over the car's nonresident manufacturer and distributor if their business deliberately extended into Oklahoma, even though the car was not manufactured or sold there. *Id.*

The Fifth Circuit has clarified that "*Ford Motor* does not say . . . that *any* commercial activities in a state support specific jurisdiction over a defendant there. The only relevant activities of the defendant are those that relate to the plaintiff's suit." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 325 (5th Cir. 2021) (quotations omitted). "A state cannot use a defendant's forum contacts—even purposeful ones—to invent jurisdiction over claims that do not relate to or arise from those contacts." *Id.* at 320. And the plaintiff must establish specific jurisdiction for

11

each claim. *McFadin*, 587 F.3d at 759. The court must decide whether Wells Fargo's claims arise from Equiniti's relationship with Texas.

For the breach of contract claim, Wells Fargo alleges that Equiniti breached an implied contract to transfer and sell the shares in five tranches on five different days in January 2020. Wells Fargo alleges that the contract was formed when Equiniti agreed by phone and instructed Wells Fargo to complete the Direct Registration Transaction Request forms that Equiniti had provided. Wells Fargo alleges that it accepted Equiniti's offer by completing the required Transaction Request forms and that Equiniti breached the contract by failing to sell the shares as specified in the Transaction Requests. Wells Fargo is not bringing this claim as a breach of the Transfer Agent Agreement between Occidental and Equiniti. Wells Fargo has not alleged that that the Transfer Agent Agreement between Occidental and Wells Fargo was breached.

When determining whether a court has personal jurisdiction over a breach of contract claim, "only those acts which relate to the formation of the contract and the subsequent breach are relevant," including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Danziger*, 24 F.4th at 500 (quoting *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489 (5th Cir. 2018)). Importantly, "merely contracting with a resident of the forum state does not establish minimum contacts." *Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)).

The Transaction Requests, which Wells Fargo alleges were the basis of its implied contract with Equiniti, show addresses for Wells Fargo in North Carolina and Georgia, and for Equiniti in Minnesota. (Docket Entry No. 64-1 at 2). The requests were signed by a Wells Fargo representative who is based in Georgia, and Equiniti mailed a clarification request to Wells Fargo's North Carolina address. (Docket Entry No. 64-1 at 2–3). Wells Fargo concedes that the wrongful

conduct did not occur in Texas and does not argue that Equiniti communicated with anyone in Texas during the formation or performance of the alleged implied contract. (Docket Entry No. 69 at 13). Wells Fargo is not a Texas resident, and the parties agree that none of the wrongful conduct related to the alleged breach occurred in Texas. Equiniti does not have contacts with Texas through the implied contract with Wells Fargo that relate to Wells Fargo's breach of contract claim.

The Transfer Agent Agreement between Occidental and Equiniti does not change the personal jurisdiction analysis for Wells Fargo's breach of contract claim. The Fifth Circuit has "consistently held that merely contracting with a resident of a forum state does not create minimum contacts sufficient to establish personal jurisdiction over a nonresident defendant." *Blakes v. DynCorp Int'l, L.L.C.*, 732 F. App'x 346, 347 (5th Cir. 2018). "[A] plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas." *Id.* (quoting *Moncrief Oil,* 481 F.3d. at 312). "An exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law." *Danziger*, 24 F.4th at 500 (citation omitted).

In *Danziger*, a Texas resident sued an Ohio-based law firm for fraud, unjust enrichment, tortious interference, and breach of contract. *Id.* The nonresident defendant contacted the Texas resident about a possible business venture, the parties exchanged emails and held conference calls about the matter, and the nonresident allegedly breached the contract outside of Texas. *Id.* at 502. The court explained that the defendant's contacts with Texas were not "strategically advantageous to the defendant . . . suggesting that the defendant had purposefully availed itself of doing business in Texas." *Id.* (quoting *Moncrief Oil*, 481 F.3d at 313). The communications related to the

23-20318.2443

performance of a contract were insufficient to establish jurisdiction. *Id.* The "mere fortuity that one company happens to be a Texas resident . . . is not enough to confer jurisdiction." *Id.* (quoting *Moncrief Oil*, 481 F.3d at 313). The court concluded that personal jurisdiction was lacking because the defendant law firm did not perform, and was not required to perform, any of its obligations in Texas. *Id.*

The Court of Chancery of Delaware recently concluded that minimum contacts did not exist when a transfer agent acted from its New York offices; the contract retaining the transfer services provided for New York law; and the transfer agent did not have property, hold shareholder meetings, or enter into any contract requiring it to perform in Delaware. *Sorenson Impact Found. v. Cont'l Stock Transfer & Tr. Co.*, No. CV 2021-0413-SG, 2022 WL 986322, at *9 (Del. Ch. Apr. 1, 2022). The court explained that the transfer agent's contract with the Delaware corporation was insufficient to confer personal jurisdiction, explaining that "the nature of the contract, being a commonplace commercial contract, embodying New York law, bolsters this conclusion, as the action does not seek to vindicate Delaware-specific law." *Id.*

The same is true with the Transfer Agent Agreement, which is the only alleged contact between Equiniti and Texas. The Agreement did not require performance in Texas and was governed by Delaware law. (Docket Entry No. 55-2 at 5). Wells Fargo does not allege that Equiniti breached the Transfer Agent Agreement between Occidental and Equiniti; the Transfer Agent Agreement is not the basis of Wells Fargo's claims. *Cf. Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 213 (5th Cir. 2016) (finding no personal jurisdiction when the parties entered into a contract with a Texas choice-of-law clause, but that contract was not the subject of the breach of contract claim between the parties). The Transfer Agent Agreement does not show that Equiniti has purposefully availed itself of the benefits of Texas law.

14

Wells Fargo brings its negligence claims on behalf of the Trust, relying on the Trust Agreement provision that provides that Wells Fargo may, with prior written notice to the Company:

> begin, maintain, or defend any litigation reasonably necessary in connection with the administration of the Trust, and the Company shall indemnify the Trustee against all reasonable expenses and liabilities sustained by the Trustee by reason of such litigation unless resulting from the negligence or intentional misconduct of Trustee.

(Docket Entry No. 55-1 at 14).  Wells Fargo brings a claim under the Uniform Commercial Code § 8-401 (codified as Tex. Bus. & Com. Code § 8.401 and Del. Code Ann. tit. 6, § 8-401) and the Uniform Commercial Code § 8-407 against Equiniti, as Occidental's agent.  The court dismissed Wells Fargo's counterclaim against Occidental under § 8-401.  (Docket Entry No. 40).  Both the Uniform Commercial Code claims and the negligence claim arise from the same alleged failure to transfer the securities following Wells Fargo's submission of the Transfer Request to Equiniti in January 2020.  Wells Fargo must show that Equiniti's only contact with Texas—contracting with Occidental—relates to these claims, meaning that Equiniti has more than a "fortuitous connection" with the State.  *See Libersat v. Sundance Energy, Inc.*, 978 F.3d 317, 317 (5th Cir. 2020).[4]

In *Libersat*, a Louisiana lessor sued a Texas lessee for royalty payments under a Texas mineral lease in Louisiana.  *Libersat v. Sundance Energy, Inc.*, 978 F.3d 317, 317 (5th Cir. 2020).  The Fifth Circuit concluded that minimum contacts were lacking even though the defendants had contracted to assume a lease associated with a Louisiana lessor and had sent other communications

---

[4] Wells Fargo points out that Equiniti registered to do business in Texas, but that did not occur until November 2020, months after the alleged conduct occurred.  (Docket Entry No. 71-1 at 1). And Equiniti's registration and qualification to do business in Texas is insufficient on its own to confer jurisdiction.  *See Libersat v. Sundance Energy, Inc.*, 978 F.3d 317, 320 (5th Cir. 2020).

and royalty payments about the lease to the lessor in Louisiana. *Id.* at 321–22. The court explained that "[t]he fact that the landowner to whom royalty checks were due happened to reside in Louisiana is, itself, the type of fortuitous connection to the proposed forum that this court has repeatedly held is not sufficient for specific personal jurisdiction." *Id.* at 322.

Wells Fargo has not pointed to evidence that Equiniti "systematically offered services so related to this particular controversy that [it] is subject to jurisdiction in Texas for these claims." *Hughes v. Bank of Am. Corp.*, No. 3:21-CV-00218-N, 2022 WL 179600, at *4 (N.D. Tex. Jan. 19, 2022). "Merely doing business in a particular market is not enough." *Id.* Although Wells Fargo alleges that Occidental suffered the injury as a result of Equiniti's conduct towards Wells Fargo, "mere injury to a forum resident is not a sufficient connection to the forum." *Sangha*, 882 F.3d at 103 (intentional tort context). Equiniti's single Texas contact through its contract with Occidental is insufficient. Equiniti's obligations under the Transfer Agent Agreement did not give rise to Wells Fargo's negligence and Uniform Commercial Code claims because Wells Fargo does not allege that Equiniti breached its obligations under that Agreement.

## III.   Conclusion

Equiniti's motion to dismiss Wells Fargo's counterclaim for lack of personal jurisdiction, (Docket Entry No. 64), is granted. Equiniti's motion to amend the scheduling and docket control order, (Docket Entry No. 78). is denied as moot.

SIGNED on June 21, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge

16

# **TAB 8**

United States District Court
Southern District of Texas
**ENTERED**
August 18, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| OCCIDENTAL PETROLEUM CORP. | § | |
| AND ANADARKO PETROLEUM CORP., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-21-1126 |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This case involves missteps in executing planned stock sales that delayed the sales long enough for the global pandemic and stock market drop to greatly reduce the selling price. Wells Fargo was the trustee for a so-called rabbi trust that held stock and money to pay deferred compensation to high-level executives at an oil and gas company, with a favorable tax treatment. The company recommended to Wells Fargo that it diversify the trust holdings and sell the company's shares in the trust on specific dates in January 2020. Wells Fargo agreed to follow the recommendation, but it did not follow through. Wells Fargo failed to sell most of the shares until March 2020. By that time, COVID had hit and the stock market had plummeted. The result was a roughly $39 million drop between the share price in January and the price when the shares were sold in March.

The company, Occidental Petroleum, and its predecessor, Anadarko Petroleum, (together, Occidental) sued Wells Fargo for the losses Occidental alleged resulted from the botched sales efforts and the delay in the sales. Motions practice resulted in the dismissal of some of the claims. Occidental's breach of contract claim remains. Wells Fargo has filed a counterclaim against Occidental based on the alleged negligence of Occidental's transfer agent, Equiniti Trust

Company, in selling the shares.  Wells Fargo's counterclaim against Equiniti was dismissed for lack of personal jurisdiction.

Occidental has moved for summary judgment to recover on its claims against Wells Fargo and to have Wells Fargo's counterclaim dismissed.  Wells Fargo has moved for summary judgment on its counterclaim against Occidental and to have Occidental's claims dismissed.  The court heard oral argument on the cross motions.

Based on the pleadings; the motions, responses, and replies; the applicable law; the summary judgment record; and the arguments of able counsel, Occidental's motion for summary judgment, (Docket Entry No. 80), is granted as to its claim that Wells Fargo is liable for breach of contract and that Wells Fargo's counterclaim fails and is dismissed.  Wells Fargo's motion for summary judgment is denied.  (Docket Entry No. 81).  Occidental's motion for leave to amend and the motions to seal are granted.  (Docket Entry Nos. 74, 83, 92).  No later than September 9, 2022, the parties must provide a proposed amended scheduling order, agreed upon if possible, to resolve the remaining issues.

The reasons for these rulings are explained below.

## I.    Factual Background

Anadarko, Occidental's predecessor, established the rabbi trust in May 1995 through a Benefits Trust Agreement between Anadarko, as grantor, and Wachovia Bank of North Carolina, N.A., as Trustee.  (Docket Entry No. 80-4 at 1).  Wells Fargo acquired Wachovia in December 2008 and became the Trustee.  (Docket Entry No. 80-4 at 2).  Each benefit arrangement with a Plan Participant is considered a Plan under the Benefits Trust Agreement.  (Docket Entry No. 80-3 at 5).  The Plan Participants were the current or former highly compensated employees and directors of Anadarko who were participating in a Plan, and the current or former directors,

23-20318.3506

employees, and others who were not participating but who were eligible to receive benefits under a Plan. (Docket Entry No. 80-3 at 8). Beneficiaries were designated under a Plan to receive benefits in the event of the death of a Participant. (Docket Entry No. 80-3 at 7). Federal law required the Plans to remain unfunded pending the payout of benefits, to allow the Plan Participants to defer tax liability.

The Trust Agreement provided that before a change in control, Anadarko could direct the Trustee to acquire, retain, or dispose of investments. (Docket Entry No. 80-3 at 12). Anadarko could also direct the Trustee to return to the company assets in excess of 100 percent of the current aggregate accrued obligations under the Plans. (Docket Entry No. 80-3 at 9). Anadarko's right to direct the Trustee ended following a change in control. (Docket Entry No. 80-3 at 12, 24). When the assets reached more than 125 percent of the current aggregate accrued obligations under the Plans, the successor company could request a disbursement of assets, but the Trustee was not required to make the disbursement. (Docket Entry No. 80-3 at 9–10).

Occidental acquired Anadarko in August 2019. This was a change in control under the Trust Agreement. (Docket Entry No. 80-4 at 3). When Occidental acquired Anadarko, the Trust held 6.5 million shares of Anadarko common stock and roughly $30 million in cash from accrued dividends on those shares. (Docket Entry No. 82-4). Upon closing, each share of the Anadarko stock in the Trust converted to the right to receive .2934 shares of Occidental stock and $59 in cash. (Docket Entry No. 80-4 at 2). Following conversion, the Trust held roughly $500 million in assets—1,907,100 shares of Occidental stock, worth about $82 million as of August 31, 2019, and $413 million in cash. (Docket Entry No. 80-4 at 10, 11; Docket Entry No. 82-5 at 3).

The Trust account was considered a "Top-50" relationship for Wells Fargo. (Docket Entry No. 80-7). Wells Fargo's Institutional Retirement and Trust division assigned a three-person team

3

of professionals to the Trust account: Monique Etheridge as the relationship manager; Terri Montgomery as the client service associate; and Nikki Tanner as the investment manager. (Docket Entry No. 80-5 at 3; Docket Entry No. 80-7 at 4, Docket Entry No. 80-12 at 3). Etheridge was responsible for coordinating client resources, Montgomery was responsible for the Trust's daily operations, and Tanner was responsible for the Trust's asset management and investment strategy. (Docket Entry No. 80-7 at 5; Docket Entry No. 80-12 at 3).

In October 2019, Tanner concluded that roughly $240 million of the almost $500 million held in the Trust needed to be kept in cash to pay out employee benefits and separation agreements in the near term. (Docket Entry No. 80-7 at 10–11). The Plan owed $185 million in future obligations. Tanner intended that the Trust would keep the remaining $73 million in cash. (Docket Entry No. 80-13).

On October 24, 2019, Tanner presented an investment strategy to Occidental. (Docket Entry No. 80-7 at 11; Docket Entry No. 81-1 at 323). Tanner explained the need to sell Occidental stock because it was contrary to Wells Fargo's investment guidelines to have the Trust assets in a single stock. (Docket Entry No. 80-7 at 9). Occidental agreed. (Docket Entry No. 80-7 at 12). Wells Fargo was aware that the sale could trigger tax liability for Occidental, so Wells Fargo asked for Occidental's input. (Docket Entry No. 80-7 at 12). Tanner first reached out to the Occidental team immediately following the October 24, 2019, presentation. (Docket Entry No. 81-1 at 323). She received no response and emailed again in November 2019. (Docket Entry No. 81-1 at 90, 339). On December 10, 2019, Etheridge sent Megan Bruegger, a legacy Anadarko employee, the following email:

Hi Megan,

This email is a follow up to my voice message.

4

Please let Nikki and [me] know when the team has any additional input regarding the sale of Anadarko stock. If we do not hear from Oxy by 12/17/2019, we will assume that there is no additional input.

(Docket Entry No. 81-1 at 337).

Bruegger forwarded this email to Karen Lippe, who was Occidental's Director of Corporate Accounting and who was involved in the October 2019 discussions, and to Jason Schmitz, who was in the Occidental Treasury Department. (Docket Entry No. 81-1 at 173–75). Occidental's representatives explained that they were concerned that a "volume discount" would result if many shares were sold at once, and that the structure and timing of the sale would disrupt the stock market liquidity. (Docket Entry No. 80-15 at 19; Docket Entry No. 80-17 at 6).

On December 16, 2019, Etheridge emailed Schmitz, Lippe, and Bruegger, as follows:

Hi Everyone,

Nikki and I are checking in. We have not received a response regarding the Oxy team conducting an internal meeting to discuss the liquidation of Oxy stock. Please provide an update. If we do not receive an update by Wed at 3 PM EST, we will assume there is no additional input and will proceed with the plan that was presented on October 24, 2019.

(Docket Entry No. 96-4 at 2-3).

On December 17, 2019, Schmitz and Jessica Myers from Occidental's Treasury Department spoke with Etheridge and Tanner from Wells Fargo to discuss the liquidation and sale process. (Docket Entry No. 80-7 at 14). On December 17, 2019, Schmitz emailed Tanner the following proposal:

Hi Nikki/Monique –
Treasury would appreciate if Wells could agree to a ratable liquidation plan for Oxy Stock as follows:
Beginning January 6, 2020, sell 381,420 shares each day over the course of the week with a final liquidation on January 10, 2020
1,907,100/5 = 381,420
Please let me know if you have any questions or would like to discuss. Regards, Jason.

5

(Docket Entry No. 80-19).

Tanner wrote back, saying:

Wells Fargo accepts your recommendation for the ratable liquidation plan as follows:

Beginning January 6, 2020, sell 381,420 shares each day over the course of the week with a final liquidation on January 10, 2020.
1,907,100 / 5 = 381,420

(Docket Entry No. 80-32). Schmitz then replied to Tanner, "Hi Nikki – thanks for accepting the recommendation." (Docket Entry No. 81-1 at 352).

Tanner testified that, "[a]s representative for Wells Fargo, I understood what was going to happen" after Wells Fargo accepted Occidental's proposal. (Docket Entry No. 80-7 at 17). Tanner's understanding was to sell the stock in the amounts and on the dates specified. Bruegger testified that Schmitz was not an "authorized signer" who had authority to make binding decisions for the Occidental relating to the Trust. (Docket Entry No. 91-1 at 19). But, as Etheridge testified, "[t]here was a meeting of the minds" between Wells Fargo and Occidental's representatives about the share liquidation. (Docket Entry No. 80-5 at 20). The meeting of the minds was to execute the sale of 381,420 shares each day from January 6 to January 10, with a final liquidation on January 10.

This was the largest trade of common stock that Tanner or any Wells Fargo investment manager had handled, as far as Tanner knew. (Docket Entry No. 80-7 at 19). Neither Tanner or any other Wells Fargo representative told Occidental of Tanner's inexperience, and Tanner did not ask for help or guidance from any more experienced Wells Fargo employees. Tanner copied and pasted the text of the email from Schmitz into her calendar as a reminder, and she prepared a spreadsheet detailing the trade amounts and planned dates. (Docket Entry No. 80-7 at 19).

6

On January 6, 2020, Tanner emailed Wells Fargo's trading desk a five-day order to sell the shares as set out in Schmitz's email.  (Docket Entry No. 82-8; Docket Entry No. 82-9).  Tanner intended that the shares would be sold as agreed.  (Docket Entry No. 80-7 at 20).  On January 6, 2020, Wells Fargo sold a full tranche of 381,420 shares at a price of $44.95 per share.  (Docket Entry No. 80-4 at 3).  On January 7, 2020, Wells Fargo sold only 352,080 shares, instead of the planned 381,420 shares, for a price of $44.75 per share.  (Docket Entry No. 80-4 at 3).  These were all the shares that Wells Fargo held directly in its Depository Trust Company account.  (Docket Entry No. 80-4 at 4).  The remaining Trust shares were held by Wells Fargo's transfer agent, Equiniti, in "book-entry" form, through the Direct Registration System.  (Docket Entry No. 80-22 at 4).  Tanner did not know this fact.

Equiniti is not a brokerage house.  Instead, it provides administrative services, such as maintaining a company's share ownership ledger or paying dividends.  (Docket Entry No. 80-22 at 4).  Equiniti's corporate representative testified that to sell the stock, Wells Fargo should have transferred the shares to its Depository Trust Company account in August 2019.  (Docket Entry No. 80-27 at 15).  Wells Fargo's standard position is to have "[a]ll the assets that are held on [its] system of record that are eligible to be there" in its Depository Trust Company account.  (Docket Entry No. 80-22 at 5).  "Industry standard is brokers and banks pull free shares if they are DRS eligible at DTC as soon as they are available into the Depository Trust Company and do not leave it in a registered form."  (Docket Entry No. 80-27 at 15).  Wells Fargo had not followed its own standard position.

On August 20, 2019, Equiniti notified Wells Fargo that "[y]our shares of Occidental common stock that you received as Merger Consideration are now being held in book-entry form by EQ Shareowner Services."  (Docket Entry No. 82-11; Docket Entry No. 82-12).  Wells Fargo

23-20318.3511

did not move the shares to the Depository Trust Company before the attempted trades in January 2020. Despite Tanner's position at Wells Fargo and her responsibility for executing the Occidental stock sales for Wells Fargo as Trustee, Tanner did not know that Wells Fargo did not have control over the shares or that Equiniti could not guarantee that the shares would be sold on a specific date. (Docket Entry No. 80-7 at 21; Docket Entry No. 82-13). Tanner did not learn that Equiniti had control until the attempted liquidation on January 7, 2020. (Docket Entry No. 80-7 at 21). Etheridge testified that she did know that Equiniti held these shares, but she admitted that she "totally forgot" that fact when the time came to liquidate them. (Docket Entry No. 80-5 at 27). She did not tell Tanner or another Wells Fargo employee. (Docket Entry No. 80-5 at 27).

Tanner testified that she did not know what the stock's registration coding meant, and she was not trained on the significance of whether stock is held in the Depository Trust Company by a broker or in the Direct Registration position by a transfer agent. (Docket Entry No. 80-7 at 21). Etheridge did not think that it was part of her job to confirm the location of the shares before the sale. (Docket Entry No. 80-5 at 27). Another Wells Fargo supervisor, Tonya Inscore, testified that it was Tanner's responsibility to learn all she could about the account she was going to be managing. (Docket Entry No. 80-28 at 8). Tanner admittedly had not learned facts critical to executing the sales on the timetable Wells Fargo had agreed to follow.

On January 7, 2020, Inscore directed Tanner to sell the shares through a transfer agent. Inscore explained that the remaining shares "are held at the transfer agent. You have to instruct them to sell the shares. . . . [T]he shares were always with a transfer agent." (Docket Entry No. 80-23 at 4–5).

Tanner tried to contact Equiniti on January 7, 2020, but her efforts fell short. She first called the toll-free general customer service line, instead of directly calling the Equiniti

representatives who were assigned to the Occidental account.  (Docket Entry No. 80-49).  She was told that it could take five business days to complete a sale and that Equiniti could not do same-day sales or guarantee any specific liquidation schedule.  (Docket Entry No. 80-49).  Tanner then faxed Equiniti an instruction to sell 29,340 shares to complete selling that day's tranche of 381,420 shares.  (Docket Entry No. 80-31).

Tanner called the customer service line again on January 8, 2020, again bypassing the Equiniti representatives assigned to the account.  Tanner was told that her Transaction Request was "still active, so it's still being processed . . . but it looks like it might not be accepted" because of a missing notarization.  (Docket Entry No. 80-55).  Equiniti reviewed the request again and sold the 29,340 shares.  (Docket Entry No. 80-27 at 7–8).  Equiniti did not tell Tanner that the first request had been accepted, and neither Tanner nor anyone else at Wells Fargo made any effort to confirm the status of the Transaction Request.  Instead, without checking, Wells Fargo sent a second Transaction Request to Equiniti to sell 29,340 shares.  (Docket Entry No. 80-7 at 27; Docket Entry No. 82-18).  Equiniti sold another 29,340 shares on January 10, 2020.  (Docket Entry No. 80-4 at 4).

Tanner emailed Montgomery and Etheridge on January 8, stating: "I need to sell all shares."  (Docket Entry No. 82-26 at 3).  In another January 9 submission, Wells Fargo grouped together three identical Transaction Requests for 381,420 shares—1,144,260 shares in total—to complete the liquidation.  (Docket Entry No. 82-21).  But because Equiniti had already processed two orders to sell 29,340 shares, only 1,114,920 shares remained, so Equiniti rejected the three Transaction Requests.  (Docket Entry No. 80-7 at 33).  On January 9, 2020, Tanner emailed Montgomery and Etheridge again, stating:  "I know at this point we have no control over how and when the shares are sold but I thought it would be worthwhile to try."  (Docket Entry No. 82-26 at

9

23-20318.3513

3).  Equiniti issued checks to Wells Fargo that reflected the proceeds from the two duplicate sales.  Neither Tanner nor anyone else at Wells Fargo noticed that Equiniti had fulfilled the initial sales order twice.  (Docket Entry No. 80-12 at 8; Docket Entry No. 80-7 at 32).

Equiniti mailed a letter to Wells Fargo's address of record on January 16, 2020, explaining that multiple requests have been received" and asked Wells Fargo to "[p]lease clarify the total number of shares you would like to sell."  (Docket Entry No. 82-25 at 1).  The letter was left unopened on Terri Montgomery's desk at Wells Fargo for a month.  (Docket Entry No. 80-12 at 7).  No one at Wells Fargo followed up until Tanner finally called Equiniti on February 14, 2020.  At that point, Tanner still did not know that the shares had not been sold. (Docket Entry No. 80-57 at 8).  Tanner testified that:

> [w]e did not know that [Equiniti had rejected the sale].…So I put in the request and the check went to Winston-Salem and I received notice, 'Hey, these two checks came in and they've been deposited,' but no one told me this one had been rejected. ... I'm concerned that – that – and it has nothing to do with you. I'm just concerned that on our side that no one on the team raised the hand to say, 'Hey, this got rejected. Do we need to re-send that?'…. If I hadn't put this call in, I don't think anyone would have known.

(Docket Entry No. 80-57 at 8–10).  On February 18, 2020, Wells Fargo finally found the unopened letter from Equiniti asking for clarification in a stack of apparently ignored mail on Montgomery's desk.  (Docket Entry No. 80-7 at 37).

The Wells Fargo Trust service team did not know that it could transfer shares from Equiniti to the Depository Trust Company.  Tanner testified that she believed the trading was "out of Wells Fargo's hands because now we are behold[en] to this form that we have to overnight to Equiniti." (Docket Entry No. 80-7 at 29).  Tanner prepared a new Transaction Request letter on February 18, 2020, asking Equiniti to sell all of the remaining shares.  But Inscore, a Wells Fargo supervisor, refused to approve the letter without first receiving an updated account statement from Equiniti

23-20318.3514

showing the January sales.  (Docket Entry No. 80-7 at 37–38; Docket Entry No. 80-28 at 10).  This caused further delay.  (Docket Entry No. 80-7 at 38).

On February 26, 2020, Occidental and Wells Fargo held a quarterly investment review meeting and discussed the delayed sales.  (Docket Entry No. 80-7 at 38).  Occidental arranged a call with Equiniti and Wells Fargo, and Equiniti recommended that Wells Fargo transfer the shares to the Depository Trust Company and sell them.  (Docket Entry No. 80-46 at 5; Docket Entry No. 80-7 at 38–39).  Tanner emailed internally to confirm that this was possible.  (Docket Entry No. 80-7 at 38–39).  On March 9, 2020, Tanner emailed that she needed help to make Wells Fargo the registered custodian for the remaining shares.  (Docket Entry No. 82-29 at 7).  On March 16, 2020, Tanner emailed her colleagues suggesting that they should revisit the liquidation plan that Wells Fargo had agreed to implement, given Wells Fargo's delay in selling the shares and the ensuing market downturn.  (Docket Entry No. 82-31 at 3).  On March 17, 2020, Wells Fargo submitted the instructions to have the shares transferred to its Depository Trust Account to be sold.  (Docket Entry No. 82-30).  On March 18, 2020, the shares were transferred.  (Docket Entry No. 82-30).  Therese Brown, the Wells Fargo employee who carried out the transfer, testified that it was an "easy," "straightforward," "familiar," and "standard DRS transfer."  (Docket Entry No. 80-22 at 8–10).  On March 20, 2020, Wells Fargo sold the remaining 1,114,920 shares at $9.98 per share in a block sale.  (Docket Entry No. 80-4).

The market improved in 2020, and the value of the reinvested assets in the Trust grew throughout the rest of the year.  The Trust made all benefits payments to Plan Participants in 2020, and the value of the assets in the Trust on December 31, 2020, exceeded 125% of the then current aggregate accrued obligations under the Plans.  (Docket Entry No. 81-1 at 220–23).  The reimbursement claims Occidental made in 2020 were paid.  (Docket Entry No. 81-1 at 222).  In

11

April 2021, shortly after this lawsuit was filed, Wells Fargo transferred $23,696,213.01 to Occidental as a discretionary disbursement of excess assets. (Docket Entry No. 80-4 at 4).

## II.     The Motion for Leave to Amend

Occidental and Anadarko seek leave to file a third amended complaint to clarify that Anadarko is an injured party under the agreements and to allege that Wells Fargo breached the Trust Agreement, in addition to breaching the contract formed in the December 2019 emails in which Wells Fargo agreed to sell the shares on the timetable and in the amounts Occidental had recommended. (Docket Entry No. 74). The second amended complaint alleged that Wells Fargo breached contractual duties owed to both Occidental and Anadarko and added Anadarko as an intervening plaintiff, but it did not consistently refer to Anadarko as an injured party under the agreements. (Docket Entry No. 62).

Wells Fargo argues that the plaintiffs' proposed Third Amended Complaint "introduces an entirely new claim by adding a sentence that alleges that Wells Fargo breached not one contract, as currently pled, but two contracts: 'Wells Fargo's failure to timely sell the Occidental shares also breached the Trust Agreement.'" (Docket Entry No. 98 at 4). Wells Fargo argues that the Third Amended Complaint adds allegations about the breach of sections 1.5 and 5.5 of the Trust Agreement that were not previously pleaded as part of Occidental's and Anadarko's breach of contract claim. Wells Fargo argues that allowing the third amended complaint to proceed would cause prejudice because the parties have already completed extensive discovery and filed dispositive motions, the amendment is a futile attempt to resurrect the previously dismissed claim for breach of fiduciary duty, and there is no good cause for the late amendment.

Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Rule 15 "evinces a bias in favor of granting leave to

23-20318.3516

amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (citations omitted).

"A district court must possess a 'substantial reason' to deny a request for leave to amend, but 'leave

to amend is by no means automatic.'" *Id.* (citation and quotations omitted). "The policy of the

federal rules is to permit liberal amendment to facilitate determination of claims on the merits and

to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy

v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981).

The second amended complaint outlines Wells Fargo's duties under the Benefits Trust

Agreement and alleges breaches of those obligations. The Second Amended Complaint alleges

that:

- At all times, when Wells Fargo accepted an instruction to sell securities, the Trust Agreement and applicable law obligated it to execute that sale timely and at the market price, in accordance with the directions to sell it had received, a service for which it was fully compensated under Section 5.7. The Trust Agreement was amended at various times thereafter, but none of the amendments divested Wells Fargo of its obligation to execute sales instructions it had accepted timely and at the market price.

- **Wells Fargo was also obligated under [the] Trust Agreement Section 5.5 and under applicable law** to execute the trade prudently, competently, and on the dates specified, at the prevailing market prices, so as to ensure that the shares were liquidated as and when Wells Fargo had agreed to liquidate them. **Wells Fargo breached all of these obligations.**

- Wells Fargo's failure to inquire and act swiftly in January to remedy its failure to sell the shares as it had agreed was another breach of the Trustee's duties under the Trust Agreement and a breach of its agreement with Occidental to sell the shares timely and on the dates specified.

- Having agreed and undertaken the obligation to timely sell all of the shares . . . it was Wells Fargo's obligation at law and under the Trust Agreement to ensure it had all the shares in hand and ready to sell as of the date the sales were to begin.

(Docket Entry No. 62 at 5, 7, 10) (emphasis added).

13

Wells Fargo's argument that Occidental failed to allege in the Second Amended Complaint that Wells Fargo breached its obligations under both the Trust Agreement and the December 2019 email contract is unpersuasive. Occidental clearly pleaded both breaches. Indeed, Wells Fargo argued in an earlier motion to dismiss that there were breach of contract claims arising from both the Trust Agreement and the December 2019 emails. "As an initial matter, the Trust Agreement governs the precise subject matter of this dispute, and its text is contrary to the purported 'contract' that Occidental alleges the parties created via an exchange of correspondence." (Docket Entry No. 11 at 10). Wells Fargo did not object at the hearing on the motion to dismiss to the allegations that there were two bases for the breach of contract claim. (Docket Entry No. 80-2 at 47, 55). Wells Fargo did not move to dismiss the breach of contract claim on either basis. The third amended complaint reflects the breach of contract theories that both sides have recognized. Wells Fargo has not shown that it was unable to fully discover the grounds for the breach of contract claims or shown that it would otherwise be prejudiced by the amendment.

Occidental's motion for leave to amend is granted. (Docket Entry No. 74).

## III.    The Motion to Seal

Wells Fargo moves to seal certain materials that contain confidential financial information, consistent with the terms of the parties' agreed protective order. (Docket Entry Nos. 83, 92). Both parties designated discovery materials as confidential under the protective order. There is no opposition to the motion.

Despite the public's "general right to inspect and copy public record," a court may order documents sealed where, on balance, the party's interest in having them sealed outweighs the public's interest in open access to judicial records. *Seals v. Herzing Inc.-New Orleans*, 482 F. App'x 893, 896 (5th Cir. 2012) (the district court did not abuse its discretion by concluding that

14

the parties' agreement to seal the documents and the importance of keeping the materials sealed outweighed the public's interest in the records).  Courts in this circuit have sealed documents to prevent the disclosure of confidential business information.  *See, e.g.*, *Doe v. A Corp.*, 709 F.2d 1043, 1045 (5th Cir. 1983) (noting the district court granted a motion to seal documents "to prevent possible disclosure of confidential information concerning [a company's] affairs"); *Decapolis Grp., LLC v. Mangesh Energy, Ltd.*, No. 3:13-CV-1547-M, 2014 WL 702000, at *2 (N.D. Tex. Feb. 24, 2014) (granting a motion to seal an arbitration award in part to protect sensitive business information such as strategic data).

The parties seek to protect confidential business information and have agreed to the protective order.  The court grants the motions to seal.  (Docket Entry No. 83, 92).

## IV.    The Summary Judgment Standard and Evidence

### A.    The Summary Judgment Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).  "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citations and internal quotation marks omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

23-20318.3519

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).  "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019) (citation and internal quotation marks omitted).  In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

When the parties cross-move for summary judgment, the court must review "each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Mid–Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010) (alteration omitted) (quotation marks omitted).  The moving party bears a heavier burden when seeking summary judgment on a claim or defense on which it would bear the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  In that case, it "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant [summary] judgment in [its] favor." *Id.* (emphasis in original).  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Meecorp Capital Mkts.*, 265 F. App'x 155, 158 (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).  When the nonmoving party raises an affirmative defense, the moving party must first show that there is no genuine issue of material fact as to that defense.  If

16

the moving party meets its initial burden, the nonmoving party must point to "admissible evidence legally sufficient to sustain a finding favorable . . . on each element of that defense." *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997).

### B.     The Summary Judgment Evidence

Occidental submitted the follow evidence in support of the motion for summary judgment and its response to Wells Fargo's motion for summary judgment:

- a monthly invoice dated Oct. 11, 2019, (Docket Entry No. 80-1);

- excerpts from November 5, 2021 Hearing Transcript, (Docket Entry No. 80-2);

- the Benefits Trust Agreement, (Docket Entry No. 80-3);

- a Joint Statement of Stipulated Facts, (Docket Entry No. 80-4);

- excerpts from Deposition of Monique Etheridge, dated May 6, 2022, (Docket Entry No. 82-1; Docket Entry No. 95-7);

- a Trust Agreement Fee Schedule dated Sept. 1, 2019, (Docket Entry No. 80-6);

- excerpts from Deposition of Nikki Tanner, dated May 3, 2022, (Docket Entry No. 80-7; Docket Entry No. 95-10);

- the First Quarter Invoice dated April 7, 2020, (Docket Entry No. 82-2);

- the Second Quarter Invoice dated July 16, 2020, (Docket Entry No. 82-3);

- the July 2019 Trust Statement, (Docket Entry No. 82-4);

- the August 2019 Trust Statement, (Docket Entry No. 82-5);

- excerpts from Deposition of Terri Montgomery, dated April 13, 2022, (Docket Entry No. 80-12);

- the Anadarko Benefits Trust Spreadsheet, (Docket Entry No. 80-13);

- an email from N. Tanner to M. Bruegger, Karen Lippe, and Monica Etheridge, dated Oct. 25, 2019, (Docket Entry No. 82-6);

- excerpts from the deposition of Jason A. Schmitz, dated April 18, 2022, (Docket Entry No. 80-15; Docket Entry No. 95-14);

- excerpts from the deposition of Karen Lippe, dated March 28, 2022, (Docket Entry No. 80-16);

- excerpts from the deposition of Jessica Myers, dated March 30, 2022, (Docket Entry No. 80-17; Docket Entry No. 95-17);

- an OXY Stock Trading Analysis dated Dec. 17, 2019, (Docket Entry No. 80-18);

- an email thread between J. Schmitz and N. Tanner, et al., dated Dec. 19, 2019, (Docket Entry No. 82-7);

- a Liquidation Spreadsheet detailing Jan. 6-10, 2020 stock sales, (Docket Entry No. 82-8);

- a Trade Order dated Jan. 6, 2020, (Docket Entry No. 82-9);

- excerpts from the deposition of Therese A. Brown, dated April 26, 2022, (Docket Entry No. 80-22);

- an email thread between K. Ly and N. Tanner and others dated January 7, 2020, (Docket Entry No. 82-10);

- Wells Fargo's Response to EQ's Interrogatory No. 2 dated May 31, 2022, (Docket Entry No. 80-24);

- an EQ statement dated Aug. 20, 2019, (Docket Entry No. 82-11);

- an email from EQ's A. Elfstrom to T. Inscore and others dated Aug. 21, 2019, (Docket Entry No. 82-12);

- excerpts from the deposition of Kathryn Sevcik, dated April 28, 2022, (Docket Entry No. 80-27);

- excerpts from the deposition of Tonya Inscore, dated May 10, 2022, (Docket Entry No. 80-28);

- a "chat" between N. Tanner and M. Etheridge dated Jan. 7, 2020, (Docket Entry No. 82-13);

- an email thread from T. Inscore to L. Dahle dated August 20, 2019, (Docket Entry No. 82-14);

- a Transaction Request dated Jan. 7, 2020, (Docket Entry No. 82-15);

23-20318.3522

- a transcript of a January 8, 2020 call from N. Tanner to EQ, (Docket Entry No. 80-32);

- an EQ Order Processing Log dated Jan. 8-10, 2020, (Docket Entry No. 82-16);

- an EQ Sale Processing Information dated Jan. 7-14, 2020, (Docket Entry No. 82-17);

- a Transaction Request dated January 9, 2020, (Docket Entry No. 82-18);

- an EQ Sale Processing Information form dated January 9-15, 2020, (Docket Entry No. 82-19);

- an EQ Check to Wells Fargo dated January 10, 2020 sale, payable Jan. 15, (Docket Entry No. 82-20);

- a Transaction Request dated January 9, 2020, (Docket Entry No. 82-21);

- a "Liquidate Oxy" reminder for January 6-10, 2020, created December 19, 2019, (Docket Entry No. 82-22);

- a Jan. 2020 Trust Statement, (Docket Entry No. 82-23);

- a Change of Control Best Practices, (Docket Entry No. 82-24);

- a recording of a February 14, 2020, call from N. Tanner to EQ, (Docket Entry No. 80-42);

- a sale-request rejection letter from EQ to Wells Fargo dated January 16, 2020, (Docket Entry No. 82-25);

- an email thread between N. Tanner and M. Russell, et. al, dated Feb. 18, 2020, (Docket Entry No. 82-26);

- a Transaction Request dated Feb. 18, 2020, (Docket Entry No. 82-27);

- excerpts from the deposition of Elizabeth Hyatt Gooch, dated March 29, 2022, (Docket Entry No. 80-46);

- an email thread between E. Gooch and N. Tanner and others dated February 26, 2020, (Docket Entry No. 82-28);

- an email thread between N. Tanner and M. Russell and others dated March 12, 2020, (Docket Entry No. 82-29);

- a recording of a January 7, 2020 call from Tanner to EQ, (Docket Entry No. 80-49);

- an email thread between T. Brown and N. Tanner and others dated March 18, 2020, (Docket Entry No. 82-30);

- an email thread between N. Tanner and J. Mason dated March 20, 2020, (Docket Entry No. 82-31);

- a transcript of a January 7, 2020, call from Tanner to EQ, (Docket Entry No. 80-52);

- a chat between N. Tanner and M. Etheridge dated March 16, 2020, (Docket Entry No. 82-32);

- a Sale Order from N. Tanner dated March 20, 2020, (Docket Entry No. 82-33);

- a recording of Jan. 8, 2020 call from N. Tanner to EQ, (Docket Entry No. 80-55);

- an EQ Check to Wells Fargo dated January 9, 2020, payable on January 14, (Docket Entry No. 82-34);

- a transcript of a February 14, 2020, call from N. Tanner to EQ, (Docket Entry No. 80-57);

- emails between T. Montgomery and N. Tanner dated February 14, 2020, (Docket Entry No. 82-35);

- emails between N. Tanner and M. Russell and others dated February 28, 2020, (Docket Entry No. 82-36);

- a recording of a March 12, 2020, call from N. Tanner to EQ, (Docket Entry No. 80-60);

- a transcript of a March 12, 2020, call from N. Tanner to EQ, (Docket Entry No. 80-61);

- an email thread between N. Tanner and J. Myers and others, dated February 5, 2020, (Docket Entry No. 80-61);

- an email from M. Etheridge to A. Frazier, dated December 20, 2019, (Docket Entry No. 95-23);

- chat between N. Tanner and M. Etheridge, dated December 19, 2019, (Docket Entry No. 95-24); and

- the plaintiffs' Rule 30(b)(6) Deposition Notice to Wells Fargo, (Docket Entry No. 95-25).

Wells Fargo submitted evidence in support of its motion for summary judgment and in response to Occidental's motion for summary judgment, as follows:

- the joint statement of stipulated facts;

- Wells Fargo's Shareowner Services Transfer Agent Agreement;

- the Purchase and Assumption Agreement;

- the Notice of Change in Control dated August 8, 2019;

- an email exchange dated October 2019;

- an email exchange dated December 17-19, 2019;

- a table of historical stock prices;

- a reversion request dated April 12, 2021;

- a reversion response dated April 21, 2021;

- excerpts from the deposition of Jason Schmitz, dated April 18, 2022;

- excerpts from the deposition of Megan Bruegger, dated February 16, 2022;

- excerpts from the deposition of Jessica Myers, dated March 30, 2022;

- excerpts from the deposition of Nikki Tanner, dated May 3, 2022;

- excerpts from the deposition of Karen Lippe, dated March 28, 2022;

- excerpts from the deposition of Elizabeth Gooch, dated March 29, 2022;

- the Anadarko Petroleum Benefits Trust Agreement

- email correspondence dated July 31 to August 1, 2019;

- email correspondence dated August 8, 2019;

- email correspondence dated October 22, 2019;

- email correspondence dated October 25, 2019;

- email correspondence dated December 10, 2019;

23-20318.3525

- internal Occidental correspondence dated December 12, 2019;

- email correspondence dated December 10-17, 2019;

- email correspondence dated October 25-November 21, 2019;

- email correspondence dated December 10, 2019;

- email correspondence dated December 10-16, 2019;

- email correspondence dated December 10-19, 2019;

- email correspondence dated February 5, 2020;

- email correspondence dated January 31, 2020;

- the First Amendment to the Anadarko Petroleum Corporation Benefits Trust Agreement;

- the Second Amendment to the Anadarko Petroleum Corporation Benefits Trust Agreement;

- email correspondence dated March 26-May 2, 2020;

- email correspondence dated April 6, 2021;

- internal correspondence between Monique Etheridge and Nikki Tanner, dated December 19, 2019;

- excerpts from the deposition of Monique Etheridge;

- excerpts from the deposition of Stephen Eubank;

- excerpts from the deposition of Kathryn Sevcik;

- internal correspondence dated January 15-16, 2020;

- correspondence from Shareholder Communications, dated January 16, 2020;

- Occidental Petroleum corporation transaction requests; and

- a slip-sheet for a January 13, 2020, telephone call.

(Docket Entry No. 81-1; Docket Entry No. 91-1).

22

## V.    The Summary Judgment Motions

Occidental moved for summary judgment on its claims that Wells Fargo breached the Trust Agreement and the contract that was formed through the email exchanges in December 2019. Wells Fargo argues that the facts are undisputed and, as a matter of law, do not show a breach of contact.   Wells Fargo argues in the alternative that there are factual disputes material to determining whether a contract was formed by email in December 2019, whether Wells Fargo breached that contract, and whether Occidental suffered damages.

If the facts are undisputed, a court determines contract formation.  *X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 414 (5th Cir. 2013).  A court also determines what a contract means unless it is ambiguous.  *D.E.W., Inc. v. Local 93, Laborers' Int'l Union*, 957 F.2d 196, 199 (5th Cir. 1992).  The fact that parties may disagree about what a contract requires does not make the contract ambiguous.  *REO Indus., Inc. v. Natural Gas Pipeline Co. of America*, 932 F.2d 447, 453 (5th Cir. 1991).  "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." *Nat'l Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995).  However, if the court finds the contract to be ambiguous, summary judgment is not proper because its interpretation becomes a question of fact for the jury.  *Fireman's Fund Ins. Co. v. Murchison*, 937 F.2d 204, 207 (5th Cir. 1991).  "'The court determines what conduct is required by the parties,' and, to the extent the parties dispute whether or not they have performed that conduct, the court submits that factual dispute to the jury." *X Techs., Inc.*, 719 F.3d at 413–14 (quoting *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied)).

23-20318.3527

Under Texas law, the elements of a breach of contract are (1) existence of a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff suffered damages because of that breach.  *Case Corp. v. Hi-class Bus. Sys. Of Am., Inc.*, 184 S.W.3d 760, 769 (Tex. App.—Dallas 2005, pet. denied).

## A.      The Breach of the Trust Agreement

Occidental argues that the Trust Agreement is a valid contract, under which Wells Fargo agreed to prudently invest the funds held in the Trust, and that Wells Fargo breached this agreement by failing to timely sell the Occidental shares in January 2020.  Occidental points to the provisions requiring that Wells Fargo:

- "invest and reinvest part or all of the Trust Fund in any real or personal property";

- "diversify such investments so as to minimize the risk of large losses unless under the circumstances it is clearly prudent not to do so," (Docket Entry No. 80-3 at § 5.5(a));

- "retain in cash such amounts as the Trustee considers advisable," (Docket Entry No. 80-3 at § 5.5(b));

- "invest and manage trust assets as a prudent investor would" and in so doing, "exercise reasonable care, skill, and caution," (Docket Entry No. 80-3 at § 5.5); TEX. PROP. CODE § 117.004(a);

- "manage, sell, … and otherwise deal with all real and personal property held by the Trustee on such terms and conditions as the Trustee shall decide," (Docket Entry No. 80-3 at § 5.5(c)); and

- "perform all other acts which, in the Trustee's judgment, are appropriate for the proper management, investment, and distribution of the Trust Fund to the extent such duties have not been assigned to others as provided herein;" Docket Entry No. 80-3 at § 5.5(n).

Occidental argues that Wells Fargo recognized that it was at least prudent to sell the Occidental shares to diversify the Trust holdings.  Occidental also argues that Wells Fargo agreed to carry out Occidental's recommended liquidation plan because it was at least prudent to avoid a

23-20318.3528

single huge sale that could depress the market price.  Wells Fargo did not, however, sell the shares when prudence had led to its agreement to do so.  (Docket Entry No. 80-4 at 3–4; Docket Entry No. 80-7 at 20).

Wells Fargo responds that the Trust Agreement did not impose contractual duties but instead imposed only the fiduciary obligations of a Trustee.  Wells Fargo argues that those duties are the general duties of prudent trust management imposed by the Texas Property Code and common law, duties that cannot give rise to a common-law breach of contract claim.

As noted above, Wells Fargo's argument that the Trust Agreement is not a contract is inconsistent with the position it has taken throughout this litigation.  For example, at the hearing on the motions to dismiss, counsel had the following exchange with the court:

| | |
|---|---|
| Counsel: | "Your Honor, there is no fiduciary duty owed to Wells Fargo." |
| The court: | "What is the duty?" |
| Counsel: | "The duty would be the contractual duties that are set forth in the Trust Agreement[.]" |

(Docket Entry No. 80-2 at 5).

Wells Fargo points to cases holding that beneficiaries cannot bring breach of contract claims based on a fiduciary relationship.  *See e.g.*, *Harry & Jeanette Weinberg Found. Inc. v. ANB Inv. Mgt. & Tr. Co.*, No. 97 C 4362, 1997 WL 652342, at *4 (N.D. Ill. Oct. 10, 1997) (a beneficiary could not bring a claim for breach of contract based on a trust agreement because the relationship was governed by the law of fiduciary duties).  This court earlier ruled that Wells Fargo did not owe the plaintiffs fiduciary duties, and that the parties' relationship was governed by the Trust Agreement as a contract.  And even if there is no breach of contract claim for an allegation that a defendant trustee generally breached fiduciary duties, courts allow claims for breach of trust agreements when the alleged breach arises from failing to execute or implement a specific decision, rather than a breach of fiduciary duties generally.  *See, e.g., Thompson ex rel. Thorp*

25

*Family Charitable Remainder Unitrust v. Federico*, 324 F. Supp. 2d 1152, 1167–69 (D. Or. 2004) (a plaintiff could bring a breach of contract claim but not a breach of fiduciary duty claim when the parties had signed an agreement "sharply proscribing the exercise of independent judgment" by the trust manager). Although Wells Fargo had discretion under the Trust Agreement, its discretion was constrained by the duties imposed in that Agreement as well as by its agreement in the email exchange to accept and implement Occidental's recommendation on when to sell certain numbers of shares. Wells Fargo has not pointed to evidence showing genuine factual disputes material to determining that the Trust Agreement was a binding contract between the parties that, in itself and in combination with other documents, imposed specific contractual duties on Wells Fargo.

Wells Fargo argues that there are genuine factual disputes material to determining whether time was of the essence of any contract because Occidental: (1) delayed providing input about the sale for months; (2) Schmitz testified that his concern was the trading volume and liquidity, not the expected market price on a certain date; and (3) Occidental did nothing after learning on January 31, 2020, that the sales had not been completed as Wells Fargo had agreed, until it filed this suit.

Occidental points to the five specific sales dates that were listed in Schmitz's email—January 6 to 10, 2020—and points to the testimony that both Occidental and Wells Fargo fully intended the sales to occur on those dates to "get out as soon as practicable" from the risky Occidental stock concentration in the Trust. (Docket Entry No. 80-16 at 5). Schmitz testified that Occidental was concerned with market liquidity around the holidays and "the thought was that we were looking to the earliest date where liquidity would return to the market." (Docket Entry No. 80-16 at 5). Tanner testified that on January 7, 2022, when she realized that she could not trade

the shares on the planned timetable, she felt time was of the essence.  (Docket Entry No. 80-7 at 26).

Even if Occidental had been relatively indifferent to the specific dates for stock sales before its email recommendation and Wells Fargo's agreement in December 2019, and even if before that agreement Wells Fargo had discretion as to whether and when to sell the shares in the Trust, Wells Fargo *agreed* to use that discretion to make specific sales on five specific dates in January 2020. Wells Fargo communicated that agreement to Occidental.  Wells Fargo has not pointed to any record evidence creating a factual dispute material to determining that the sales amounts and dates were part of Wells Fargo's agreement communicated to Occidental in the December 19, 2019, email.  Wells Fargo breached its agreement to sell the shares on the dates specified.  Even if Wells Fargo's evidence did support an inference that the specific dates in January were immaterial to Occidental—which the record refutes—factual disputes as to whether a breach is material cannot defeat summary judgment on a breach of contract claim.  "[S]ettled Texas law regarding the elements of a contract claim . . . requires a finding of breach, not a finding of material breach." *See Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017). Nor do disputes as to whether Equiniti exacerbated the delay in selling the stock by poor communications between Wells Fargo and Equiniti starting on January 7, 2020, create a factual dispute material to determining that Wells Fargo breached its agreement to sell all the shares in specific increments between January 6 and January 10, 2020.

Wells Fargo also has not pointed to any evidence showing factual disputes material to determining that it breached the agreement to sell the shares in the specified amounts and on the specified dates.  On January 6, 2020, Tanner emailed Wells Fargo's trading desk a five-day order to sell the shares as specified in Schmitz's email.  (Docket Entry No. 82-8; Docket Entry No. 82-

9).  Tanner intended to sell the shares as and when Wells Fargo had agreed to do so.  (Docket Entry No. 80-7 at 20).  Tanner did not know that because of the way Wells Fargo held the shares, it did not have control over them and could not sell them as Tanner had specified in the five-day order.  (Docket Entry No. 7 at 21).  This does not create a factual dispute as to whether Wells Fargo failed to perform as agreed.  It did.

The fact that Wells Fargo had discretion as a Trustee under the Trust Agreement on when and what to sell from the Trust is consistent with the undisputed evidence in the record that Wells Fargo exercised that discretion by committing to sell the stock in specified tranches on specified dates.  Indeed, the record shows that Wells Fargo accepted Occidental's recommendation to execute the sales in this fashion in Wells Fargo's role as a prudent Trustee under the Trust Agreement.  The undisputed evidence shows Wells Fargo decided to diversify Occidental's portfolio and hold only enough cash to meet the Trust obligations under the relevant benefit Plans.  These decisions were made within the scope of Wells Fargo's responsibilities under § 5.5(a) and § 5.5(n) of the Trust Agreement, as well as other duties imposed by law under § 5.5.  "Other duties" includes the "prudent investor" provision under the Texas Property Code §§ 117.001–117.012.  Under § 117.004(a), "[a] trustee shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust."  Wells Fargo agreed to diversify by selling the Occidental stock, and agreed to do so on the dates specified to reduce the risk of selling all the stock at once, and to reduce the risk of extending the sale dates too far into the uncertain future.  Wells Fargo has not shown that there are factual disputes material to determining that it breached because the evidence indisputably shows that Wells Fargo believed it urgently needed to diversify the Trust holdings, recommended that to Occidental, agreed to accept Occidental's recommendation as to when to sell the shares, but failed

to execute the sales as agreed.  Wells Fargo did not reconsider its decision not to sell the shares; through a series of clumsy missteps, it simply failed to do so.  In short, Wells Fargo failed to implement what it agreed to do to prudently manage the Trust, in breach of its obligations under the Trust Agreement.

### B.      The Breach of the Email Contract

Occidental argues that Wells Fargo's failure to sell the shares as it had agreed not only breached its contractual duties under the Trust Agreement, but also breached the contract formed when Wells Fargo agreed to sell the Occidental stock by accepting Schmitz's proposal on December 19, 2019.  Occidental argues that Schmitz offered the liquidation plan by email on December 17, 2019, Wells Fargo accepted that plan on December 19, 2019, there was a meeting of the minds on the terms of the liquidation, the agreement was signed by Tanner electronically, and Wells Fargo followed up the email exchange by preparing to and attempting to carry out the agreement, failing to do so only because of its own missteps.

Etheridge, the relationship manager, testified that "[t]here was a meeting of the minds. I can agree to that." (Docket Entry No. 91-1 at 50).  Wells Fargo responds that when read in context, Etheridge's testimony shows that she did not think that Wells Fargo needed Occidental's input on a proposal to sell the shares in the Trust but instead sought that input as a courtesy, and that Wells Fargo never intended to relinquish the discretion provided under the Trust Agreement. (Docket Entry No. 91-1 at 45).  Wells Fargo points to Bruegger's testimony that Schmitz did not have authority to bind Occidental or Anadarko.  (Docket Entry No. 91-1 at 19).  Wells Fargo then argues that even if Schmitz's email was an offer, Tanner responded to the email that she was accepting it as a "recommendation," which makes her response a rejection and a counteroffer.  Wells Fargo argues that Occidental's subsequent failure to check on the sales or follow up with Wells Fargo

when Occidental became aware of the delay in the sales shows that Occidental did not understand the email exchange as Wells Fargo's binding agreement to sell the specified amounts on the specified dates. The court addresses each of these arguments in turn.

The exchange of emails between Tanner and Schmitz on December 19, 2019, shows an agreement that "[b]eginning January 6, 2020," Wells Fargo would sell "381,420 shares each day over the course of the week with a final liquidation on January 10, 2020." (Docket Entry Nos. 80-19, 80-32). This is unambiguous. "Wells Fargo accepts your recommendation for the ratable liquidation plan[.]" (Docket Entry No. 80-32). The parties' shared understanding is obvious from the fact that Wells Fargo performed in part by selling 733,500 shares on January 6 and 7, 2020, in accordance with the email agreement. "Part performance under an agreement may remove uncertainty and establish that a contract enforceable as a bargain has been formed[.]" *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 240 (Tex. 2016). The fact that the parties used the word "recommendation" does not change that the recommendation was "accepted" and that the parties' performance show their shared belief that they had agreed that Wells Fargo would sell the specified number of shares on specified dates.

The fact that Schmitz did not have signing authority under the Trust does not change the fact or effect of the email agreement. "Actual authority is authority that the principal intentionally conferred on the agent or allowed the agent to believe was conferred." *Matter of Russell*, 941 F.3d 199, 204 (5th Cir. 2019) (quoting *Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 300 (Tex. App.—Austin 2000, pet. denied)). Schmitz testified that he reviewed the liquidation plan with Jamie Casas, Occidental's Vice President and Treasurer, who was an authorized Trust signatory, and that Casas approved the plan. (Docket Entry No. 95-13 at 11, 13). Etheridge and Tanner sent messages to each other on December 19, 2019, acknowledging that Schmitz was not

30

an authorized signer but concluding that they could proceed. Etheridge explained that waiting for a different signature would slow things down and that they needed to keep things moving. (Docket Entry No. 96-10).

Occidental emphasizes that that it is not challenging Schmitz's authority to act on its behalf, and Wells Fargo has not pointed to authority that a contract can be avoided because one party argues that the other party's agent did not have authority, even though that party accepted the agent's authority to perform the acts at issue. Wells Fargo ignored any concerns that it had with Schmitz's authority and moved forward on its agreement to follow Schmitz's recommendation by selling the shares. Wells Fargo cannot now be excused from its failures to perform as agreed by arguing that it does not believe that Schmitz's authority was binding. The undisputed evidence is that Occidental intended Schmitz's recommendation to be binding, and that Wells Fargo intended to accept and implement Schmitz's recommendation.

Wells Fargo again argues that even if the emails did create a contract, there are factual disputes material to determining whether timing was of the essence under this contract and whether Wells Fargo's attempt to perform under the contract was reasonable. There is no evidence supporting an inference that the dates were not a part of the contract after the parties agreed to the dates by email on December 19, 2019. Whether the dates were material is a different question from whether they were a part of the agreement. *Cf. Breof BNK Texas, L.P. v. D.H. Hill Advisors, Inc.*, 370 S.W.3d 58, 63 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (analyzing whether timing was a material term as a fact question). Occidental does not need to show that the dates were material to show that Wells Fargo breached. *See Bartush-Schnitzius Foods Co.*, 518 S.W.3d at 436. And the undisputed evidence is that the dates were material. Occidental wanted the shares sold as soon as the 2019 holiday season ended. Occidental proposed and Wells Fargo agreed to

sell the shares in tranches from January 6, 2020, through January 10, 2020. Wells Fargo understood that agreement and attempted to sell the shares on those dates. Wells Fargo has not shown that there is a factual basis to dispute that those sale dates were a material part of the agreement.

Wells Fargo also argues that the evidence shows that it diligently tried to sell the shares, and that Occidental and Equiniti were responsible for the delays in the sales. But this does not provide a factual basis to dispute that Wells Fargo committed to selling the shares on January 6 through January 10, 2020, and should have taken steps before then to ensure that the transactions would go through—such as finding out where the shares were held and making sure that its employees knew how to execute the trades. Wells Fargo did not do so. The undisputed evidence is that the team Wells Fargo tasked with making the trades and managing this multi-million dollar Trust did not have the knowledge, training, or experience to do so. Wells Fargo's arguments as to Equiniti's alleged negligence following the January 7, 2020, botched sales attempt do not address the undisputed evidence as to Wells Fargo's failure to sell the shares as agreed, before its communications with Equiniti began.[1]

Wells Fargo argues that there was no consideration under the liquidation agreement because the fees Wells Fargo was receiving as Trustee were only for it to continue doing what it was already required to do under the Trust Agreement. Consideration is a "bargained-for" exchange of promises. *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 496 (Tex. 1991). It

---

[1] Wells Fargo argues that there are factual disputes as to Equiniti's negligence in responding to its requests, executing a duplicate transaction request, and providing misleading explanations to Wells Fargo's representatives for the transaction problems in February 2020. These issues are irrelevant to whether Wells Fargo breached its obligations to Occidental. And Wells Fargo has not alleged that Equiniti owed it a duty under Texas law. "It is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability." *Perry v. S.N.,* 973 S.W.2d 301, 304 (Tex. 1998). For this reason, Occidental is entitled to summary judgment on the negligence counterclaim.

23-20318.3536

can be either a benefit to the promisor or a detriment to the promisee. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 841 (Tex. 2000). It can consist of a right, interest, profit, or benefit that accrues to one party, or some forbearance, loss, or responsibility undertaken or incurred by the other party. *Copeland v. Alsobrook,* 3 S.W.3d 598, 606 (Tex. App.—San Antonio 1999, pet. denied). Even an exchange of promises is sufficient consideration in Texas. *Saenz v. Martinez*, No. 04-07-00339-CV, 2008 WL 4809217, at *4 (Tex. App.—San Antonio 2008, no pet.).

In the first quarter of 2020, Occidental paid Wells Fargo more than $140,000 for its investment services as Trustee, plus additional fees and expenses. (Docket Entry No. 82-2). The Trust Agreement did not provide extra payments for specific tasks that Wells Fargo undertook in order to carry out or as part of its duties as Trustee. The Trust Agreement fees are themselves consideration. And, as Occidental argues, Wells Fargo "sought, wanted, and *obtained* Plaintiffs' consent to the time, place, and manner of the liquidation, thus eliminating the risk Wells Fargo faced that [Occidental] might later claim Wells Fargo has chosen an imprudent means or method to conduct the liquidation," which would have been contrary to its duties as Trustee, for which it was paid an annual amount.

Occidental cites *Saenz*, in which the defendant trustee had discretion under a trust agreement to make distributions, and exercised that discretion to agree to pay the plaintiff a specific amount within a specific time. 2008 WL 4809217, at *4. The court explained that the consideration was the benefit from converting "what had been a discretionary distribution by the trustee into a mandatory distribution of income." *Id.* Wells Fargo received the benefit of its agreement to sell the stock in specified tranches in order to prudently manage the Trust assets. It was attempting to fulfill its duties under the Trust Agreement. Occidental also gave up its

33

opportunity to pursue a different plan with the stock, such as by redeeming the stock for equal or fair value. Both parties minimized risk through this agreement. There was sufficient consideration. Occidental has shown that there was a valid contract, it performed by paying Wells Fargo for its services, and Wells Fargo breached.

To the extent that Occidental's or Equiniti's conduct after January 6, 2020, bears on Wells Fargo's affirmative defenses, Occidental has met its burden of showing the absence of factual disputes material to determining that Wells Fargo breached its contract to sell the shares as promised in the email exchange. "If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Duffie v. United States*, 600 F.3d at 371. As the party with the burden on its affirmative defenses at trial, Wells Fargo "must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Id.* Wells Fargo has not recited the elements of its affirmative defenses, nor pointed to evidence supporting its affirmative defenses. "[T]he nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Id.* Among other things, the record shows that Wells Fargo did not know to transfer the shares to its own Depository Trust Company position and sell them from there; that Wells Fargo then compounded its own errors of not knowing how to execute the trades by entering duplicate sell orders and by not checking whether they had been executed before trying to enter a third sell order; that Wells Fargo for some reason sought help from Equiniti by calling the general customer help line instead of the Equiniti personnel specifically assigned to the Wells Fargo account; and that Wells Fargo left ignored and unopened a letter notifying Wells Fargo of problems in its efforts to execute trades. These are among the undisputed facts in the record. Wells Fargo's affirmative

defenses do not provide a basis to deny summary judgment in favor of Occidental on the breach of contract claims. Wells Fargo's efforts to avoid summary judgment in favor of Occidental or to support its own motion for summary judgment by blaming Occidental for steps taken by Equiniti as Occidental's agent fail for lack of any evidentiary or legal support. Wells Fargo has not pointed to factual disputes that would permit the court to deny Occidental's motion for summary judgment or shown that it is entitled to judgment as a matter of law based on the undisputed facts. Wells Fargo's motion for summary judgment is denied.

### C.    Damages

The remaining element of Occidental's breach of contract claims is damages, whether direct or consequential. *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 373 (Tex. 2019). Direct damages often include restoration of "the benefit of a plaintiff's bargain." *Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 186 (Tex. 2022) (citing *Quigley v. Bennett*, 227 S.W.3d 51, 56 (Tex. 2007). Consequential damages compensate the plaintiff for foreseeable losses that were caused by the breach but were not a necessary consequence of that breach. *Id.* (citing *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998)).

"The normal measure of damages in a breach-of-contract case is the benefit-of-the-bargain measure, the purpose of which is to restore the injured party to the economic position it would have been in had the contract been performed." *Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). "The correct standard for assessing loss of benefit of the bargain damages measures the difference between the value as represented and the value as received by the nonbreaching party." *Sacks*, 481 S.W.3d at 247; *see DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 180 (Tex. App.—Fort Worth 2012, no pet.) ("One measure of

direct damages is the 'benefit of the bargain' measure, which utilizes an expectancy theory and evaluates the difference between the value as represented and the value received.").

Wells Fargo argues that Occidental cannot show that it suffered damages because the Trust Agreement provides only for discretionary payments and Wells Fargo had sole discretion over those payments. Wells Fargo additionally argues that the decline in share price between January 6 to 10 and March 2020 was unforeseeable and that the price could just as easily have increased because of the delay in the sales. Wells Fargo also argues that damages must be calculated as the difference between the contract price and the fair market value of the shares at the time of breach. Wells Fargo argues that are no direct damages because the shares had the same price on the date of the alleged agreement and the day that agreement was allegedly breached in January 2020. Any damages suffered after the breach are a consequential, not direct damage.

Occidental argues that it is entitled to damages measured by the difference between the value of the shares in January 2020 and in March 2020, when the shares were finally sold. Wells Fargo made a discretionary payment to Occidental in April 2021 because the Trust was substantially overfunded. Occidental argues that this payment would have been $39.4 million higher if Wells Fargo had not breached its obligations to sell the shares in January 2020. Occidental also argues that the difference in stock price between December 2019 and January 2020 does not address its injury because under the agreement to sell, it would have had cash, not shares, on January 10, 2020. Occidental agrees that Wells Fargo can subtract the cash that the Trust eventually received from the stock sales in March 2020.

The proper method for measuring damages is a question of law. *Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 834 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). In *Miga v. Jensen*, 96 S.W.3d 207 (Tex. 2002), the defendant offered the plaintiff a stock option but refused

36

to honor the agreement when the plaintiff tried to exercise it. *Id.* at 209.  The court explained that the option was a contract to sell the stock at a certain time and price. *Id.* at 215.  "[D]amages for failure to deliver stock, like failure to deliver other marketable goods, are measured precisely as they were 150 years ago: the difference between the value of the goods bargained for and the contract price at the time set for delivery." *Id.* at 216.  The plaintiff in *Miga* "simply did not claim lost profits," and the court explained that its holding would not preclude the award of lost profits in contract disputes involving stock and stock options. *Id.* at 215.

Wells Fargo argues that the *Miga* calculation applies here, and because there is no difference between the price at the time of the parties' December 2019 agreement and the price at the time of the botched stock sales attempts in January 2020, Occidental is not entitled to any damages.  Occidental distinguishes *Miga* because the injury here is from the failed sales of stock, not the delivery of shares.  The court agrees.  "Applying the *Miga* measure of damages makes sense where an option holder's exercise of his right to buy stock was rejected and no delivery of stock occurred." *Yazdani-Beioky*, 550 S.W.3d at 834.  The *Miga* calculation is inapplicable here because Occidental is seeking the difference between the price at the time the stock should have been sold had Wells Fargo properly executed the sales and the price at the time the stock was sold.  Occidental seeks lost profits.

Occidental agrees that the Trustee had no obligation to make interim payments.  But Occidental's damages measure is not only from receiving a smaller cash distribution in April 2021.  The damages measure reflects the loss in value in the assets held in the Trust, assets that were worth $39.4 million less than they would have been had the stock been sold according to the parties' agreement.

37

Occidental has sufficiently shown that it suffered damages to prove Wells Fargo's liability for its breach of contract claim. Occidental did not move for summary judgment as to the calculation of its damages. It reaffirmed this position at the hearing on these motions:

> The court:    If I can interrupt, Ms. Patrick, are you asking the Court to deny Wells Fargo's motion for summary judgment that there are no damages that are recoverable and leave the issue of what damages might be recoverable and in what amount for another day?
>
> Ms. Patrick:    Correct.

As a matter of law, based on the record evidence, Occidental is entitled to summary judgment that Wells Fargo is liable for breaching its contractual duties under the Trust Agreement and the December 2019 email agreement.

## VI.    Conclusion and Order

Occidental's motion for summary judgment, (Docket Entry No. 80), is granted as to liability for the breach of contract claim, and granted as to the dismissal of the Wells Fargo counterclaim. Wells Fargo's motion for summary judgment is denied. (Docket Entry No. 81). The motion for leave to amend and the motions to seal are granted. (Docket Entry Nos. 74, 83, 92).

No later than September 9, 2022, the parties must provide a proposed amended scheduling order, agreed upon if possible, to resolve the remaining issues.

SIGNED on August 18, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

23-20318.3542

# **TAB 9**

United States District Court
Southern District of Texas

**ENTERED**

May 31, 2023

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

OCCIDENTAL PETROLEUM CORP., §
§
Plaintiff, §
§
VS. § CIVIL ACTION NO. H-21-1126
§
WELLS FARGO BANK, N.A., §
§
Defendant. §

**MEMORANDUM AND ORDER**

The Occidental Petroleum Corporation and its predecessor Anadarko Petroleum (together, "Occidental") sued the Trustee of their rabbi trust, Wells Fargo Bank, for failing to sell hundreds of thousands of shares of stock in the trust on specified dates in January 2020. When Wells Fargo finally sold the shares, months later, the price had steeply declined. Occidental sued Wells Fargo for breach of contract. Wells Fargo counterclaimed based on the alleged negligence of Occidental's transfer agent, Equiniti Trust Company, in selling the shares.

In August 2022, this court granted Occidental's motion for summary judgment, (Docket Entry No. 80), and denied Wells Fargo's motion for summary judgment, (Docket Entry No. 81). (Docket Entry No. 116). The court found that "the evidence indisputably show[ed] that Wells Fargo . . . accept[ed] Occidental's recommendation as to when to sell the shares, but failed to execute the sales as agreed. Wells Fargo did not reconsider its decision not to sell the shares; through a series of clumsy missteps, it simply failed to do so." (Docket Entry No. 116 at 28–29). As to Wells Fargo's counterclaim, the court found that "Wells Fargo ha[d] not recited the elements of its affirmative defenses, nor pointed to evidence supporting its affirmative defenses," and accordingly denied summary judgment in Wells Fargo's favor. (Docket Entry No. 116 at 34).

The remaining issue is the measure of damages. Occidental has moved for summary judgment, seeking about $38 million in damages as the amount it would have received had Wells Fargo followed the parties' agreement to sell a specified number of shares on specified days, subtracting the amount it did receive when Wells Fargo finally sold the shares. (Docket Entry No. 122). Wells Fargo calculated Occidental's damages as $9.764 million on the low end and $18.529 million on the high end. (Docket Entry No. 127). Its low-end measure uses a different price per share than Occidental and takes into consideration the effect of reinvestment. (Docket Entry No. 127). The high-end measure uses the same price per share as Occidental and also takes into consideration the effect of reinvestment. (Docket Entry No. 127). Wells Fargo argues that the difference between the proposed measures used to calculate damages presents a factual dispute that precludes summary judgment. (Docket Entry No. 127 at 11–12). Occidental argues that the measure of damages is a legal question.

The court heard oral argument on the summary judgment motion, (Docket Entry No. 137), and requested and received a series of supplemental briefs, (Docket Entry Nos. 142, 143, 146, 147). Based on the pleadings; the motions, responses, and replies; the applicable law; the summary judgment record; and the arguments of able counsel for both parties, Occidental's motion for summary judgment, (Docket Entry No. 122), is granted. The method for calculating damages is a question of law, and the amount that results from applying the appropriate method is a matter of arithmetic.

The court holds that the appropriate method for calculating the damages is the difference between the price of the stock on the dates Occidental and Wells Fargo agreed Wells Fargo would sell and the price on the dates Wells Fargo did sell. Reinvestment should not be taken into account.

2

Using this method, Occidental is entitled as a matter of law to damages in the amount of $38,008,313. The reasons are explained below.

## I.    Factual Background

The factual background is set out detail in the court's earlier summary judgment memorandum and order. (Docket Entry No. 116 at 2–12). As a brief overview, in May 1995, Anadarko, Occidental's predecessor, established a rabbi trust through a Benefits Trust Agreement with Wachovia Bank of North Carolina as the Trustee. (Docket Entry No. 80-4 at 1). Wells Fargo became the Trustee after acquiring Wachovia in December 2008. (Docket Entry No. 80-4 at 2). The Trust Agreement allowed Anadarko to direct the Trustee to acquire, retain, or dispose of investments before a change in control, but Anadarko's right to direct the Trustee ended after a change in control. (Docket Entry No. 80-3 at 12, 24). Occidental acquired Anadarko in August 2019, which was a change in control under the Trust Agreement. (Docket Entry No. 80-4 at 3). After the conversion of Anadarko shares to Occidental shares, the Trust held roughly $500 million in assets. (Docket Entry No. 80-4 at 10, 11); (Docket Entry No. 82-5 at 3).

Wells Fargo considered the Trust account a "Top-50" relationship and assigned a team of professionals to the account. (Docket Entry No. 80-7). In October 2019, the investment manager responsible for the Trust's asset management and investment strategy concluded that about $240 million of the almost $500 million held in the Trust needed to be kept in cash to pay out employee benefits and honor separation agreements in the near term. (Docket Entry No. 80-7 at 10–11). The Plan owed $185 million in future obligations, and Wells Fargo intended the Trust to keep the remaining $73 million in cash. (Docket Entry No. 80-13).

On October 24, 2019, the Wells Fargo investment manager presented an investment strategy to Occidental. The proposed strategy was to sell Occidental stock in compliance with

Wells Fargo's investment guidelines. (Docket Entry No. 80-7 at 12). In December 2019, Occidental expressed concerns about the discount and disruption to its liquidity that could result from the sale of so many shares at once. After back-and-forth discussions, a classic meeting of the minds occurred: Wells Fargo agreed to follow Occidental's recommendation to execute the sale of 381,420 shares each day from January 6, 2020, to January 10, 2020. (Docket Entry No. 80-7 at 17); (Docket Entry No. 80-5 at 20).

So much for a meeting of the minds. On January 7, 2020, Wells Fargo sold only 352,080 shares, the number it held directly in its Depository Trust Company account, instead of the 381,420 shares it had agreed to sell on that date. (Docket Entry No. 80-4 at 3). The remaining Trust shares were held by Wells Fargo's transfer agent, Equiniti, in "book-entry" form through the Direct Registration System. Wells Fargo did not transfer these shares into its Depository Trust Company account before the January 2020 trades. (Docket Entry No. 80-22 at 4). The investment manager responsible for executing the Occidental stock sales for Wells Fargo, Nikki Tanner, apparently did not know that Equiniti had control of the shares. No other Wells Fargo representative told her. (Docket Entry No. 80-7 at 21). Ms. Tanner testified that despite her position at Wells Fargo and her assignment to the Occidental account, she did not know the significance of whether stock is held in the Depository Trust Company by a broker or in the Direct Registration position by a transfer agent. Her Wells Fargo supervisor was similarly uninformed. (Docket Entry No. 80-7); (Docket Entry No. 80-23 at 5–6).

On January 7, 2020, Tonya Inscore, another Wells Fargo supervisor, directed Tanner to instruct the transfer agent to sell the shares. (Docket Entry No. 80-23 at 5–6). Tanner then submitted a request to Equiniti to sell the remaining 29,340 shares that Wells Fargo had agreed to sell on January 7, 2020. Equiniti did so on January 9, 2020. But for some reason, Wells Fargo

4

was not aware of the sale and made a second request to Equiniti to sell the same shares. Equiniti sold an additional 29,340 shares on January 10, 2020.

Tanner also submitted three requests to Equiniti to sell 381,420 shares on January 8, January 9, and January 10. But because Equiniti had sold 29,340 shares on January 9 and another 29,340 shares on January 10, it rejected the transaction request because the numbers did not match up. (Docket Entry No. 80-7 at 33). Equiniti mailed a letter to Wells Fargo's address of record on January 16, 2020, asking for clarification. No one from Wells Fargo followed up with Equiniti until February 14, 2020. After further discussions with Equiniti and Occidental, Wells Fargo requested that the remaining shares be transferred to the Depository Trust Account on March 17, 2020. They were transferred on March 18, 2020. Wells Fargo sold the remaining 1,114,920 shares at $9.98 per share in a block sale on March 20, 2020. (Docket Entry No. 80-4 at 4).

Occidental sued Wells Fargo for breach of contract in April 2021. The parties filed cross motions for summary judgment on liability. (Docket Entry Nos. 80, 81). The court entered summary judgment in favor of Occidental, finding Wells Fargo liable for breaching its agreement to sell certain amounts of shares on certain dates. (Docket Entry No. 116).

In granting summary judgment on liability, the court found that the Trust Agreement between Wells Fargo and Occidental was a valid contract, under which Wells Fargo agreed to sell the funds held in the Trust, and that Wells Fargo breached the December 2019 agreement by failing to timely sell the Occidental shares on the promised dates in January 2020. The court found that the undisputed evidence showed that Wells Fargo decided to diversify Occidental's portfolio and hold only enough cash to meet the Trust obligations under the relevant benefit Plans, consistent with the scope of Wells Fargo's responsibilities under § 5.5(a) and § 5.5(n) of the Trust Agreement, as well as with other duties imposed by law under § 5.5. Wells Fargo agreed to help

Occidental diversify its holdings by selling the Occidental stock and agreed to sell specified amounts on the specified dates. Wells Fargo agreed to follow this timing arrangement to reduce the risk of selling all the stock at once and to reduce the risk of extending the sale dates too far into the uncertain future. Knowing these risks and the agreed plan to reduce these risks, Wells Fargo simply failed to execute the sales when and as specified in the agreed plan. The risks materialized.

The court also found that the parties entered a separate agreement when Wells Fargo accepted Occidental's recommended liquidation plan by email on December 19, 2019. More specifically, the court found that Wells Fargo entered into an agreement that "[b]eginning January 6, 2020," Wells Fargo would sell "381,420 shares each day over the course of the week with a final liquidation on January 10, 2020." (Docket Entry Nos. 80-19, 80-32). The undisputed evidence showed that Wells Fargo intended to accept and implement this agreement. The undisputed evidence also showed that Wells Fargo knew that the dates were material to Occidental, which wanted the shares sold as soon as the 2019 holiday season ended. Wells Fargo agreed to sell the shares in equal tranches from January 6th to January 10th in 2020. It did not do so.

Finally, the court rejected Wells Fargo's affirmative defense, which attempted to shift the blame to Occidental and Equiniti. The court found that Wells Fargo failed to meet its burden to identify "specific evidence in the record and articulate the manner in which that evidence supports [Wells Fargo's] claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Instead, the record provided ample undisputed evidence supporting the conclusion that Wells Fargo breached its agreement with Occidental; that Wells Fargo did not know to transfer the shares to its own Depository Trust Account before January 2020 so that it did not need to order Equiniti to sell the shares; that Wells Fargo then compounded its own error of not knowing how to execute the trades by entering duplicate sell orders and by not checking whether those orders had been executed

6

before trying to enter yet another order; that Wells Fargo for some reason sought help from Equiniti by calling the general customer help line instead of the Equiniti personnel specifically assigned to the Wells Fargo account; and that Wells Fargo left ignored and unopened a letter notifying Wells Fargo of the problems in its efforts to execute the trades.  Wells Fargo's affirmative defense provided no basis to grant summary judgment in Wells Fargo's favor.

The court's prior order decided only liability.  Occidental has now filed a summary judgment motion on damages, which Wells Fargo opposes.  (Docket Entry Nos. 122, 127).

## IV.    The Summary Judgment Standard and Evidence

### A.    The Summary Judgment Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)).  "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the [nonmovant] bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the [nonmovant] the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial.' *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022)

(quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets the Rule 56(c) burden, "the [nonmovant] must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). All reasonable inferences are drawn in the nonmovant's favor, *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022), but a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### B. The Summary Judgment Evidence

Occidental submitted the following evidence in support of the motion for summary judgment:

- The court's memorandum and order dated August 18, 2022, (Docket Entry No. 122-1);

- The expert report of Joseph J. Thomas dated July 18, 2022, (Docket Entry No. 122-2);

- The expert report of Vinita Juneja dated July 18, 2022, and her accompanying affidavit dated September 23, 2023, (Docket Entry No. 122-3);

- The joint statement of stipulated facts, (Docket Entry No. 122-4);

- The quarterly account statement for account 020065900 for the quarter ending on March 31, 2020, (Docket Entry No. 122-5);

- A check from Equinity Trust Co. dated January 9, 2020, (Docket Entry No. 122-6);

- A check from Equinity Trust Co. dated January 10, 2020, (Docket Entry No. 122-7);

- The monthly account statement for account 020065900 for the month ending on April 30, 2020, (Docket Entry No. 122-8);

- Excerpts of the deposition of Wells Fargo's Rule 30(b)(6) representative, Monique Etheridge, dated May 6, 2022, (Docket Entry Nos. 122-9, 142-1); and

- An email dated July 29, 2020, attaching letter from Melissa Hunt at Occidental to Monique Etheridge and Diana S. Dietsch at Wells Fargo, (Docket Entry No. 122-10).

Wells Fargo submitted evidence in response to Occidental's motion for summary judgment, as follows:

- The declaration of Megan McKennon, an attorney for Wells Fargo, which included as exhibits: (A) the October 14, 2022, premotion conference letter, (B) excerpts of the August 4, 2022, hearing, (C) excerpts of the deposition of Jason Schmitz at Occidental, (D) excerpts of the deposition of Nikki Tanner at Wells Fargo and (E) excerpts of the deposition of Jane Mason at Wells Fargo. (Docket Entry No. 127-2);

- The declaration of Rebecca Lindahl, an attorney for Wells Fargo, which included as exhibits: (A) discovery requests, (B) an email correspondence over several days in September 2022, and (C) excerpts of the Jason Schmitz deposition, (Docket Entry No. 127-3);

- The declaration of Nikki Tanner at Wells Fargo, (Docket Entry No. 127-4);

- The declaration and expert report of David Blackwell, (Docket Entry No. 127-5); and

- The declaration, expert report, and rebuttal expert report of Joseph Thomas, (Docket Entry No. 127-6).

## V.    Analysis

The remaining element of Occidental's breach of contract claim is damages.  Undisputed record evidence establishes that Wells Fargo agreed to sell five batches of 381,420 shares on each day beginning January 6 and continuing through January 10, 2020.  Wells Fargo sold 381,420 shares on January 6, but then sold only 352,080 shares on January 7; no shares on January 8; 29,340 shares on January 9; and 29,340 shares on January 10.  The remaining 1,114,920 shares were sold on March 20, 2020.

The dates, number of shares actually sold, the price per share, and the sale proceeds (rounded to the nearest dollar) on the dates Wells Fargo agreed to sell the stock but did not are set out in the first five entries in the chart below.  The last line in the chart shows those same values for the date in March 2020 when Wells Fargo finally sold the remaining shares.

| Date | Number of Shares Actually Sold | Sale Price Per Share | Sale Proceeds |
|---|---|---|---|
| January 6, 2020 | 381,420 | $44.95 | $17,137,914 |
| January 7, 2020 | 352,080 | $44.75 | $15,748,740 |
| January 8, 2020 | 0 | n/a | $0.00 |
| January 9, 2020 | 29,340 | $44.78 | $1,310,257 |
| January 10, 2020 | 29,340 | $46.03 | $1,346,955 |
| March 20, 2020 | 1,114,920 | $9.98 | $11,104,469 |

(Docket Entry No. 122 at 3); (Docket Entry No. 122-4 at 4–5).

The price per share on the dates Wells Fargo had agreed to sell ranged from $44.75 to $46.03.  The price per share on the date Wells Fargo actually sold the remaining shares was $9.98. (Docket Entry No. 122 at 3); (Docket Entry No. 122-4 at 4–5).  The question is what "economic position . . . would [Occidental] have been in had the contract been performed" as agreed?  *Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

Occidental's expert, Dr. Vinita Juneja, answered that question by estimating what the price per share on January 7 to January 10 would have been had the agreed upon sales been performed. Dr. Juneja then calculated the sale proceeds assuming that Wells Fargo had sold 381,420 shares on the dates the parties agreed to.  Using that method, the dates the specific numbers of shares were supposed to have been sold, the number of shares that should have been sold on those dates, the estimated sale price per share, and the estimated sale proceeds if those sales had taken place as the parties had agreed, are summarized in the chart below.

| Date | Number of Shares That Should Have Been Sold As Agreed | Estimated Sale Price Per Share Had the Shares Been Sold As Agreed | Estimated Sale Proceeds Had the Shares Been Sold As Agreed |
|---|---|---|---|
| January 6, 2020 | 381,420 | $44.95 | $17,137,914 |
| January 7, 2020 | 381,420 | $44.74 | $17,060,719 |
| January 8, 2020 | 381,420 | $44.75 | $17,059,746 |
| January 9, 2020 | 381,420 | $44.36 | $16,912,895 |
| January 10, 2020 | 381,420 | $45.21 | $17,236,759 |

11

(Docket Entry No. 122 at 4); (Docket Entry No. 122-3).

Using this method, the sale proceeds should have totaled $85,408,032. (Docket Entry No. 122 at 4); (Docket Entry No. 122-3). Subtracting $46,648,334 (the amount Occidental actually received when Wells Fargo sold the shares) from $85,408,032 (the amount Occidental would have received if Wells Fargo had sold the shares when agreed) equals $38,759,698. Occidental seeks $38,008,313 in damages, which is the difference in the sale proceeds had Wells Fargo sold when and as agreed from the sale proceeds when Wells Fargo did sell, minus the fees, expenses, and interest that each sale involved.

Wells Fargo does not argue that Dr. Juneja was wrong in her estimated volume-weighted average price for each of the days in question or in her arithmetic. (Docket Entry No. 127 at 10–11). Instead, Wells Fargo offers two different methods to calculate damages. (Docket Entry No. 127 at 11). In the first model, Wells Fargo's expert, Mr. Joseph Thomas, valued the share price at $38.70 per share because that was the early January 2020 share price the parties expected in December 2019, when they agreed to sell in early January 2020. (Docket Entry No. 127 at 11). Mr. Thomas estimated the value of the proceeds had Wells Fargo reinvested them between January 6 and March 20, 2020, which was also part of the agreement. (Docket Entry No. 127 at 11). Applying this method, Mr. Thomas calculated Occidental's damages at $9.764 million. (Docket Entry No. 127 at 11).

The second method Wells Fargo proposes begins with Dr. Juneja's estimates for price per share, and then anticipates the loss in proceeds that would have occurred had Wells Fargo reinvested the proceeds between January 6, 2020, and March 20, 2020. (Docket Entry No. 127 at 11). Applying this method, Mr. Thomas calculated Occidental's damages at $18.529 million. (Docket Entry No. 127 at 11).

23-20318.4242

Wells Fargo argues that the disputes over the appropriate method for calculating damages are fact issues that should be tried before a jury and preclude summary judgment. (Docket Entry No. 127 at 6). Occidental argues that the method used to calculate damages is a legal issue, and that the rest is arithmetic.

The court has three issues to decide. First, does a material factual dispute exist and preclude summary judgment? Second, if summary judgment is appropriate, what is the correct method for valuing the price per share? Is it the volume-weighted average price (which is essentially an estimate of the actual price on each of the days in question), or is it the early January 2020 price the parties expected in December 2019 (that is, what the parties expected in December the price per share would be in January)? Third, regardless of the price per share calculation, should the reinvestment value be taken into account?

There is no factual dispute that precludes summary judgment. Wells Fargo does not argue that either Dr. Juneja's arithmetic or her estimates of the price per share using the volume-weighted average price method were inaccurate. To the contrary, the second model Wells Fargo offers relies on Dr. Juneja's estimates. Wells Fargo does not dispute the facts but rather the method for measuring damages that Dr. Juneja used to calculate Occidental's damages. The proper method for measuring damages is a question of law. *Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 834 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). This is a legal issue for the court to decide.

So, what is the proper method for calculating damages in this case? "The normal measure of damages in a breach-of-contract case is the benefit-of-the-bargain measure, the purpose of which is to restore the injured party to the economic position it would have been in had the contract been performed." *Mays*, 203 S.W.3d at 577. "The correct standard for assessing loss of benefit of the bargain damages measures the difference between the value as represented and the value as

13

received by the nonbreaching party." *Sacks v. Hall*, 481 S.W.3d 238, 247 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 180 (Tex. App.—Fort Worth 2012, no pet.) ("One measure of direct damages is the 'benefit of the bargain' measure, which utilizes an expectancy theory and evaluates the difference between the value as represented and the value received.").

Wells Fargo spends much of its brief in opposition to summary judgment arguing that Occidental failed to identify whether the damages it seeks are direct or consequential.  (Docket Entry No. 127 at 16–21).  This argument not only appears to misstate Occidental's brief, but also appears to misunderstand the legal standard that applies.  Direct damages are the amount that the plaintiff would have received as "the benefit of [the] plaintiff's bargain." *Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 186 (Tex. 2022) (citing *Quigley v. Bennett*, 227 S.W.3d 51, 56 (Tex. 2007)).  Consequential damages are the amount that would compensate the plaintiff for foreseeable losses caused by the breach but were not a necessary consequence of, and would not result in every case involving, that breach. *Id.* (citing *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998)).

Wells Fargo argues that the price of the stock from January 6 to January 10, 2020, was unforeseeable, noting that "everyone to address the issue—whether an expert or fact witness (on either side)—agrees that movements in the price of a stock are unpredictable and unforeseeable." (Docket Entry No. 127 at 17).  From that, Wells Fargo concludes that the damages amount was unforeseeable, reasoning that because the damages do not flow from the breach, they are not direct; therefore, the damages must be consequential; and Occidental cannot recover because consequential damages require foreseeability, and the damages here were not foreseeable.

14

This is circular reasoning that incorrectly applies the law. Damages can directly and foreseeably flow from a breach, even if the exact amount cannot be foreseen. Consider the following hypothetical. James enters into an agreement with Betty to sell her gold bracelet. The terms are that the sale must occur on September 1st and the bracelet must be sold for whatever the fair market price of gold is on that date. The fair market price for this bracelet on September 1st is $10,000. But James does not sell the bracelet on September 1st. Instead, he forgets about it until October 1st, when he sells it for the fair market value that day, $8,000. James breached the contract and owes Betty $2,000, the difference between what the bracelet would have sold for on September 1st had James not breached the contract and sold, and what the bracelet actually sold for on October 1st. Those are direct damages.

James could not argue that Betty's damages do not directly flow from the breach because the price of gold fluctuates (and could have even fluctuated to Betty's advantage). That logic would turn a basic contract-law principle on its head. Direct damages are about putting the nonbreaching party in the position it would have been in had the breaching party performed the duties owed, as established by the evidence. Direct damages are not about putting the nonbreaching party in the position it could have been in based on predictions or assumptions about possible future circumstances or events.

Wells Fargo's failure to sell hundreds of thousands of shares of stock on specified dates and then selling the stocks later when the price per share had declined is a textbook example of direct damages. *See* RESTATEMENT (SECOND) OF CONTRACTS § 347 cmt. b (AM. LAW INST. 1981) (noting in its explanation of direct damages that "[i]f defective or partial performance is rendered, the loss in value caused by the breach is equal to the difference between the value that the performance would have had if there had been no breach and the value of such performance as

15

was actually rendered").  As Occidental aptly summarizes, "Wells Fargo challenges Plaintiffs' *entitlement* to damages—an issue already decided—rather than the *amount* of damages needed to restore the benefit of Plaintiffs as determined by the Court."  (Docket Entry No. 130 at 8).

The parties seem to agree that the starting point for calculating damages is figuring out the price per share on the dates the parties agreed to sell the shares, that is, from January 6 to 10, 2020. The parties agree that the next step is multiplying those share prices for each day from January 6 to 10, 2023, by the 381,420 shares that should have been sold on each of those days.  Wells Fargo argues that the share value should be $38.70, the January 2020 price that Wells Fargo argues the parties anticipated in December 2019.  (Docket Entry No. 127 at 11).  Wells Fargo argues that the parties' expectation of what the price per share would be is the correct standard because "the purpose of damages in a case such as this is to fulfill the parties' reasonably foreseeable expectations about the benefits each would receive and would convey at the time they entered into their bargain."  (Docket Entry No. 127 at 16).

Wells Fargo relies primarily on two recent Texas Supreme Court cases to make this point: *Signature Industrial Services, LLC v. International Paper Co.*, 638 S.W.3d 179 (Tex. 2022), and *MSW Corpus Christi Landfill, Ltd. v. Gulley-Hurst, L.L.C.*, No. 21-1021, 2023 WL 2618531 (Tex. Mar. 24, 2023). (Docket Entry No. 127 at 16); (Docket Entry No. 146).  Both cases largely concern consequential damages, and both are easily distinguishable.

In *Signature Industrial*, a construction company entered into an agreement to upgrade equipment for a paper company for $775,000, but the project ended up costing significantly more. 638 S.W.3d at 184.  The construction company sought to recover the additional costs that it incurred (approximately $2.4 million) and sued the paper company when the paper company refused.  *Id.* at 184–85.  The issue in that case did not concern whether the construction company

16

was entitled to the additional costs it incurred while upgrading the paper company's equipment—it was. *Id.* at 186. Instead, the issue was whether the paper company's breach foreseeably led to the construction company's inability to be acquired by another company, an acquisition that could have been worth $42 million. *Id.* at 185–86. The court held that it was not. "It stands to reason that losing business opportunities will often contribute to a decline in a company's market value, but whether this will be the case—and to what extent—depends on many factors typically beyond the reasonable contemplation of the breaching party." *Id.* at 189–90. The loss of an entirely separate contract—that the defendant was not even aware was being negotiated—was too speculative and unforeseeable to support consequential damages. *Id.*

In *MSW*, two companies entered into an agreement, requiring one party to sell an interest in property to the other for $7.5 million if certain conditions did not occur. 2023 WL 2618531, at *1. They did not, and the seller conveyed clear title to the buyer. *Id.* But the buyer did not fully pay for the interest in the property. *Id.* Meanwhile, the interest in the property had appreciated significantly in value, up to $17.735 million. *Id.* The Texas Supreme Court addressed two issues. First, did the seller owe the market value of the interest in the property at the time of the breach or did the seller owe the contract price? *Id.* at *2. Second, was the seller owed consequential damages for the money the seller could have obtained by investing the proceeds received from the sale? *Id.* at *3.

As to the first issue, the Texas Supreme Court held that the appropriate measure of damages was tied to the contract price of the property, not its market value at the time of the breach of the contract. *Id.* at *2–3. The reasoning is particularly helpful:

> The general rule for measuring benefit of the bargain damages is to calculate the difference between what was promised and what was received. Although courts have noted that "[w]hen the breached contract is for real estate, the measure of [the seller's] damages is the difference between the contract price and the property's

17

market value at the time of the breach," *Barry v. Jackson*, 309 S.W.3d 135, 140 (Tex. App.—Austin 2010, no pet.), this formula applies only when the value of the property has remained the same or decreased after the purchaser's breach, leaving the seller unable to receive the expected value of the contract. When the property's market value at the time of breach exceeds the contract price, the correct measure of actual, compensatory, benefit-of-the-bargain damages is the difference between the promised contract price and what the seller received.

Policy and precedent both support this conclusion. The purpose of actual, benefit-of-the-bargain damages is to place the seller "in the same economic position he would have been in had the contract been performed." *Id.* at 140. A party "generally should be awarded neither less nor more than his actual damages." *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952). Permitting a seller to recover more than the contract price would place the seller in a better economic position than had the contract been performed. Worse, this windfall would come at the buyer's expense.

Conversely, calculating benefit-of-the bargain damages as the difference between what the seller expected and what the seller received causally connects the seller's compensation to the buyer's breach. The breach cost the seller the previously agreed-upon contract price, not the property's market value. The seller lost the opportunity to sell the property at market value not because of the buyer's actions, but because the seller decided to contract with the buyer for a lower price.

*Id.* at *2–3 (citations omitted).

The second issue was whether the seller was entitled to consequential damages for the money the seller could have obtained by getting a loan (which it could not do because of the buyer's breach) and investing the loan proceeds. The court held that the seller was not entitled to these damages. *Id.* at *3. "A plaintiff may recover consequential damages only if 'the parties contemplated at the time they made the contract that such damages would be a probable result of the breach.'" *Id.* (quoting reference omitted). Because the seller's inability to invest was too attenuated from the relevant breach, the court held that it was not a foreseeably or probable result of the buyer's breach. *Id.*

Applying *Signature Industrial* and *MSW* to this case backs the conclusion that the correct calculation of damages requires use of the price per share on each day of the breach, and an

18

adjustment for reinvestments is unwarranted because the reinvestment effect is speculative and attenuated from the relevant breach.

*Signature Industrial* and *MSW* held that a plaintiff is entitled to damages in the amount expected under the contract. Here, both Wells Fargo and Occidental expected that the shares would be sold at the market value of the shares was on each day from January 6 to January 10, 2020. The correct measure of damages, accordingly, requires using the price per share on each day from January 6 to January 10, 2020. That's what the parties agreed to. That's what the parties expected. That's what would have happened had the parties' agreement been performed.

Wells Fargo attempts to reframe *Signature Industrial* and *MSW* as supportive of its arguments by taking the word "expect" out of context. Wells Fargo does so by relying on statements such as the following: "calculating benefit of the bargain damages as the difference between what the seller *expected* and what she *received* causally connects the seller's compensation to the buyer's breach. The breach in that case cost the seller the previously agreed-upon contract price, not the property's market value." *MSW*, 2023 WL 2618531 at *2–3 (emphasis added); (Docket Entry No. 146 at 2). Wells Fargo takes this to mean that the price per share should be $38.70 because that is what the parties expected the price per share to be in December 2019, when they entered the agreement. (Docket Entry No. 127 at 11).

But an expectation cannot be stripped from the context of the parties' agreement. The parties did not agree to sell each share for $38.70. The parties agreed that Wells Fargo would sell specified amounts of shares for the market value on each day from January 6 to January 10, 2020. (Think back to the James and Betty hypothetical.). That's what the parties expected. Occidental expected to receive the proceeds from selling the specified amounts of shares at whatever the price was on the dates the shares were sold, when and as specified. The actual price per share on the

19

specified dates when Wells Fargo breached the agreement by failing to sell the specified number of shares on those specified dates is the basis of Occidental's expert's damages calculation: $44.74 per share on January 7, 2020; $44.75 per share on January 8, 2020; $44.36 per share on January 9, 2020; and $45.21 per share on January 10, 2020. (Docket Entry No. 122 at 4); (Docket Entry No. 122-3). Subtracting out additional expenses brings the total damages to $38,008,313.

The final question is whether that total should be reduced to take into account the value of possible reinvestments. Wells Fargo argues that the agreement required Wells Fargo to reinvest the proceeds from the sale. Wells Fargo argues that if it had reinvested the proceeds obtained from finally selling the shares in March 2020, the total amount of the proceeds and the benefit Occidental received would have gone down.

But the record does not establish that the agreement required Wells Fargo to reinvest the proceeds during a specific time period as opposed to keeping the money in cash. As Jason Schmitz, an Occidental representative, testified, although "the proceeds would have been reinvested across a diversified portfolio of assets," "if the trustee . . . decided that they wanted to hold cash, they could have decided to hold cash and chosen the time to reinvest." (Docket Entry No. 127-2 at 60–61). Wells Fargo's only evidence contradicting this point is the declaration of Nikki Tanner, in which she stated that she "never intended to wait until April or May 2020" to reinvest. (Docket Entry No. 127-4 at 4). Although the record supports that the parties had an agreement to reinvest, it does not support a finding that the agreement required reinvestment to occur on specific dates in 2020.

Moreover, whether Wells Fargo would have actually reinvested the proceeds after the planned January 2020 sales (which Wells Fargo failed to execute) is also speculative and not supported by the record. The record shows that Wells Fargo did not reinvest over $80 million of

trust assets.  The record shows at best an attenuated connection between the breach (Wells Fargo's failure to sell the shares in January 2020) and any reinvestments.  In other words, Wells Fargo cannot show that the results of reinvestments not made "would be a probable result of the breach.'" 2023 WL 2618531, at *3 (quoting reference omitted).

Wells Fargo admits as much, stating in its brief in opposition to summary judgment that "the value of the reinvestment portfolio, including assets purchased with the proceeds of the share sales, . . . could not have been foreseeable."  (Docket Entry No. 127 at 12).  Wells Fargo appears to be attempting to avoid liability for the damages amounts on the ground that they were unforeseeable, while also arguing that it should benefit from reinvestments not made, which are even more unforeseeable. *See also* (Docket Entry No. 130 at 13 ("Indeed, [Wells Fargo] made no attempt to account for reinvestment losses when presenting its own alleged damages sought by its counterclaim and third-party claims against Equiniti.").

## V.  Conclusion and Order

Occidental's motion for summary judgment, (Docket Entry No. 122), is granted.  Judgment is entered in the amount of $38,008,313, with prejudgment interest accruing at a rate of 5.5 percent as of January 25, 2021, and postjudgment interest accruing at a rate of 5.15 percent as of the date of this judgment, per annum.  Occidental's motion for attorney's fees and the accompanying affidavits must be filed no later than July 7, 2023.  Wells Fargo must respond no later than August 4, 2023.  Final judgment will be entered separately. *See* FED. R. CIV. P. 54(d)(2), 58(a).

SIGNED on May 31, 2023, at Houston, Texas.

Lee H. Rosenthal
_____
Lee H. Rosenthal
United States District Judge

# **TAB 10**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| OCCIDENTAL PETROLEUM CORP. and ANADARKO PETROLEUM CORP., | § § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. H-21-1126 |
| v. | § § | |
| WELLS FARGO BANK, N.A., | § § | |
| Defendant, Third-Party Plaintiff. | § § | |

**MEMORANDUM AND ORDER**

The plaintiffs, Occidental Petroleum Corp. and Anadarko Petroleum Corp. ("Oxy") sued Wells Fargo Bank, alleging that it failed to follow its agreement to sell stocks on certain dates and in certain amounts. (Docket Entry No. 76). Oxy has now moved to recover the attorneys' fees it incurred in prosecuting its breach of contract claim. (Docket Entry No. 157).

The parties agree that Oxy prevailed on the breach of contract claim and did not prevail on the breach of fiduciary duty claims. (Docket Entry No. 157 at 8; Docket Entry No. 167 at 5). The parties also agree that Oxy successfully defended against Wells Fargo's counterclaim. (Docket Entry No. 167 at 11). After Wells Fargo pointed out problems in Oxy's fee submission—some billing entries were mistakenly submitted for a motion that was not filed and some were for work in an unrelated lawsuit—Oxy reduced its fee request by $7,096.50. (Docket Entry No. 167 at 14). The primary issues raised by Wells Fargo's objections to Oxy's motion for attorneys' fees are that: Oxy did not sufficiently segregate the fees it incurred in its successful breach of contract claims from the fees it incurred in its unsuccessful claims for breach of fiduciary duty and indemnification; Oxy did not sufficiently segregate the fees it incurred from the fees incurred by

Anadarko; Oxy did not sufficiently segregate the fees it incurred against Wells Fargo in its individual capacity from those fees incurred against Wells Fargo in its trustee capacity; and Oxy's claimed fees are excessive and unreasonable, and its billing records overly redacted. (*Id.*). Oxy has replied to the objections. (Docket Entry No. 168).

Based on the motion and exhibits, the objections, and the response, the court grants the motion for fees and overrules the objections. The court awards Oxy $1,497,529.66 in fees. The reasons for the rulings are set out below.

## I.    The Legal Authorities

"[A]ttorney's fees are recoverable only if authorized by statute or by a contract between the parties." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). The Texas Civil Practice and Remedies Code allows for the recovery of attorneys' fees for a litigant who succeeds on a breach of contract claim. Tex. Civ. Prac. & Rem. Code § 38.001(b)(8). "To recover fees under this statute, a litigant must do two things: (1) prevail on a breach of contract claim, and (2) recover damages." *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex. 2009). The party seeking attorneys' fees must segregate recoverable fees from unrecoverable fees. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006).

The calculation of reasonable attorneys' fees is a two-step process. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). First, the court calculates a "lodestar." *Id.* "In determining the appropriate amount of attorney's fees, a district court first must calculate the 'lodestar' by 'multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.'" *Rodney v. Elliott Sec. Sols., L.L.C.*, 853 F. App'x 922, 924 (5th Cir. 2021) (quoting *Migis*, 135 F.3d at 1047). Whether an hourly rate is reasonable

depends on whether that rate is consistent with the "hourly rate in the community for the work at issue." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012).

Second, the court considers whether the circumstances of the case warrant an upward or downward lodestar adjustment. *Migis*, 135 F.3d at 1047. To determine whether "appropriate adjustments to the lodestar are necessary," the court "examine[s] the *Johnson* factors." *Rodney*, 853 F. App'x at 924 (citing *Migis*, 135 F.3d at 1047). The *Johnson* factors are: (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 91–93 (1989). "[T]he most critical factor in determining an attorney's fee award is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "This factor is particularly crucial when plaintiffs only 'prevail' on some of their claims." *Id.* at 434.

## II. Segregation

Wells Fargo objects that Oxy—Occidental and Anadarko—failed to segregate fees based on which was awarded which amount. (Docket Entry No. 167 at 12). Wells Fargo also objects that Oxy failed to segregate fees based on whether they relate to claims against Wells Fargo in its individual or trustee capacity. (*Id.* at 10). Neither objection is persuasive.

Oxy did segregate the fees it incurred in working solely on its unsuccessful claims for breach of fiduciary duty and indemnification. These fees Oxy excluded from its award request.

3

Specifically, the declaration of lead counsel for Oxy, Kathy Patrick, estimated that only 2.3 percent of Oxy's total fees, or $36,000, were incurred in work that related only to the breach of fiduciary duty and indemnification claims. (Docket Entry No. 157-1 ¶ 14). This amount was excluded from the total fee award Oxy sought. (*Id.*). Two factors support Oxy's argument to recover the remaining fees: the number of hours was reasonable in relationship to the complexity of the issues and the number of arguments presented; and the hourly rates were reasonable in relationship to the experience and expertise of counsel.

The record shows that Wells Fargo vigorously defended against Oxy's breach of contract, breach of fiduciary duty, and indemnification claims. Wells Fargo moved to dismiss Oxy's First Amended Complaint, and Oxy responded. (Docket Entry No. 24; Docket Entry No. 30). Wells Fargo also moved for summary judgment on its counterclaim. (Docket Entry No. 81). The court analyzed the arguments in light of the record and the applicable law and determined that Occidental prevailed on its breach of contract claim but did not prevail on the breach of fiduciary duty or indemnification claims. (Docket Entry No. 116). Occidental segregated the work it did before Anadarko intervened and only on the breach of contract claim. (Docket Entry No. 157-1 ¶ 14). The segregation requirement was met.

There is no support presented for Wells Fargo's argument, asserted for the first time here, that its liability depends on whether it is sued in its individual or trustee capacity. (Docket Entry No. 167 at 10). No basis for the distinction is identified. Wells Fargo is the only defendant, and its novel (as in not presented earlier in the case) argument that its liability must be separately analyzed for claims against it individually or as a trustee does not find a footing in the record or the case law.

4

Finally, Wells Fargo argues that Oxy cannot recover fees for defending against Wells Fargo's counterclaim that alleged that Oxy was liable for Equiniti's negligence. (*Id.* at 11). This argument is also unpersuasive. Under Texas law, if a defendant counterclaims and the plaintiff has to overcome the counterclaims to recover on a breach of contract claim, the fees incurred in doing so are also recoverable. *Varner v. Cardenas*, 218 S.W.3d 68, 69–70 (Tex. 2007). Wells Fargo counterclaimed and asserted an affirmative defense against Oxy based on its alleged liability for Equiniti's negligence. (Docket Entry No. 27). Oxy was required to rebut Wells Fargo's counterclaim and affirmative defense in order to prevail on its breach of contract claim. Oxy has presented evidence that the lodestar calculation of the fees incurred in asserting its claim and in opposing Wells Fargo's counterclaim were reasonable in the number of hours and the hourly rates. (Docket Entry No. 157-1 ¶ 12). Wells Fargo's objections to Oxy's motion for attorneys' fees are overruled. Wells Fargo is ordered to pay Oxy (Occidental Petroleum Corp. and Anardarko Petroleum Corp.) the total sum of $1,497,529.66 in attorneys' fees.

Oxy has not moved to recover, and this court does not rule on, post-judgment fees.

SIGNED on August 31, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

5

# TAB 11

# ANADARKO PETROLEUM CORPORATION

## BENEFITS TRUST AGREEMENT

THIS BENEFITS TRUST AGREEMENT ("**Agreement**") was originally entered into on the 15th day of May of 1995, by and between Anadarko Petroleum Corporation, a Delaware corporation (the "**Company**") and Wachovia Bank of North Carolina, N.A., currently Wachovia Bank, National Association, (the "**Trustee**"), as the "Anadarko Petroleum Corporation Executives and Directors Benefits Trust Agreement", and is now hereby amended, restated and renamed as the "Anadarko Petroleum Corporation Benefits Trust Agreement", effective as of November 5, 2008 (the "**Effective Date**").

## W I T N E S S E T H :

WHEREAS, the Company has adopted the nonqualified deferred compensation plans, employment agreements and other arrangements listed in Appendix A to this Agreement and may hereafter adopt, amend and add to Appendix A any additional nonqualified deferred compensation plans, employment agreements or other arrangements that are intended to provide certain benefits to (i) a select group of management or highly compensated employees for purposes of certain exemptions provided under Title I of ERISA (as herein defined) and (ii) directors of the Board (as herein defined) (collectively, the "**Plans**", individually a "**Plan**"); and

WHEREAS, the Company has incurred or expects to incur liability under the terms of the Plans with respect to the individuals and/or their Beneficiaries (as herein defined) who are Participants (as herein defined) in such Plans (including individuals who are no longer employed with the Company but who continue to have a right to receive benefits under a Plan); and

WHEREAS, the Company desires to continue to be the grantor of the Trust (as herein defined) and to contribute assets to the Trust that shall be held therein, subject to the claims of the Company's creditors in the event of the Company's Insolvency (as herein defined) until paid to Participants in such manner and at such times as specified in the Plans; and

WHEREAS, it is the intention of the parties that the Trust shall not affect the status of the Plans as unfunded plans maintained to provide nonqualified deferred compensation for (i) a select group of management or highly compensated employees for purposes of Title I of ERISA and (ii) directors of the Board; and

WHEREAS, the Company has agreed to take steps to assure that the future payment of all amounts due under the Plans will not be improperly withheld in the event that a Change of Control (as herein defined) of the Company should occur; and

WHEREAS, for purposes of assuring that such payments will not be improperly withheld, the Company desires to deposit with the Trustee, subject to the claims of the Company's existing or future general creditors in the event of Insolvency, cash and other

23-20318.120

property contributions for the payment of the fees and expenses of the Trust and benefits due under the Plans;

NOW, THEREFORE, the parties do hereby amend and restate the Agreement under the form of this document, without a gap or lapse in the continuation of the Trust, as follows:

## ARTICLE 1

### ESTABLISHMENT AND COMPANY CONTRIBUTIONS

1.1     **Establishment**.  The Company has deposited, and may make additional deposits, with the Trustee in Trust such cash or other property as it deems appropriate, which shall be held, administered and disposed of by the Trustee as provided in this Agreement.

1.2     **Trust Irrevocable**.  The Trust shall be irrevocable and shall be held for the exclusive purpose of providing benefits under a Plan to Participants and defraying the Trust's expenses in accordance with the provisions of this Trust Agreement.  No part of the income or corpus of the Trust Fund shall be recoverable by the Company, except as provided in Section 4.1.

1.3     **Status of the Trust**.  The Trust is intended to be a grantor trust under Sections 671-677 of the Code, and the Company, as grantor, shall be the "owner" within the meaning of those provisions.  The Company shall file its federal income tax returns in a manner consistent with those provisions of the Code.  The Trust Agreement shall also be construed in a manner consistent with such provisions.  The principal of the Trust, and any earnings thereon, shall continue to be assets of the Company but held separate and apart from other funds of the Company and shall be used exclusively as herein set forth.  Participants shall have no preferred claim on, or any beneficial ownership interest in, the Trust.  Any rights created under any Plan and this Agreement shall be mere unsecured contractual rights of Participants against the Company.  The Trust will be subject to the claims of the Company's general creditors under federal and state law in the event of Insolvency.  All interest and other income earned on the investment of the Trust Fund shall be the property of, and taxable to, the Company.  All taxes on or with respect to the Trust shall be payable by the Company from separate funds and shall not be a charge against the Trust.

1.4     **Company Contributions**.  From time to time in its discretion, the Company shall contribute cash or other property as deemed appropriate by the Company to the Trust to be held, administered and disposed of by the Trustee as provided in this Agreement.  Except as specifically provided in this Agreement, neither the Trustee nor any Participant shall have any right to compel the Company to make contributions to the Trust.  Once contributed to the Trust, the assets shall immediately become subject to the terms and provisions of this Agreement.

1.5     **Trustee's Acceptance**.  The Trustee accepts its duties and obligations as Trustee hereunder, agrees to accept delivery of cash and other property delivered to it by the Company pursuant to this Agreement, and agrees to hold such cash and other property and any

5

Plans), and the time of commencement and termination for payment of such amounts (the "**Current Year Obligations**"); and

      (b)    the present value (the "**Current Aggregate Accrued Obligations**") as of the December 31 immediately preceding the calendar year for which the Payment and Obligation Schedule is being prepared of the Company's future obligations under the Plans to all then Participants based upon their service with "the Company as of such" December 31 and their compensation and other factors relevant to such present value determination as of such December 31.

      **3.2**    **Company Determination of Benefits**. The entitlement of a Participant to benefits under any Plan shall be determined by the Company, and any claim by a Participant for such benefits shall be pursuant to the terms of each specific Plan.

      **3.3**    **Payment of Benefits by the Company**.  The Company may make payment of benefits directly to Participants as they become due under the terms of the Plans. The Company shall notify the Trustee of its decision to make payment of benefits directly prior to the time amounts are payable to Participants by the Trustee.  The Company may direct the Trustee in writing to reimburse the Company from the Trust for Plan benefits paid directly to a Participant by the Company.

      If for any reason the Company does not make payment of benefits directly to Participants as they become due under the terms of the Plans, the Trustee shall make such payments from the Trust in accordance with the Payment and Obligation Schedule, provided that the Trustee shall only pay in any calendar year the Current Year Obligations for such calendar year.  The Trustee shall promptly notify the Company of each such payment.

      If payments are being made by the Trustee from the Trust to Participants and the assets of the Trust are insufficient to make all payments of benefits in accordance with the terms of the Plans, the Company shall make the balance of each such payment as it becomes due and payable.  The Trustee shall promptly notify the Company when the assets of the Trust Fund are insufficient.

**ARTICLE 4**

**PAYMENTS TO COMPANY**

      **4.1**    **Reversions to Company**. Prior to a Change of Control, if it is determined at the end of any calendar year that the value of the Trust is greater than one hundred percent (100%) of then Current Aggregate Accrued Obligations under the Plans, the Company may direct, and the Trustee shall return to the Company, such excess assets within ten (10) days of such direction, so as to reduce the net assets of the Trust to no less than one hundred percent (100%) of the then Current Aggregate Accrued Obligations.

      Following a Change of Control, if it is determined at the end of any calendar year that the value of the Trust is greater than one hundred twenty-five percent (125%) of then

8

23-20318.124

Current Aggregate Accrued Obligations under the Plans, the Company may request and the Trustee, upon its sole determination, may return to the Company within twenty (20) days of such request, such excess assets so as to reduce the net assets of the Trust to no less than one hundred twenty-five percent (125%) of the then Current Aggregate Accrued Obligations.

4.2  **Restrictions on Reversion**.  Except as provided in this <u>Article 4</u>, the Company shall have no right or power to direct the Trustee to return to the Company or to divert to others any of the assets in the Trust before payment of all benefits have been made to Participants pursuant to the terms of the Plans.

# ARTICLE 5

## MANAGEMENT OF THE TRUST FUND

5.1  **The Trust Fund**.  The Trust Fund shall consist of all cash and other property acceptable to and received by the Trustee, plus any investment earnings or gains on such assets and less any investment loss or expense, benefit or disbursement paid pursuant to this Agreement. The Trustee may use a general disbursement account for distributions from the Trust without incurring any liability for payment of interest thereon, provided that the funds do not remain uninvested for an unreasonable time period, notwithstanding the Trustee's receipt of credit or interest in respect of funds held in such disbursement account.

5.2  **Investment in Company Securities in the Trust Fund**.  If shares of securities (including stock or rights to acquire stock) or obligations issued by the Company are contributed to the Trust, the Trustee shall have neither the right nor the power to sell or otherwise dispose of such securities without the express written consent of the Company, except for purposes of paying benefits to Participants and defraying the ordinary and necessary expenses of the Trust. Subject to applicable law and consistent with maintaining an effective tax deferral of Participant benefits, in the event that the Trust Fund holds voting securities of the Company, the Trustee, in its discretion, may solicit voting preferences from certain Participants with respect to matters that are to be presented to the Company's common stockholders; provided, however, in all events, the Trustee shall retain the full discretion and authority to vote such Company voting securities as it deems appropriate regardless of voting preferences indicated by any Participant, or only if requested by the Trustee, as the Company or its delegate may direct.

(a)  <u>Registration</u>.  With respect to any investment of the assets in the Trust consisting of shares of the common stock of the Company ("**Shares**"), the Company shall promptly prepare, and shall file with the Securities and Exchange Commission within sixty (60) calendar days after the date the Company receives a request from the Trustee, in writing, to register the Shares, a registration statement on Form S-3 under the Securities Act of 1933, as amended (the "**1933 Act**").  The Company and the Trustee, as applicable, shall use their best efforts to cause such registration statement to become effective as promptly as practicable.  The Company shall (i) bear the expenses of such compliance with the 1933 Act and (ii) use its best efforts to maintain the effectiveness of such registration statement for at least thirty-six (36) months after the effective date of

9

23-20318.125

registration statement (the **"Initial Effectiveness Period"**) and any subsequent thirty-six (36) month period following the Initial Effectiveness Period (the **"Subsequent Effectiveness Period"**) so long as the Shares are still held in the Trust. If prior to the last day of the Initial Effectiveness Period or any Subsequent Effectiveness Period, the Shares are still held by the Trust, the Company will file a new registration statement on Form S-3 (or such other applicable registration form as may be required) under the 1933 Act prior to the end of such period. In the event that the Company cannot legally maintain the effectiveness of such registration statement at any time during the Initial Effectiveness Period or any Subsequent Effectiveness Period, the Company shall take such other reasonable steps as may be appropriate to permit the Trustee to distribute the Shares in compliance with the 1933 Act. The Trustee shall use its best efforts to comply with the 1933 Act and the rules and regulations promulgated thereunder in connection with any transfer or distribution by it of the Shares.

(b)     Trading.  The Company shall use its best efforts to have the Shares included in the shares of common stock of the Company listed on the New York Stock Exchange or on such other national stock exchange that the Company's Shares are listed.

(c)     Certificate Legend.  Each certificate or book entry account representing any of the Shares may bear such legends, summaries or endorsements as the Company may reasonably deem appropriate and not inconsistent with the provisions of this Agreement, or as may be required to comply with any applicable law or governmental rule or regulation, or any applicable rule or regulation of the New York Stock Exchange or other exchange on which the shares are listed for trading. If requested by the Trustee, the Company shall cause any such legend to be removed promptly if at the time removal is permitted by such laws, rules or regulations.

**5.3     Investment Substitution**.  The Company shall have the right at any time, and from time to time in its sole discretion, to substitute assets of equal fair market value for any asset held by the Trust.  This right is exercisable by the Company in a nonfiduciary capacity without the approval or consent of any person in a fiduciary capacity.

**5.4     Accounting**.  The Company may direct the Trustee to maintain separate recordkeeping accounts for specific Plans or for all the Plans, in the name of each Participant which, pursuant to the rules established by the Company, will reflect with respect to each Participant:

(a)     Deposits made by the Company to the Trust Fund;

(b)     Income, losses, and appreciation or depreciation in the value of Trust assets resulting from the investment of the Trust Fund;

(c)     Payments made from the Trust Fund to Participants; and

(d)     Any other amounts charged to the accounts or accrued benefits of Participants, such as investment expenses.

10

23-20318.126

As of the end of each Plan Year, such accounts shall be appropriately adjusted in accordance with such rules to reflect the then net worth of the Trust Fund, as determined as of that Plan year end by the Trustee and reported to the Company. The value of all deferrals and earnings thereon shall be identified for each Plan and for each Participant in any Plan, on a schedule prepared by the Trustee and delivered to the Company upon a mutually agreed time schedule.

    **5.5**     **Trustee's General Powers Rights and Duties**. With respect to the Trust Fund and subject only to the limitations expressly provided in this Agreement or imposed by applicable law, the Trustee shall have the following powers, rights, and duties in addition to those vested in it elsewhere in this Agreement or by law:

    (a)     To invest and reinvest part or all of the Trust Fund in any real or personal property (including investments in any stocks, bonds, debentures, mutual fund shares, notes, commercial paper, treasury bills, options, commodities, futures contracts, partnership interests, venture capital investments, any common, commingled, or collective trust funds, or pooled investment funds, any interest-bearing deposits held by any bank or similar financial institution, and any other real or personal property), and to diversify such investments so as to minimize the risk of large losses unless under the circumstances it is clearly prudent not to do so;

    (b)     To retain in cash such amounts as the Trustee considers advisable and as are permitted by applicable laws and to deposit any cash so retained in any depository (including any bank acting as trustee) which the Trustee may select;

    (c)     To manage, sell, insure, and otherwise deal with all real and personal property held by the Trustee on such terms and conditions as the Trustee shall decide;

    (d)     To vote stock and other voting securities directly or by proxy (and to delegate the Trustee's powers and discretion with respect to such stock or other voting securities to any such proxy), to exercise subscription, conversion, and other rights and options (and make payments from the Trust Fund in connection therewith), to take any action and to abstain from taking any action with respect to any reorganization, consolidation, merger, dissolution, recapitalization, refinancing, and any other program or change affecting any property constituting a part of the Trust Fund (and in connection therewith to delegate the Trustee's discretionary powers and to pay assessments, subscriptions, and other charges from the Trust Fund), to hold or register any property from time to time in the Trustee's name or in the name of a nominee or to hold it unregistered and, with the approval of the Company, to borrow from anyone, including any bank acting as trustee, to the extent permitted by law, such amounts from time to time as the Trustee considers desirable to carry out this Trust (and to mortgage or pledge all or part of the Trust Fund as security);

    (e)     When directed by the Company or by any Investment Manager to acquire, retain, or dispose of such investments as the Company directs in accordance with this Agreement (following a Change of Control, the Company's right to direct the Trustee under this subsection (e) shall cease);

11

Board shall be considered as though such individual were a member of the Incumbent Board, but excluding, for this purpose, any such individual whose initial assumption of office occurs as a result of an actual or threatened election contest with respect to the election or removal of directors or other actual or threatened solicitation of proxies or consents by or on behalf of a Person other than the Board; or

(c) Consummation by the Company of a reorganization, merger or consolidation or sale or other disposition of all or substantially all of the assets of the Company or the acquisition of assets of another entity (a "**Business Combination**"), in each case, unless, following such Business Combination, (i) all or substantially all of the individuals and entities who were the beneficial owners, respectively, of the Outstanding Company Common Stock and Outstanding Company Voting Securities immediately prior to such Business Combination beneficially own, directly or indirectly, more than sixty percent (60%) of, respectively, the then outstanding shares of common stock and the combined voting power of the then outstanding voting securities entitled to vote generally in the election of directors, as the case may be, of the corporation resulting from such Business Combination (including, without limitation, a corporation which as a result of such transaction owns the Company or all or substantially all of the Company's assets either directly or through one or more subsidiaries) in substantially the same proportions as their ownership, immediately prior to such Business Combination of the Outstanding Company Common Stock and Outstanding Company Voting Securities, as the case may be, (ii) no Person (excluding any employee benefit plan (or related trust) of the Company or such corporation resulting from such Business Combination) beneficially own, directly or indirectly, twenty percent (20%) or more of, respectively, the then outstanding shares of common stock of the corporation resulting from such Business Combination or the combined voting power of the then outstanding voting securities of such corporation except to the extent that such ownership existed prior to the Business Combination, and (iii) at least a majority of the members of the board of directors of the corporation resulting from such Business Combination were members of the Incumbent Board at the time of the execution of the initial agreement, or of the action of the Board, providing for such Business Combination; or

(d) Approval by the shareholders of the Company of a complete liquidation or dissolution of the Company.

10.3 **Funding Upon a Change of Control**. Upon a Change of Control, the Company shall, as soon as possible, but in no event longer than thirty (30) calendar days following the Change of Control make an irrevocable contribution to the Trust in an amount equal to the then Current Aggregate Accrued Obligations. As of each January 1, the Company shall make an irrevocable contribution to the Trust in an amount sufficient to cause the then value of the Trust to be equal to the Current Aggregate Accrued Obligations as of the December 31 immediately preceding such January 1.

10.4 **Elimination of Investment Restrictions and Changes to Article 6 Upon a Change of Control**. Immediately upon a Change of Control, Sections 7.4 and 5.2 shall become inapplicable and of no force and effect. Any action taken by the Company pursuant to

23

<u>Article 6</u> shall require the consent of the Trustee, which consent shall not be unreasonably withheld.

**10.5    Amendment of Trust Agreement Without Consent of Participants.** Following a Potential Change of Control or a Change of Control, this Agreement may be amended by the Company at any time pursuant to <u>Section 11.1</u>, without the consent of Participants pursuant to <u>Section 10.6</u>, but only to the extent necessary to (a) maintain the status of the Trust as a "grantor trust" under the Code, (b) evidence the succession of another corporation to the Company and the assumption by any such successor of this Agreement, (c) cure any ambiguity, or to correct or supplement any provision herein, which is determined to be inconsistent with any other provision herein, (d) make any other changes with respect to matters or questions arising under this Agreement which do not adversely affect the interest of any Participant in any material respect, or (e) to make any technical amendments which are required in order to comply with any applicable law or regulation that cannot be waived.  In the event a Change of Control does not occur within two (2) years of notification that a Potential Change of Control has occurred, the Company's right to amend the Trust without the consent of the Participants shall be restored without regard to <u>Section 10.6</u>.

**10.6    Amendment of Trust Agreement With Consent of Participants.** Subject to <u>Section 10.5</u>, following a Potential Change of Control or a Change of Control, this Agreement may be amended by the Company only with the prior written consent of a majority of Participants who, at the time such amendment is sought, are listed on the Payment and Obligation Schedule.  Upon receipt of a request from the Company for an amendment at such time, the Trustee shall be responsible for securing such consents in a timely fashion.  Unless ordered by a court of competent jurisdiction, the Trustee shall not reveal to the Company (or to any other person) any information concerning such consents, except whether the required majority has been achieved.

**10.7    Additional Participants.**  Following a Potential Change of Control or a Change of Control, the Company may not add Participants to the Payment and Obligation Schedule unless the Company makes an irrevocable contribution to the Trust in an amount equal to the then Current Aggregate Accrued Obligation of each such Participant.

**10.8    Notification of Potential Change of Control or a Change of Control** The Chief Executive Officer, the Chief Financial Officer or the General Counsel of the Company shall have the specific authority to determine whether a Potential Change in Control or Change in Control has transpired, and to determine whether the Potential Change in Control is void under the guidance of this Section 10 and shall be required to give the Trustee notice of a Potential Change in Control, a Change in Control, or a void Potential Change in Control.  The Trustee shall be entitled to rely upon such notice, but if the Trustee receives notice of a Change in Control from another source, the Trustee shall make its own independent determination

23-20318.140

## ARTICLE 11

## AMENDMENT OR TERMINATION

**11.1    Amendment**.  Subject to Sections 10.5 and 10.6:

(a)    This Agreement may be amended by a written instrument executed by the Trustee and by a Vice President or higher level officer of the Company, or as approved or adopted by resolution of the Board or its Compensation and Benefits Committee. Notwithstanding the foregoing, no such amendment shall directly conflict with the terms of the Plans or shall make the Trust revocable.

(b)    The duties and liabilities of the Trustee under this Agreement cannot be changed without the Trustee's written consent, which shall not be unreasonably withheld.

(c)    No amendment shall be made to this Trust Agreement that shall (i) cause it or the assets of the Trust Fund to be governed by or subject to Part 2, 3 or 4 of Title I of ERISA, or (ii) adversely affect any benefits accrued under any Plan as of the date of such amendment in respect of any Participant.

(d)    The Company, from time to time, may add, remove, amend or modify additional Plans to be covered by this Trust by formal amendment to this Trust Agreement.  Such a designation shall be in writing, signed by the appropriate officer of the Company, and filed with the Trustee together with the new version of Appendix A which shall be attached to the Agreement.  The Plans are incorporated herein by this reference.

**11.2    Termination**.

(a)    All the rights, titles, powers, duties, discretions, and immunities imposed on or reserved to the Trustee, the Company, the Board and any Investment Manager, shall continue in effect with respect to the Trust until all benefits payable to Participants under the Plans have been paid and all assets in the Trust have been distributed by the Trustee under the terms of the Trust and the Plans.

(b)    The Trust shall terminate upon the expiration of twenty-five years from the Effective Date and shall automatically renew for an additional period of twenty-five (25) years unless the Company provides written notice to the Trustee to the contrary no later than thirty (30) calendar days prior to the date the Trust would otherwise terminate. Prior to termination of the Trust pursuant to the preceding sentence, the Trust shall not terminate unless Participants are no longer entitled to benefits pursuant to the terms of any of the Plans.  Upon the date that Participants are no longer entitled to any benefits pursuant to the terms of any of the Plans, the Trust shall terminate. Upon termination of this Trust, the Trustee shall reserve such reasonable amounts as it may deem necessary to provide for the payment of expenses or fees then or thereafter chargeable to the Trust. Upon termination of this Trust, the Trustee shall continue to have such of the powers provided in this Agreement as are necessary or desirable for the orderly liquidation and

23-20318.141

# **TAB 12**

| From: | nikki.tanner@wellsfargo.com |
|---|---|
| To: | Megan_Bruegger@oxy.com; Elizabeth_Gooch@oxy.com; karen_lippe@oxy.com; |
| Cc: | Monique.O.Etheridge@wellsfargo.com; |
| Subject: | RE: Investment Strategy Discussion |

Good morning,

Hope you all are well.  As we head into the holidays, we wanted to follow up with you on the items below.  Specifically we would like to resolve the following:
- The /Occidental team will have internal discussions regarding the sale of Occidental shares (recommendations of how much and when)
- Wells Fargo should expect a reimbursement request for approximately $102.9M early next week (Monday) for the combined Individual Key Employees and Key Manager Change of Control Agreements, Severance agreement executed for R.A. Walker and Anadarko/ Kerr McGee NQDCP.

Who should I reach out to discuss the first bullet point?
Thank you,

Nikki T. Tanner, CIMA®
Tel: (678) 627-3787 | Cell: (336) 406-8474

---

**From:** Tanner, Nikki T
**Sent:** Friday, October 25, 2019 3:06 PM
**To:** 'Megan_Bruegger@oxy.com' <Megan_Bruegger@oxy.com>; 'Gooch, Elizabeth' <Elizabeth_Gooch@oxy.com>; 'karen_lippe@oxy.com' <karen_lippe@oxy.com>
**Cc:** Etheridge, Monique O. <Monique.O.Etheridge@wellsfargo.com>
**Subject:** RE: Investment Strategy Discussion

Good afternoon,

Thank you all for your time yesterday.  I've put together bullet points covering items discussed and identified for follow up:

- Wells Fargo will need the September 30, 2019 plan Balances by fund and participant for the following:
  - Anadarko Petroleum Corporation Savings Restoration Plan
  - Anadarko Petroleum Corporation Deferred Compensation Plan
  - Kerr - McGee Corporation Deferred Compensation Plan
- The /Occidental team will have internal discussions regarding the sale of Occidental shares (recommendations of how much and when)
- Wells Fargo will work with its trading desk to examine whether there will be any challenges to selling all shares in one trade
- Wells Fargo should expect a reimbursement request for approximately $102.9M early next week (Monday) for the

combined **Individual Key Employees and Key Manager Change of Control Agreements, Severance agreement executed for R.A. Walker and Anadarko/ Kerr McGee NQDCP**.

- Wells Fargo should expect a reimbursement request for remaining balance of the combined **Individual Key Employees and Key Manager Change of Control Agreements and the Severance agreement executed for R.A. Walker** sometime early 1Q2020.
- Wells Fargo should expect monthly reimbursement requests from Legacy Anadarko for participant payments until approximately February 2020 then every calendar quarter thereafter
- The Anadarko/ Kerr McGee NQDCP mirrors the Anadarko 401k plan which will soon terminate (approx. 2Q2020). As are result, the NQDCP will "delink" from the 401K plan. At this time, there are no plans to change add or remove funds from the NQDCP lineup. Wells Fargo and Occidental will work together to develop solutions for mapping the Managed Income Portfolio II (Stable Value) and the Company Stock Fund (now frozen)
- We discussed potential fund and share class restrictions from the Vanguard and Fidelity fund families. For Fidelity, the "K" share class is an option for participants in the plans. Traditionally, the "K" share plan is offered to qualified plans only. For Vanguard, aggregate fund balances do not meet the minimum for purchase in the institutional share class ($5M). Occidental will work with its internal partners to identify the dedicated Relationship Managers from the respective funds to determine if Wells Fargo can obtain a waiver
- We ran out of time before we could discuss the investment strategy for the SERPs. They are:
  - Anadarko Retirement Restoration Plan – the Action Plan calls for 60% equity /40% fixed income allocation. This is was driven by the estimated cash flows and estimated time horizon of the plans. Participant ages range from 36 to 71. The largest balance is $22m (age 62). If the participant exercised the option to retire it would reduce the liability and projected cash flows which in turn would cause us to revisit the allocation presented.
  - Kerr-McGee Benefit Restoration Plan – The Action Plan calls for a 50% equity/ 50% fixed income allocation. Similar the APC RRP the allocation for the KMG BRP was driven by the estimated cash flows and estimated time horizon. Participant ages range from 38 to 93. There are more participants in payout ranging from 54 years old to 93 years old. Two have lump sums pending while it appears the other participants in payout receive periodic payments.

23-20318.888

- Kerr–McGee Supplemental Executive Retirement Plan -
  The Action Plan calls for a 20% Equity/ 80% Fixed Income
  allocation.  All of the participants are in payout and range
  in ages 77 to 93. We think a conservative approach is
  more appropriate given the estimate cash flows and time
  horizon.
- **All** of the Action Plans presented are up for further discussion. As
  we discussed, future organizational decisions will occur resulting
  in terminations and retirements.  As result, the projected liabilities
  will be directly impacted by personnel changes.  Page 9 of the
  materials provided details the projected range of returns for all of
  the allocations presented.

Please let me know if any discussion points from yesterday were missed.
Have a great weekend and we look forward to connecting with you soon.

**Nikki T. Tanner, CIMA®**
Vice President, Senior Investment Manager
Wells Fargo Institutional Retirement and Trust
360 Interstate North Pkwy SE|MAC G0147-051|5th Floor| Atlanta, GA, 30339
Tel: (678) 627-3787 | Cell :(336) 406-8474
nikki.tanner@wellsfargo.com

*This electronic mail message contains information from Wells Fargo Bank, which is confidential and
privileged information. If you are not the intended recipient, please be aware that any disclosure,
photocopying, distribution, or use of the contents of the received information is prohibited. If you
have received this email in error, please reply to the sender immediately and permanently delete
this message and all copies of it. If you no longer wish to receive these emails, please notify the
sender. Thank you.*

*Please consider the environment before printing this email.*

# **TAB 13**

**Cc:** Myers, Jessica L[Jessica_Myers@oxy.com]; Knight, Angela[Angela_Knight@oxy.com]
**From:** Tanner, Nikki T[/O=WELLS FARGO & CO./OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=A624011]
**Sent:** Thur 12/19/2019 12:37:52 PM (UTC-05:00)
**Subject:** RE: ANADARKO STOCK
[2018 SERP Disclosure Report.pdf](#)
[2018 BRP Disclosure Report.pdf](#)
[2018 RRP Disclosure Report.pdf](#)

Good afternoon Jason,

Wells Fargo accepts your recommendation for the ratable liquidation plan for Oxy Stock as follows:

Beginning January 6, 2020, sell 381,420 shares each day over the course of the week with a final liquidation on January 10, 2020

1,907,100 / 5 = 381,420

We also would like to have permission to speak with, Willis Towers Watson, the authors of the actuarial reports. We have a couple follow up questions to the report specifically around duration. This additional information will help us with the fixed income allocation of the assets. They are Terry McFadden and Amy Doslich. I've attached the reports for your reference.

Thank you and speak with you soon.

Nikki T. Tanner, CIMA®
Tel: (678) 627-3787 | Cell: (336) 406-8474

---

**From:** Tanner, Nikki T
**Sent:** Tuesday, December 17, 2019 4:16 PM
**To:** 'Schmitz, Jason A' <Jason_Schmitz@oxy.com>; Etheridge, Monique O. <Monique.O.Etheridge@wellsfargo.com>; 'Lippe, Karen E' <Karen_Lippe@oxy.com>; 'Bruegger, Megan D' <Megan_Bruegger@oxy.com>
**Cc:** 'Myers, Jessica L' <Jessica_Myers@oxy.com>; 'Knight, Angela' <Angela_Knight@oxy.com>
**Subject:** RE: ANADARKO STOCK

Hello Jason,

Confirming receipt of Occidental's request. We'll respond shortly. Thank you.

Nikki T. Tanner, CIMA®
Tel: (678) 627-3787 | Cell: (336) 406-8474

---

**From:** Schmitz, Jason A <Jason_Schmitz@oxy.com>
**Sent:** Tuesday, December 17, 2019 4:06 PM
**To:** Etheridge, Monique O. <Monique.O.Etheridge@wellsfargo.com>; Lippe, Karen E <Karen_Lippe@oxy.com>; Bruegger, Megan D <Megan_Bruegger@oxy.com>
**Cc:** Tanner, Nikki T <nikki.tanner@wellsfargo.com>; Myers, Jessica L <Jessica_Myers@oxy.com>; Knight, Angela <Angela_Knight@oxy.com>
**Subject:** RE: ANADARKO STOCK

Hi Nikki / Monique – Treasury would appreciate if Wells could agree to a ratable liquidation plan for Oxy Stock as follows:

Beginning January 6, 2020, sell 381,420 shares each day over the course of the week with a final liquidation on January 10, 2020

1,907,100 / 5 = 381,420

23-20318.891

Please let me know if you have any questions or would like to discuss.

Regards,
Jason

Occidental Petroleum Corporation
Associate Director, Treasury Finance
Tel:  713.497.2059
jason_schmitz@oxy.com

**From:** Monique.O.Etheridge@wellsfargo.com <Monique.O.Etheridge@wellsfargo.com>
**Sent:** Monday, December 16, 2019 11:01 AM
**To:** Schmitz, Jason A <Jason_Schmitz@oxy.com>; Lippe, Karen E <Karen_Lippe@oxy.com>; Bruegger, Megan D <Megan_Bruegger@oxy.com>
**Cc:** nikki.tanner@wellsfargo.com; Myers, Jessica L <Jessica_Myers@oxy.com>; Knight, Angela <Angela_Knight@oxy.com>
**Subject:** [EXTERNAL] RE: ANADARKO STOCK

Hi Everyone,

Nikki and I are checking in.  We have not received a response regarding the Oxy team conducting an internal meeting to discuss the liquidation of the Oxy stock.

Please provide an update.  If we do not receive an update by Wed at 3 PM EST, we will assume there is no additional input and will proceed with the plan that was presented on 10/24/2019.

Warmest Regards,

**Monique Etheridge, CEBS**
Vice President | Relationship Manager

Wells Fargo Bank, N.A. | Institutional Retirement and Trust
Executive Benefits
MAC | G0147-056 360 Interstate North Parkway Suite 500
Atlanta, Ga. 30339
Work 678-589-4300
Monique.O.Etheridge@Wellsfargo.com

To unsubscribe from marketing emails from:
- An individual Associate: Reply to one of his/her emails and type "Unsubscribe" in the subject line.
- Wells Fargo and its affiliates: Unsubscribe at https://www.wellsfargoadvisors.com/wellsfargo-unsubscribe

This email may be an advertisement or solicitation for products and services.
Neither of these actions will affect delivery of important service messages regarding your accounts that we may need to send you or preferences you may have previously set for other email services.

For additional information regarding Wells Fargo Advisors electronic communication policies, visit http://wellsfargoadvisors.com/disclosures/email-disclosure.html.

Investment professionals are registered representatives of Wells Fargo Advisors. Investment products and services are offered through Wells Fargo Advisors, a trade name used by Wells Fargo Clearing Services, LLC, Member SIPC, a registered broker-dealer and non-bank affiliate of Wells Fargo & Company, 1 North Jefferson, St. Louis, MO 63103. Insurance products are offered through our affiliated and non-bank insurance agencies.

Wells Fargo Institutional Retirement and Trust is a business unit of Wells Fargo Bank, N.A., a bank affiliate of Wells Fargo & Company.

Principal® closed the acquisition of Wells Fargo Institutional Retirement & Trust's (IRT) business unit on July 1, 2019. The

23-20318.892

transition, transfer, and conversion of IRT's business operations, employees, and clients will occur over the following 12-24 months during the transition. Manufacturers Wells Fargo Bank, N.A. will contract to operate and service the IRT business for the benefit of Principal®, including providing recordkeeping, trustee, and/or custody services.

---

**From:** Schmitz, Jason A <Jason_Schmitz@oxy.com>
**Sent:** Tuesday, December 10, 2019 7:24 PM
**To:** Lippe, Karen E <Karen_Lippe@oxy.com>; Bruegger, Megan D <Megan_Bruegger@oxy.com>
**Cc:** Tanner, Nikki T <nikki.tanner@wellsfargo.com>; Etheridge, Monique O. <Monique.O.Etheridge@wellsfargo.com>; Myers, Jessica L <Jessica_Myers@oxy.com>; Knight, Angela <Angela_Knight@oxy.com>
**Subject:** RE: ANADARKO STOCK

Hi Karen – Treasury is not aware of any timeline for liquidation of Oxy Stock in a "trust" either.  If possible, please provide details and Treasury is happy to participate as required.

Regards,
Jason

Occidental Petroleum Corporation
Associate Director, Treasury Finance
Tel:  713.497.2059
jason_schmitz@oxy.com

---

**From:** Lippe, Karen E
**Sent:** Tuesday, December 10, 2019 6:23 PM
**To:** Schmitz, Jason A <Jason_Schmitz@oxy.com>; Bruegger, Megan D <Megan_Bruegger@oxy.com>
**Cc:** nikki.tanner@wellsfargo.com; Monique.O.Etheridge@wellsfargo.com; Myers, Jessica L <Jessica_Myers@oxy.com>; Knight, Angela <Angela_Knight@oxy.com>
**Subject:** RE: ANADARKO STOCK

Not 401K – its the trust.

Karen Lippe
Director - Corporate Accounting
Office: 713-366-5619
Fax: 713-215-7513

---

**From:** Schmitz, Jason A <Jason_Schmitz@oxy.com>
**Sent:** Tuesday, December 10, 2019 6:22 PM
**To:** Bruegger, Megan D <Megan_Bruegger@oxy.com>; Lippe, Karen E <Karen_Lippe@oxy.com>
**Cc:** nikki.tanner@wellsfargo.com; Monique.O.Etheridge@wellsfargo.com; Myers, Jessica L <Jessica_Myers@oxy.com>; Knight, Angela <Angela_Knight@oxy.com>
**Subject:** RE: ANADARKO STOCK

Hi Megan – does this refer to the liquidation of Oxy Stock in the Anadarko 401(k)?

Treasury is not aware of the plan(s) regarding the liquidation.  Please let us know the current timeline.

Regards,
Jason

Occidental Petroleum Corporation
Associate Director, Treasury Finance
Tel:  713.497.2059
jason_schmitz@oxy.com

23-20318.893

**From:** Megan_Bruegger@oxy.com <Megan_Bruegger@oxy.com>
**Sent:** Tuesday, December 10, 2019 9:10 AM
**To:** Lippe, Karen E <Karen_Lippe@oxy.com>; Schmitz, Jason A <Jason_Schmitz@oxy.com>
**Cc:** nikki.tanner@wellsfargo.com; Monique.O.Etheridge@wellsfargo.com
**Subject:** FW: ANADARKO STOCK

Hi Karen and Jason,
Please see below and forward to anybody else that should be included in the matter.

I also clarified with them that this is referring to the now Occidental stock from the previously converted Anadarko stock.
Thanks,
Megan

---

**From:** Monique.O.Etheridge@wellsfargo.com <Monique.O.Etheridge@wellsfargo.com>
**Sent:** Tuesday, December 10, 2019 8:36 AM
**To:** Megan_Bruegger@oxy.com
**Cc:** nikki.tanner@wellsfargo.com
**Subject:** [EXTERNAL] ANADARKO STOCK

HI Megan,

This email is a follow up to my voice message.

Please let Nikki and I know when the team has any additional input regarding the sale of the Anadarko stock. If we do not hear from Oxy by 12/17/2019, we will assume that there is no additional input.

Warmest Regards,

**Monique Etheridge, CEBS**
Vice President | Relationship Manager

Wells Fargo Bank, N.A. | Institutional Retirement and Trust
Executive Benefits
MAC | G0147-056 360 Interstate North Parkway Suite 500
Atlanta, Ga. 30339
Work 678-589-4300
Monique.O.Etheridge@Wellsfargo.com

To unsubscribe from marketing emails from:
- *An individual Associate: Reply to one of his/her emails and type "Unsubscribe" in the subject line.*
- *Wells Fargo and its affiliates: Unsubscribe at* https://www.wellsfargoadvisors.com/wellsfargo-unsubscribe
This email may be an advertisement or solicitation for products and services.
*Neither of these actions* will affect delivery of important service messages regarding your accounts that we may need to send you or preferences you may have previously set for other email services.

*For additional information regarding Wells Fargo Advisors electronic communication policies, visit*http://wellsfargoadvisors.com/disclosures/email-disclosure.html.

Investment professionals are registered representatives of Wells Fargo Advisors. Investment products and services are offered through Wells Fargo Advisors, a trade name used by Wells Fargo Clearing Services, LLC, Member SIPC, a registered broker-dealer and non-bank affiliate of Wells Fargo & Company, 1 North Jefferson, St. Louis, MO 63103. Insurance products are offered through our affiliated and non-bank insurance agencies.

Wells Fargo Institutional Retirement and Trust is a business unit of Wells Fargo Bank, N.A., a bank affiliate of Wells Fargo & Company.

Principal® closed the acquisition of Wells Fargo Institutional Retirement & Trust's (IRT) business unit on July 1, 2019. The transition, transfer, and conversion of IRT's business operations, employees, and clients will occur over the following 12-24 months. During the transition period, Wells Fargo Bank, N.A. will continue to operate and service the IRT business for the benefit of Principal®, including providing recordkeeping, trustee, and/or custody services.

# TAB 14

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| OCCIDENTAL PETROLEUM CORP. | § | |
| and ANADARKO PETROLEUM CORP., | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:21-CV-01126 |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| *Defendant, Third-Party* | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| EQUINITI TRUST COMPANY, | § | |
| | § | |
| *Third-Party Defendant.* | § | |

---

## PLAINTIFF'S AND INTERVENING PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Occidental Petroleum Corporation ("Occidental") and Intervening Plaintiff Anadarko Petroleum Corporation ("Anadarko," and together "Plaintiffs") file this Motion for Summary Judgment against Defendant Wells Fargo Bank, N.A. ("Wells Fargo").

## I.     INTRODUCTION

This case arises out of a sophisticated national bank's failure to perform a routine stock sale agreement, costing Plaintiffs almost $40 million in lost sale proceeds. The essential facts supporting Plaintiffs' claims are undisputed: Wells Fargo, as a trustee, accepted and agreed to a plan to liquidate almost two million shares of Occidental common stock, for which it was handsomely compensated. Wells Fargo failed to perform the agreement and, for a period of months, failed to take basic actions that would have averted a precipitous loss in the value of those shares. On this basis alone, Plaintiffs are entitled to summary judgment.

Fully aware that its performance is indefensible, Wells Fargo changes the subject, arguing that its agreements were unenforceable and that it was thus free to fail in its duties—not once, but *over* and *over* and *over* again—leaving Plaintiffs to suffer the foreseeable consequences of Wells Fargo's profound defaults. Wells Fargo also points the finger at third-party defendant Equiniti Trust Company ("EQ") for following established procedures that Wells Fargo ***itself*** repeatedly botched or simply ignored.

These defenses raise no genuine issue of material fact that prevents entry of summary judgment in Plaintiffs' favor. Wells Fargo made a binding, contractual commitment to sell the shares on agreed dates, at the market price, to protect *itself* from the fiduciary risks that it faced if it continued to hold a large, undiversified block of a single publicly traded stock in a trust over which it held—as a result of the merger of Anadarko and Occidental—investment discretion. This contract was supported by consideration, it was binding, and Wells Fargo breached it.

Ignoring its duties, Wells Fargo entrusted the share sale to employees who had no relevant training, no experience in selling shares held by transfer agencies, and no operational support other

1

reasonable jury to find for the nonmovant—and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Here:

(1) There is no genuine issue of material fact to dispute that Wells Fargo breached two contracts with Plaintiffs—the Trust Agreement and a stock liquidation agreement.

(2) There is no genuine issue of material fact whether EQ was negligent or otherwise injured the Trust, such that Occidental can be vicariously liable for EQ's alleged negligence.

## II.    BACKGROUND AND UNDISPUTED FACTS

### A.    Wells Fargo contracts to serve as trustee of the Anadarko rabbi trust.

This case arises out of Wells Fargo's actions as the trustee of a so-called "rabbi trust" that relates to certain of Anadarko's deferred-compensation and employee-benefit plans.[4] To allow participants to defer tax liability, federal law requires the plans to remain unfunded pending payout of benefits.[5] Anadarko therefore established a rabbi trust (the "Trust") through a 1995 Benefits Trust Agreement between Anadarko (as grantor) and Wachovia Bank (as trustee) (the "Trust Agreement").[6] Plan participants do not own and have no beneficial interests in Trust assets.[7] Instead, they have *contractual* relationships with Anadarko under their respective benefits plans.[8] Under the Trust Agreement, the Trust's assets remain assets of the Company, but are segregated to protect against wrongful denials of payment, subject to the claims of the Company's unsecured creditors in the event of an insolvency.[9] Should the Trust become overfunded relative to plan

---

[4] *See* Ex. 3 (Benefits Trust Agreement) at 1.

[5] *See* Ex. 3; *Alexander v. Brigham & Women's Physicians Org.*, 513 F.3d 37, 43 (1st Cir. 2008); *In re Worldcom, Inc.*, 364 B.R. 538, 543-44 (S.D.N.Y Bankr. 2007).

[6] *See* Ex. 4 (Joint Statement of Stipulated Facts, ECF 43) ¶¶ 1-5. Texas law applies to this suit. *See* Ex. 3 § 5.5.

[7] *See, e.g.*, Ex. 3 §§ 1.3, 7.5, 8.1.

[8] *See id.*

[9] *See, e.g.*, Ex. 3 §§ 1.3 (funds "shall continue to be assets of the Company" and employee participants "shall have no preferred claim on, or any beneficial ownership interest in, the Trust"), 8.1. Wells Fargo understood this. *See* Ex. 5 at 41:3-18, 128:1-14.

- From August 8, 2019 through January 7, 2019, Wells Fargo had investment control of the Occidental shares but made no effort to obtain **custody** of them, so it could carry out the liquidation. EQ played no role in this failure.

- On January 7, 2019, when Wells Fargo's team belatedly learned the shares were with EQ, it should have immediately transferred the shares to DTC and then sold them. EQ played no role in this failure.

- EQ did not cause Wells Fargo to make duplicate requests to sell 29,320 shares of stock. Wells Fargo submitted duplicate sales requests, which EQ properly executed.

- Further, EQ advised Wells Fargo that submitting multiple transaction requests could delay the sale, yet Wells Fargo sent three identical requests anyway.

- EQ is not to blame for Wells Fargo's failure to open and read EQ's January 16 letter rejecting Wells Fargo's instruction to sell more shares than the Trust held.

- EQ was not responsible for Wells Fargo's failure to locate that rejection letter for an additional four days after learning of it, or Wells Fargo's delays for an additional week while it sought an unnecessary account statement.

- After advising Wells Fargo of the option to transfer the shares on February 26, EQ played no role in Wells Fargo's failure to execute a transfer for an additional three weeks.

In sum, the delays associated with the share sales—and the enormous losses they caused—are the fault of Wells Fargo alone.

### B.    EQ was not negligent, which dooms Wells Fargo's counterclaim.

The elements of a claim for negligence are: (1) the defendant owed a legal duty to the plaintiff, (2) the plaintiff breached the duty; and (3) the breach proximately caused the plaintiff's injury. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). On the undisputed record of this case, Wells Fargo cannot show that EQ breached any duty of care owed to Wells Fargo (or to the Trust), or that EQ proximately caused the losses giving rise to this litigation. As discussed above, the undisputed facts demonstrate that the delayed liquidation and resulting loss were Wells Fargo's fault, and not EQ's—and that the lengthy delays in executing the share sales were caused by Wells Fargo's acts and omissions, and not EQ.

Thus, Wells Fargo cannot reasonably claim to have been obstructed by EQ's allegedly "antiquated" procedures. Wells Fargo should certainly have known how to follow those

# **TAB 15**

```
 1    system in a separate drive where we keep track of all

 2    our contracts.

 3        Q.  Did your email exchange with Wells Fargo,

 4    trustee between December 17, 2019 and December 19, 2019

 5    get into that contract management system?

 6        A.  No.  So the -- the trade instruction, uh, would

 7    have been filed and it is filed in my personal inbox as

 8    I file all trade instructions, but those trade

 9    instructions are not filed separately on the S drive.

10        Q.  Okay.  I'm doing this 'cause it's a lawyer

11    thing.  Okay?

12            MR. JOYCE:  Objection, nonresponsive.

13        Q.  If you can answer yes or no, then do that.  If

14    you think you need to explain something, then do it

15    after that.  Is the -- is the email exchange between you

16    for Occidental and Wells Fargo, trustee dated December

17    17, 2019 through December 19, 2019, is that in the

18    contract management system maintained by the treasury

19    department at Occidental?

20        A.  No, it's not.

21        Q.  Now, what you were saying was, it's in your

22    email inbox.

23        A.  Yes, where I file all trade instructions.

24        Q.  Is that the only place that it is within the

25    treasury department?
```

Page 205

```
 1        A.   Yes, sir.

 2        Q.   And you never did say in writing we now have a

 3   binding agreement, right?

 4        A.   No, sir.

 5        Q.   You never -- meaning that's correct?

 6        A.   Correct.

 7        Q.   Okay.  And you never said to Wells Fargo,

 8   trustee, this is a binding trade instruction, right?

 9        A.   No, sir.  Again, as I told you in previous

10   answers countless times is that, uh, this is such a

11   commonplace occurrence to, uh, enter into a trade

12   instruction.  Companies and banks and other investment

13   providers do this all the time as normal course.

14   There's no need, uh, to explicitly say, uh, the trade

15   directive that we have mutually agreed to is a binding

16   agreement to contract -- to transact as agreed.

17        Q.   Do you have anything in writing after December

18   19, 2019 that describes Exhibit 56 as a binding trade

19   instruction?

20        A.   No, sir.

21        Q.   Nothing at all?

22        A.   No, sir.

23        Q.   Not -- not anywhere within all of Occidental?

24        A.   No, sir.

25        Q.   When did you first refer to the Exhibit 56
```

Page 298

1   accounting ever that Exhibit 56, the emails back and
2   forth, was a binding trade instruction?
3        A.  No.
4        Q.  Did you tell anybody, uh, in your direct line of
5   reporting?  So Mr. Casas or his boss or his boss, did
6   you tell any of them that Exhibit 56 was a binding trade
7   instruction?
8        A.  No.  As I told you, I wouldn't have had to
9   explicitly explain that to Wells Fargo nor would I have
10  had to explicitly explain that to Jessica Myers, Jaime
11  Casas, or anyone in the treasury function.  This is
12  again a normal course trade that happens all the time.
13  Wells Fargo transacts in these types of trades all the
14  time as do the other big money center banks as do the
15  large investment firms.  It is understood that once a
16  trade is agreed between the parties, that that trade
17  will be effected as agreed and nothing else, full stop.
18              MR. JOYCE:  Objection, nonresponsive.
19       Q.  So I understand fully what was going on between
20  your ears.  Okay?  Because you've told me several times
21  today.  What I want to know is who else did you express
22  that to?  Okay?  You never told Wells Fargo, trustee
23  that you viewed this as a binding trade instruction,
24  right?
25       A.  No.

Veritext Legal Solutions
346-293-7000

```
 1        Q.  Correct?

 2        A.  Correct.

 3        Q.  Okay.  You never told corporate accounting at

 4   Occidental you viewed Exhibit 56 as a binding trade

 5   instruction, correct?

 6        A.  Correct.

 7        Q.  You never told anybody in your line of

 8   reporting, either down or up, that you viewed Exhibit 56

 9   as a binding trade instruction, correct?

10        A.  Well, we never discussed it that way, no.

11        Q.  Meaning that's correct.

12        A.  Correct.

13        Q.  I can't ask you what you discussed with your

14   counsel, but I want to ask you if you ever self reported

15   to the legal department at Occidental anything at all

16   about the nature of Exhibit 56.

17        A.  No.  This is a trade directive.  A trade

18   directive would, uh, not go through a legal review.

19             MR. JOYCE:  Objection, nonresponsive.

20        Q.  So is the answer, no, you never did?

21        A.  No, it did not -- it did not go through legal.

22        Q.  Okay.  (Flipping pages.)  Turn please to Exhibit

23   58.  Exhibit 58 is an email note from Nikki Tanner to

24   you.  Monique Etheridge is copied.  It's dated January

25   31, 2020.  Is this the email note that you say you never
```

Page 301

# **TAB 16**

```
1    Exhibit 4 is a Fee Schedule, correct?

2        A.  Yes.

3        Q.  And you referenced a Fee Schedule in your

4    testimony just a minute ago, right?

5        A.  Yes.

6        Q.  And Exhibit 5 is that Fee Schedule, isn't it?

7        A.  That's correct.  (Flipping pages.)

8        Q.  Okay.  And has Anadarko paid Wells Fargo for its

9    services as trustee of the Trust pursuant to this fee

10   scheduled that we marked as Exhibit 5?

11       A.  Well, again, I understand that Wells Fargo has

12   been compensated for its services, but I'm not positive

13   who actually has paid them, whether it's Anadarko or the

14   Trust or both.

15       Q.  Okay.  Has Occidental paid Anadarko anything for

16   its services as trustee?  I'm sorry, has Occidental paid

17   Wells Fargo anything for its services as trustee?

18       A.  (Flipping pages.)  I don't have any knowledge on

19   that on who's actually made the payments.

20       Q.  So you're not aware of Occidental making any

21   payment to Wells Fargo for services provided as trustee,

22   are you?

23       A.  That's correct.  I'm not aware.

24       Q.  And to your knowledge has Wells Fargo received

25   any incremental compensation as trustee from anyone for
```

Veritext Legal Solutions
346-293-7000

APPX. PG. 205

23-20318.2248

```
 1   making specific trades and securities held by the Trust?

 2       A.  Well, I believe there's provisions in here for

 3   that type of work.

 4       Q.  Can you point me to it?

 5       A.  What's the question again?

 6       Q.  Point me to the provision you were referring to.

 7       A.  Well, there's, uh, provisions, uh, about basis

 8   points I think for investment fees.

 9       Q.  So that wasn't my question.  My question was

10   whether there was any incremental compensation paid to

11   Wells Fargo, as trustee for making specific trades in

12   securities held by the Trust?

13       A.  Well, the -- the document speaks for itself,

14   but, uh, I am not aware of a provision specific to that

15   topic.

16       Q.  Okay.  And I don't think there's one in here.

17   You know, I don't think that there is anything in here

18   that would provide for the incremental payment or

19   payment of incremental compensation for making a

20   specific trade.  My question to you was:  Whether you

21   were aware of Wells Fargo receiving any incremental

22   compensation as trustee from either Occidental or

23   Anadarko for making specific trades.

24       A.  I'm not aware of that.

25       Q.  Okay.  You're not aware of that happening,
```

Page 99

```
 1   right?
 2        A.  That's correct.
 3        Q.  To the best of your knowledge, it hasn't
 4   happened?
 5        A.  To the best of my knowledge.
 6        Q.  All right.  (Flipping pages.)  Do you know if
 7   there is a separate fee schedule like this Exhibit 5
 8   between Occidental and Wells Fargo relating to the
 9   Trust?
10        A.  I don't think there is one.
11        Q.  And, Mr. Eubank, who had authority to make
12   investment decisions for the Trust before the
13   acquisition?
14        A.  Well, I mean there's a provision in there, uh,
15   and I -- I'm not exactly sure.  It's probably referenced
16   as the administrator, but I'm drawing a blank right now.
17   And by that I mean the Benefits Trust Agreement.
18        Q.  (Flipping pages.)  Mr. Eubank, are you referring
19   to Section 7.4 of the Trust agreement?
20        A.  (Flipping pages.)  (Reading)  Well, sitting here
21   today, I believe that is the provision, uh, in the
22   agreement regarding how the investments were conducted
23   prior to the acquisition.
24        Q.  Okay.  So what is the company's understanding of
25   who had authority to make investment decisions for the
```

Veritext Legal Solutions
346-293-7000

# **TAB 17**

---

## Message

| | |
|---|---|
| **From:** | Tanner, Nikki T [nikki.tanner@wellsfargo.com] |
| **Sent:** | 10/22/2019 1:55:54 PM |
| **To:** | Etheridge, Monique O. [Monique.O.Etheridge@wellsfargo.com]; Megan_Bruegger@oxy.com; Gooch, Elizabeth [Elizabeth_Gooch@oxy.com]; karen_lippe@oxy.com |
| **Subject:** | [Received Securely] Investment Strategy Discussion Materials Attached |
| **Attachments:** | Legacy Anadarko Investment Discussion October 2019.pdf |

Good afternoon,

Attached please find the materials for our upcoming investment strategy discussion. The attached represents an initial action plan for the trust assets based on the actuarial and recordkeeping reports provided. It is not the final plan. It is intended to provide discussion points. Some of them are:

• Do we have the most recent plan line up?
• Some of the funds identified for mapping in the NQDCP have restrictions, we will discuss solutions.
• We understand that Occidental will seek reimbursement for participant payments? How often will the requests be made?
• We still have Occidental stock in the trust. Are there plans to distribute shares in kind to participants?

**Nikki T. Tanner, CIMA®**
Vice President, Senior Investment Manager
Wells Fargo Institutional Retirement and Trust
360 Interstate North Pkwy SE|MAC G0147-051|5ᵗʰ Floor| Atlanta, GA, 30339
Tel: (678) 627-3787 | Cell :(336) 406-8474
nikki.tanner@wellsfargo.com

*This electronic mail message contains information from Wells Fargo Bank, which is confidential and privileged information. If you are not the intended recipient, please be aware that any disclosure, photocopying, distribution, or use of the contents of the received information is prohibited. If you have received this email in error, please reply to the sender immediately and permanently delete this message and all copies of it. If you no longer wish to receive these emails, please notify the sender. Thank you.*

*Please consider the environment before printing this email.*

CONFIDENTIAL

WF-00003074

**EXHIBIT**
23-20318.2361

# TAB 18

Message
_____

| | |
|---|---|
| **From:** | Lippe, Karen E [Karen_Lippe@oxy.com] |
| **Sent:** | 12/10/2019 9:57:05 PM |
| **To:** | Bruegger, Megan D [Megan_Bruegger@oxy.com]; Schmitz, Jason A [Jason_Schmitz@oxy.com] |
| **CC:** | Tanner, Nikki T [nikki.tanner@wellsfargo.com]; Etheridge, Monique O. [monique.o.etheridge@wellsfargo.com] |
| **Subject:** | RE: RE: ANADARKO STOCK |

Monique / Nikki,

I'm working on the reimbursement now. I just pulled all the people and sent a request off to payroll and I now have bank statements to send you to prove it paid (unless you have something else easier to prove it!). I'm trying to do a nice little audit trail for you to follow pretty easily.

Payroll promised I'd have the report this week so I should hopefully have it to you early next week. We really want to try to get it paid before 12/31 if we can.

I have like $168M in intent to reimburse forms and then about $8.6 in GBP.

Jason,

The Oxy stock they were talking about was in the Rabbi trust that we talked about before. We didn't want them dumping all the Oxy stock at once since it was like ¼ of our daily trading value or something like that. We probably wanted to come up with what we are comfortable with them selling at a time and reinvesting.

The last statement I had had the total Rabbi trust at about $500 M.

Karen

Karen Lippe
Director - Corporate Accounting
Office: 713-366-5619
Fax: 713-215-7513

**From:** Megan_Bruegger@oxy.com <Megan_Bruegger@oxy.com>
**Sent:** Tuesday, December 10, 2019 9:10 AM
**To:** Lippe, Karen E <Karen_Lippe@oxy.com>; Schmitz, Jason A <Jason_Schmitz@oxy.com>
**Cc:** nikki.tanner@wellsfargo.com; Monique.O.Etheridge@wellsfargo.com
**Subject:** FW: ANADARKO STOCK

Hi Karen and Jason,

Please see below and forward to anybody else that should be included in the matter.

I also clarified with them that this is referring to the now Occidental stock from the previously converted Anadarko stock.

Thanks,
Megan

**From:** Monique.O.Etheridge@wellsfargo.com <Monique.O.Etheridge@wellsfargo.com>
**Sent:** Tuesday, December 10, 2019 8:36 AM

CONFIDENTIAL

WF-00014616

EXHIBIT
23-20318.2365

**To:** Megan_Bruegger@oxy.com
**Cc:** nikki.tanner@wellsfargo.com
**Subject:** [EXTERNAL] ANADARKO STOCK

HI Megan,

This email is a follow up to my voice message.

Please let Nikki and I know when the team has any additional input regarding the sale of the Anadarko stock. If we do not hear from Oxy by 12/17/2019, we will assume that there is no additional input.

Warmest Regards,

**Monique Etheridge, CEBS**
Vice President | Relationship Manager

Wells Fargo Bank, N.A. | Institutional Retirement and Trust
Executive Benefits
MAC | G0147-056 360 Interstate North Parkway Suite 500
Atlanta, Ga. 30339
Work 678-589-4300
Monique.O.Etheridge@Wellsfargo.com

*To unsubscribe from marketing emails from:*

- *An individual Associate: Reply to one of his/her emails and type "Unsubscribe" in the subject line.*
- *Wells Fargo and its affiliates: Unsubscribe at* https://www.wellsfargoadvisors.com/wellsfargo-unsubscribe

This email may be an advertisement or solicitation for products and services.
*Neither of these actions* will affect delivery of important service messages regarding your accounts that we may need to send you or preferences you may have previously set for other email services.

*For* additional information *regarding Wells Fargo Advisors electronic communication policies,*
*visit*http://wellsfargoadvisors.com/disclosures/email-disclosure.html.

Investment professionals are registered representatives of Wells Fargo Advisors. Investment products and services are offered through Wells Fargo Advisors, a trade name used by Wells Fargo Clearing Services, LLC, Member SIPC, a registered broker-dealer and non-bank affiliate of Wells Fargo & Company, 1 North Jefferson, St. Louis, MO 63103. Insurance products are offered through our affiliated and non-bank insurance agencies.

Wells Fargo Institutional Retirement and Trust is a business unit of Wells Fargo Bank, N.A., a bank affiliate of Wells Fargo & Company.

Principal® closed the acquisition of Wells Fargo Institutional Retirement & Trust's (IRT) business unit on July 1, 2019. The transition, transfer, and conversion of IRT's business operations, employees, and clients will occur over the following 12-24 months. During the transition period, Wells Fargo Bank, N.A. will continue to operate and service the IRT business for the benefit of Principal®, including providing recordkeeping, trustee, and/or custody services.

# TAB 19

paid to acquire APC. The shares were not issued to a third party in exchange for externally held APC stock. To assign a value to the treasury stock (a debit balance) would double count the deferred compensation liability associated with the APC executives.

### 2. Cash held by the trust is restricted

PWC's guide *Financial Statement Presentation*, paragraph 6.5.7 states the following regarding restricted cash:

> *ASC 230, as amended by ASU 2016-18, does not define restricted cash. However, ASC 210-10-45 contains some limited guidance on the balance sheet classification of items that are restricted as to withdrawal or usage. Further, the SEC has some limited guidance on restricted cash (see FSP 6.5.7.3). In its deliberations of ASU 2016-18, the EITF noted that the definition of restricted cash has not been a significant source of diversity in practice. As a result, due to the breadth of potential restrictions, it Statement of cash flows 6-21 decided not to provide a formal definition, and instead, allow a reporting entity to continue to use its own definition. While not defined, we believe restricted cash should generally include any cash that is legally restricted as to withdrawal or usage. Classification of additional amounts as restricted beyond those that are legally restricted should be subject to a reporting entity's accounting policy. Consistent with the views of most EITF members, we generally do not think that self-imposed designations should be presented as restricted cash unless an entity has an existing policy to do so.*

Occidental may not access the cash in the trust without requesting payment from the trustee for reimbursement of payments related to the deferred compensation plans, as referenced in the trust agreements. As such, it is legally restricted as to withdrawal or usage and should be presented as restricted cash.

### 3. Disposition and future assets of the trust

Wells Fargo Bank, N.A. will, at its discretion, sell OXY shares or use cash in the trust to purchase investments. OXY intends to settle all deferred compensation liabilities related to Anadarko executives at the earliest possible dates. OXY will then request reimbursement from the Trust. Accordingly, it is expected that the restricted cash and treasury shares held in the trust will decrease over time. Wells Fargo has communicated its intention to divest the OXY shares in the trust over a period of time. In the future, any investment in the trust (other than OXY stock) will be accounted for in accordance with 710-10-25-18:

"...assets held by the rabbi trust shall be accounted for in accordance with generally accepted accounting principles (GAAP) for the particular asset..."

These value of these investments will be provided to OXY via monthly statements.

### Attachments
Wells Fargo investment discussion, post merger:



Legacy Anadarko
Investment Discussic

Wells Fargo Statement 9/30:



09.19 WF Stmt.pdf

### Historical APC ET memo



Benefits Trust 2017
Treasury Share Cont
**Distribution**

– 3 –

# **TAB 20**

Message

| From: | Schmitz, Jason A [Jason_Schmitz@oxy.com] |
|---|---|
| Sent: | 12/19/2019 1:07:00 PM |
| To: | nikki.tanner@wellsfargo.com; Monique.O.Etheridge@wellsfargo.com; Lippe, Karen E [Karen_Lippe@oxy.com]; Bruegger, Megan D [Megan_Bruegger@oxy.com] |
| CC: | Myers, Jessica L [Jessica_Myers@oxy.com]; Knight, Angela [Angela_Knight@oxy.com] |
| Subject: | RE: ANADARKO STOCK |

Hi Nikki – thanks for accepting the recommendation.

Please feel free to speak w/ Towers.

Regards,
Jason

Occidental Petroleum Corporation
Associate Director, Treasury Finance
Tel: 713.497.2059
jason_schmitz@oxy.com

**From:** nikki.tanner@wellsfargo.com <nikki.tanner@wellsfargo.com>
**Sent:** Thursday, December 19, 2019 11:38 AM
**To:** Schmitz, Jason A <Jason_Schmitz@oxy.com>; Monique.O.Etheridge@wellsfargo.com; Lippe, Karen E <Karen_Lippe@oxy.com>; Bruegger, Megan D <Megan_Bruegger@oxy.com>
**Cc:** Myers, Jessica L <Jessica_Myers@oxy.com>; Knight, Angela <Angela_Knight@oxy.com>
**Subject:** [EXTERNAL] RE: ANADARKO STOCK

Good afternoon Jason,

Wells Fargo accepts your recommendation for the ratable liquidation plan for Oxy Stock as follows:

Beginning January 6, 2020, sell 381,420 shares each day over the course of the week with a final liquidation on January 10, 2020

1,907,100 / 5 = 381,420

We also would like to have permission to speak with, Willis Towers Watson, the authors of the actuarial reports. We have a couple follow up questions to the report specifically around duration. This additional information will help us with the fixed income allocation of the assets. They are Terry McFadden and Amy Doslich. I've attached the reports for your reference.

Thank you and speak with you soon.

Nikki T. Tanner, CIMA®
Tel: (678) 627-3787 | Cell: (336) 406-8474



**From:** Tanner, Nikki T
**Sent:** Tuesday, December 17, 2019 4:16 PM
**To:** 'Schmitz, Jason A' <Jason_Schmitz@oxy.com>; Etheridge, Monique O. <Monique.O.Etheridge@wellsfargo.com>; 'Lippe, Karen E' <Karen_Lippe@oxy.com>; 'Bruegger, Megan D' <Megan_Bruegger@oxy.com>

WF-00003860

# **TAB 21**

Wells Fargo breached by selling shares later than agreed, there are genuine issues of material fact surrounding the materiality of that alleged breach and the reasonableness of Wells Fargo's conduct with the respect of the timing of the shares under Plaintiffs' theory of the case. These factual issues preclude summary judgment in favor of Plaintiffs on their contract claim.

### 3.    There Are Fact Issues on Multiple Affirmative Defenses.[9]

Wells Fargo raised 14 affirmative defenses in response to Plaintiffs' Complaint, and each raises factual questions that prevent judgment in Plaintiffs' favor at this stage of the proceeding. *See* Answer at 8-9.

For example, Wells Fargo's affirmative defenses include failure to mitigate and waiver. Answer at 8-9. As explained above, there is no dispute that Wells Fargo informed Occidental in January and February 2020 that the sales were not yet complete. Tanner Depo. 188:20-189:21, 194:3-195:17; Exs. 58, 220. Regardless, Plaintiffs did not take any action at that time. *See* Gooch Depo. at 141:13-142:5; 167:7-11; 178:15-179:23. Occidental's laissez-faire conduct after it learned that the sales had not been completed raises genuine issues of material fact as to whether Occidental waived its breach of contract claim or failed to mitigate its alleged damages. These factual issues preclude summary judgment in Plaintiffs' favor.

Wells Fargo's remaining affirmative defenses raise similar fact questions. As set out in Defendant's Motion, Mr. Schmitz was not an "authorized signer" at the time he sent his December

---

[9] Plaintiffs' Motion does not identify any affirmative defense on which summary judgment is sought and it does not identify specific elements of any of the affirmative defenses on which Plaintiffs contend Wells Fargo cannot prevail—either as a matter of law or fact. *See* Fed. R. Civ. P. 56(a). Also, Plaintiffs' motion seeks only a *partial* summary judgment. While their motion claims millions of dollars of damages, their proposed order makes it clear that damages cannot be determined on summary judgment motion practice and must be addressed later. Finally, discovery remains open until October 14, 2022. *See* ECF No. 79. As a result, Wells Fargo has no obligation to establish its affirmative defenses in this response. Rather, this section of the response is provided to alert the Court that affirmative defenses will have to be addressed at the appropriate time.

2019 email; whether he lacked actual or apparent authority to bind Occidental as Wells Fargo alleges in its affirmative defenses is a genuine issue of material fact. *See* Answer at 8; Bruegger Depo. 101:11-16, excerpts attached as Exhibit B to McKennon Dec.

Wells Fargo also raised the affirmative defense of impossibility or impracticability. Answer at 8. The record suggests that, even if Occidental and Wells Fargo entered an agreement to sell shares on the timeline discussed in Mr. Schmitz's December 2019 email, Equiniti could not and would not guarantee that shares could be transferred or sold on any specific timeline. Tanner Depo. 142:1-16; Sevcik Depo. 74:11-25, excerpts attached as Exhibit F to McKennon Dec. Whether it was possible to execute the purported agreement as written is a genuine issue of material fact. Similarly, whether Equiniti's role in delaying the sales of the Occidental shares constitutes a prior material breach as Plaintiffs' agent is a genuine issue of material fact. Each of these fact issues precludes summary judgment in favor of Plaintiffs.

4.      **Plaintiffs Are Not Entitled to Summary Judgment on Wells Fargo's Counterclaim.**

Plaintiffs also make a half-hearted argument that the Court should grant judgment as a matter of law for Plaintiffs on Wells Fargo's counterclaim against Occidental [ECF 65], which seeks to hold Occidental vicariously liable to the Trust for Equiniti's negligence in effectuating the stock sales. Plaintiffs' argument does not cite even a single authority (other than one citation to the elements of a negligence claim), and erroneously states that Wells Fargo has not cited to the source of any duty that Equiniti owed. To the contrary, Wells Fargo cited numerous federal regulations governing transfer agent conduct that Equiniti breached, including 17 C.F.R. §§ 240.17Ad-2 (regulating turnaround, processing, and forwarding of items), -5 (written inquiries and requests), -12 (safeguarding of funds and securities), and -15 (signature guarantees), that support a claim for negligence *per se.* [ECF 65 ¶ 75]. Plaintiffs do not, and cannot, argue that these

# TAB 22

30(b)(6) OF WELLS FARGO BANK, N.A.
MONIQUE ETHERIDGE - 5/6/2022

```
1        Q.   And the second dark bullet point says, "The
2   Occidental team will have internal discussions
3   regarding the sale of Occidental shares,
4   recommendations of how much and when."
5        A.   Mm-hmm.
6        Q.   Tell me what you recall about that
7   discussion during the October meeting if you --
8        A.   Right.  During that meeting, we just were
9   enlightening them that the reason why we're bringing
10  this to your attention is that although we're the
11  trustee, these assets are still assets of the company,
12  they're on the balance sheet.  Therefore, any activity
13  that we do will create some type of capital gain
14  expense for the company.
15            So we were just being -- letting you know
16  what we were thinking about doing and just want your
17  consideration, just out -- out of a courtesy because
18  we're discretionary asset management.  But at the same
19  time, we did not want to trigger a huge tax expense
20  for you.
21       Q.   Okay.
22       A.   So technically, we did not have -- we didn't
23  need their input at all.  It was just as a courtesy.
24       Q.   Right.  You could have -- you had the
25  discretion -- you had pretty broad discretion --
```

30(b)(6) OF WELLS FARGO BANK, N.A.
MONIQUE ETHERIDGE - 5/6/2022

1    A.   Mm-hmm.

2    Q.   -- as to how to effectuate the trade?

3    A.   Yes.

4    Q.   And one of those ways was to, you know,

5  touch base with Occidental and agree with them as to

6  how the trade would be -- would be executed, right?

7    A.   The shares.

8    Q.   Say it again.

9    A.   The shares of Occidental.

10    Q.   I'm sorry.  Was that a -- I'm not sure I

11  understood the answer to that question.  Was that a

12  yes to my question?

13    A.   Can you repeat the question?

14    Q.   Yeah, one of the ways to exercise Wells

15  Fargo's discretion would have been to accept a

16  recommendation from Occidental as to how to carry out

17  that investment?

18    A.   That's not correct.

19    Q.   Okay.  Why do you say that's not correct?

20    A.   As discretionary asset manager, we didn't

21  have to get their input at all.

22    Q.   Go ahead.  I'm sorry.  I stepped on your

23  answer.  Please continue.

24    A.   That's okay.  So we didn't need their

25  recommendation.  It was just as a courtesy that we

# **TAB 23**

| To: | Tanner, Nikki T[nikki.tanner@wellsfargo.com] |
| --- | --- |
| Cc: | Montgomery, Terri L[terri.mbntgomery@wellsfargo.com]; Etheridge, Monique O.[Monique.O.Etheridge@wellsfargo.com] |
| From: | Russell, Marley F.[/O=WELLS FARGO & CO./OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MARLEY F. RUSSELLC5D] |
| Sent: | Tue 2/18/2020 1:24:16 PM (UTC-05:00) |
| Subject: | RE: 01.07.2020 Instruction to Sell Occidental Shares from Wells Fargo |

20200218132205402.pdf

Nikki,

Terri gave me this.  Is this what you are referring to?  Copying Terri on this and she is back in the office today.

Thanks,
Marley

*Marley F. Russell*
**Wells Fargo Institutional Retirement and Trust**
Executive Benefits
MAC Code: D4001-020 | 100 N. Main Street | Winston-Salem, NC 27101
Direct: 336-842-7718
Marley.F.Russell@wellsfargo.com

*This electronic mail message contains information from Wells Fargo Bank, which is confidential and privileged information.  If you are not the intended recipient, please be aware that any disclosure, photocopying, distribution or use of the contents of the received information is prohibited.  If you have received this email in error, please reply to the sender immediately and permanently delete this message and all copies of it.  If you no longer wish to receive these emails, please notify the sender.  Thank you.*

*Please consider the environment before printing this email.*

---

**From:** Tanner, Nikki T <nikki.tanner@wellsfargo.com>
**Sent:** Friday, February 14, 2020 1:08 PM
**To:** Russell, Marley F. <Marley.F.Russell@wellsfargo.com>
**Cc:** Montgomery, Terri L <terri.montgomery@wellsfargo.com>; Etheridge, Monique O. <Monique.O.Etheridge@wellsfargo.com>
**Subject:** FW: 01.07.2020 Instruction to Sell Occidental Shares from Wells Fargo

Hi Marley,

Can you help us out in Terri's absence?

Sent with BlackBerry Work
(www.blackberry.com)

---

**From:** Tanner, Nikki T <nikki.tanner@wellsfargo.com>
**Date:** Friday, Feb 14, 2020, 1:06 PM
**To:** Montgomery, Terri L <terri.montgomery@wellsfargo.com>
**Cc:** Etheridge, Monique O. <Monique.O.Etheridge@wellsfargo.com>
**Subject:** RE: 01.07.2020 Instruction to Sell Occidental Shares from Wells Fargo

Turns out that the transfer agent sent a letter rejecting the last tranche of shares to be sold. Terri, can you locate that letter? They indicated that I should have arrived at the end of January.

Sent with BlackBerry Work
(www.blackberry.com)

Montgomery

**Exhibit 97**

---

**From:** Montgomery, Terri L <terri.montgomery@wellsfargo.com>
**Date:** Friday, Feb 14, 2020, 11:27 AM

CONFIDENTIAL

23-2<span>Exhibit 44</span>

WF-00000040

---

**Message**

---

| | |
|---|---|
| **From:** | Gooch, Elizabeth H [Elizabeth_Gooch@oxy.com] |
| **Sent:** | 2/26/2020 1:32:17 PM |
| **To:** | Tanner, Nikki T [nikki.tanner@wellsfargo.com] |
| **Subject:** | RE: RE: ComputerShare question |

Great. We are sending a dial-in for 12:45.

-----Original Message-----
From: nikki.tanner@wellsfargo.com <nikki.tanner@wellsfargo.com>
Sent: Wednesday, February 26, 2020 12:13 PM
To: Gooch, Elizabeth H <Elizabeth_Gooch@oxy.com>
Subject: [EXTERNAL] RE: ComputerShare question

336-406-8474. Thank you.

Sent with BlackBerry Work
(www.blackberry.com)

From: Gooch, Elizabeth H <Elizabeth_Gooch@oxy.com<mailto:Elizabeth_Gooch@oxy.com>>
Date: Wednesday, Feb 26, 2020, 11:58 AM
To: Tanner, Nikki T <nikki.tanner@wellsfargo.com<mailto:nikki.tanner@wellsfargo.com>>
Subject: RE: ComputerShare question

Great. Which number should we call?

-----Original Message-----
From: nikki.tanner@wellsfargo.com <nikki.tanner@wellsfargo.com>
Sent: Wednesday, February 26, 2020 11:57 AM
To: Gooch, Elizabeth H <Elizabeth_Gooch@oxy.com>
Subject: [EXTERNAL] RE: ComputerShare question

Hello Elizabeth,
Yes. I am available until boarding which is about 3:50.


Sent with BlackBerry Work
(www.blackberry.com<http://www.blackberry.com>)


From: Gooch, Elizabeth H <Elizabeth_Gooch@oxy.com<mailto:Elizabeth_Gooch@oxy.com>>
Date: Wednesday, Feb 26, 2020, 10:44 AM
To: Tanner, Nikki T <nikki.tanner@wellsfargo.com<mailto:nikki.tanner@wellsfargo.com>>
Subject: ComputerShare question

Hi Nikki,
We have discussed with our transfer agent, Equiniti, and would like to discuss with you ComputerShare's
role in the sale process and hopefully resolve the issues we discussed.
Can you let me know when you have a few minutes today to have a call with Oxy and Equiniti.
Thanks,
Elizabeth

Elizabeth Gooch
Managing Counsel
Occidental Petroleum Corporation
5 Greenway Plaza, Mailstop 4.105
Houston, TX 77046

(713) 366-5989 Office
(713) 985-1387 Fax
Elizabeth_Gooch@oxy.com



**Exhibit 47**
23-20018-5277
WF-00016993

| Message | |
|---|---|
| **From:** | Brown, Therese A. [/O=WELLS FARGO & CO./OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=THERESE A. BROWN025] |
| **Sent:** | 3/18/2020 4:05:21 PM |
| **To:** | Tanner, Nikki T [nikki.tanner@wellsfargo.com]; Montgomery, Terri L [terri.montgomery@wellsfargo.com] |
| **CC:** | Berg, Patrick [patrick.berg@wellsfargo.com]; Etheridge, Monique O. [monique.o.etheridge@wellsfargo.com]; Russell, Marley F. [marley.f.russell@wellsfargo.com] |
| **Subject:** | RE: RE: Anadarko Stock |

Hello! The shares were just received at DTC and the location has been updated. Thanks and stay safe ☺

**Therese Brown**

Securities Operations Service Specialist | Security Control & Transfer | 612-667-8339

425 E Hennepin Avenue
MAC N9345-010
Minneapolis, MN 55414
612-667-8339
therese.a.brown@wellsfargo.com

*This email message is for the sole use of the intended recipient (or recipients) and may contain privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by phone or reply email and destroy all copies of the original message.*

---

**From:** Tanner, Nikki T <nikki.tanner@wellsfargo.com>
**Sent:** Wednesday, March 18, 2020 11:51 AM
**To:** Brown, Therese A. <Therese.A.Brown@wellsfargo.com>; Montgomery, Terri L <terri.montgomery@wellsfargo.com>
**Cc:** Berg, Patrick <Patrick.Berg@wellsfargo.com>; Etheridge, Monique O. <Monique.O.Etheridge@wellsfargo.com>; Russell, Marley F. <Marley.F.Russell@wellsfargo.com>
**Subject:** RE: Anadarko Stock

Thank you Therese. Have we been able to update the coding on SEI?

Nikki T. Tanner, CIMA®
Tel: (678) 627-3787 | Cell: (336) 406-8474

---

**From:** Brown, Therese A. <Therese.A.Brown@wellsfargo.com>
**Sent:** Tuesday, March 17, 2020 11:30 AM
**To:** Montgomery, Terri L <terri.montgomery@wellsfargo.com>
**Cc:** Berg, Patrick <Patrick.Berg@wellsfargo.com>; Etheridge, Monique O. <Monique.O.Etheridge@wellsfargo.com>; Russell, Marley F. <Marley.F.Russell@wellsfargo.com>; Tanner, Nikki T <nikki.tanner@wellsfargo.com>
**Subject:** RE: Anadarko Stock

Thanks – That worked!

**Therese Brown**

Securities Operations Service Specialist | Security Control & Transfer | 612-667-8339

425 E Hennepin Avenue
MAC N9345-010
Minneapolis, MN 55414
612-667-8339
therese.a.brown@wellsfargo.com



Montgomery

**Exhibit 106**

CONFIDENTIAL

23-2 Exhibit 850
WF-00007896

**From:** Inscore, Tonya M <tonya.inscore@wellsfargo.com>
**Sent:** Tuesday, January 7, 2020 11:03 AM
**To:** Montgomery, Terri L <terri.montgomery@wellsfargo.com>
**Cc:** Ly, Kevin <Kevin.Ly@wellsfargo.com>; Tanner, Nikki T <nikki.tanner@wellsfargo.com>
**Subject:** RE: Urgent Please Read: Liquidation of Occidental Stock in 028339300, RT ANADARKO PETROLEUM CORP DB TRUST

They're not 'ours' to sell. The ones in LOC 449 are held at the transfer agent. You have to instruct them to sell the shares.

**Tonya M. Inscore**
Sr. Vice President
Business Initiatives Consultant

Wells Fargo Institutional Retirement and Trust
Executive Benefits
MAC D4001-020 | 100 N Main Street | Winston-Salem, NC 27101
Tel (336) 842-7703 | Cell (336) 978-7004

**tonya.inscore@wellsfargo.com**

*This electronic mail message contains information from Wells Fargo Bank, which is confidential and privileged information. If you are not the intended recipient, please be aware that any disclosure, photocopying, distribution or use of the contents of the received information is prohibited. If you have received this email in error, please reply to the sender immediately and permanently delete this message and all copies of it. If you no longer wish to receive these emails, please notify the sender. Thank you.*

*Please consider the environment before printing this email.*

---

**From:** Montgomery, Terri L <terri.montgomery@wellsfargo.com>
**Sent:** Tuesday, January 7, 2020 11:00 AM
**To:** Inscore, Tonya M <tonya.inscore@wellsfargo.com>
**Cc:** Ly, Kevin <Kevin.Ly@wellsfargo.com>; Tanner, Nikki T <nikki.tanner@wellsfargo.com>
**Subject:** RE: Urgent Please Read: Liquidation of Occidental Stock in 028339300, RT ANADARKO PETROLEUM CORP DB TRUST

Hi Tonya,

Please see the email below, should I email my request to WACO?

Thanks
Terri L. Montgomery
Assistant Vice President
Executive Benefits Client Service Associate

Wells Fargo Institutional Retirement and Trust Executive Benefits
MAC D4001-020 | 100 North Main Street • 2nd Floor | Winston-Salem, NC 27101
Tel (336) 842-7710 | Toll Free 1(800) 887-1562 | Fax (336)-842-7956
Terri.montgomery@wellsfargo.com

*This electronic mail message contains information from Wells Fargo Bank, which is confidential and privileged information. If you are not the intended recipient, please be aware that any disclosure, photocopying, distribution or use of the contents of the received information is prohibited. If you have received this email in error, please reply to the sender immediately and permanently delete this message and all copies of it. If you no longer wish to receive these emails, please notify the sender. Thank you.*

*Please consider the environment before printing this email.*

CONFIDENTIAL

WF-00015079

## CERTIFICATE OF SERVICE

I hereby certify that I had the foregoing Record Excerpts of Defendant-Appellant Wells Fargo electronically filed by tendering it to the Office of the Clerk of the United States Court of Appeals for the Fifth Circuit on October 16, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Christian T. Kemnitz*
Christian T. Kemnitz
*Counsel for Wells Fargo*